1 | LEWIS KAHN (*pro hac vice*)
2 | **KAHN SWICK & FOTI, LLC**
   | 206 Covington Street
3 | Madisonville, Louisiana 70447
4 | Telephone: (504) 455-1400
   | Facsimile: (504) 455-1498
5 | Email: lewis.kahn@ksfcounsel.com
6 |
7 | MICHAEL D. BRAUN (167416)
   | **BRAUN LAW GROUP, P.C.**
8 | 10680 Pico Boulevard, Suite 280
9 | Los Angeles, CA 90064
   | Telephone: (310) 836-6000
10 | Facsimile: (310) 836-6010
   | Email: mdb@braunlawgroup.com
11 |
12 | *Counsel for Plaintiff*

```
                FILED
       CLERK, U.S. DISTRICT COURT

           AUG 23 2010
             10:15
   CENTRAL DISTRICT OF CALIFORNIA
   BY                      DEPUTY
```

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## (EASTERN DIVISION)

| | |
|---|---|
| **BARRY R. LLOYD**, Individually And On Behalf of All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | ) |
| vs. | )<br>)<br>) |
| **CVB FINANCIAL CORP.**, **CHRISTOPHER D. MYERS**, and **EDWARD J. BIEBRICH JR.**, | )<br>)<br>) |
| Defendants. | )<br>) |

**CV N CV10 - 6256 MMM (PJW)**

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

## INTRODUCTION

This is a federal class action on behalf of purchasers of the common stock of CVB Financial Corp. ("CVBF" or the "Company") between **October 21, 2009, and August 9, 2010,** inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").   As alleged herein, defendants published a series of materially false and misleading statements that defendants knew and/or deliberately disregarded were false and materially misleading at the time of such publication, and which omitted to reveal material information necessary to make defendants' statements, in light of such material omissions, not materially false and misleading.

## OVERVIEW

1.   Throughout the Class Period, CVBF operated as a bank holding company for Citizens Business Bank that provided various retail banking and financial services to small to mid-sized businesses, high net-worth individuals, and professionals in the United States.  The Company offered various deposit products, including checking, savings, money market, and time certificates of deposit for business and personal accounts.   The Company also acted as a federal tax depository for business customers.  As of December 31, 2009, CVBF operated 46 business financial centers located in the Inland Empire, Los Angeles County, Orange County, and the Central Valley of California.

2

2.     Throughout the Class Period, CVBF presented itself as a company that was well adapted at managing its loan portfolio and its acquired banking assets.  During this time, the Company repeatedly stated that CVBF maintained systems, procedures and controls that also gave it a competitive advantage in this business and, as a result, enabled the Company to provide such services while producing strong profits for CVBF and its investors.  In fact, during the Class Period, defendants repeatedly issued guidance and reported results that met or exceeded analysts' expectations - - including purported "record" setting results for the second quarter of 2010.

3.     Defendants were well aware that the Company's business model was entirely dependent upon its ability to manage its loan portfolio and to properly value its loans, especially the impaired loans that required write-downs to reflect their true market value.  Defendants were also aware that it was critical that the Company maintained an adequate system of internal controls so as to accomplish these important tasks.

4.     The representations concerning these systems and controls, however, were patently untrue, and stood in stark contrast to the positive statements issued by defendants during the Class Period concerning the Company's strength and profitability.  Accordingly, unbeknownst to investors, throughout the Class Period, the Company suffered from a host of undisclosed adverse factors that negatively

3

impacted its business and which would lead the Company to report declining financial results.  In particular:

- At all times during the Class Period, it was not true that the Company's purported success was the result of its integration of acquisitions or defendants' competent management when, in fact, throughout the Class Period, defendants had propped up the Company's results by manipulating CVBF's accounting for costs and expenses by failing to properly account for impaired loans;

- At all times during the Class Period, unbeknownst to investors, defendants had materially overstated the Company's profitability by engaging in possible accounting violations related to the manner in which defendants accounted for troubled loans - - which violations would ultimately become the subject of an SEC investigation;

- Throughout the Class Period, it was also not true that CVBF contained adequate systems of internal operational or financial controls, such that CVBF's reported financial statements were true, accurate or reliable;

- As a result of the foregoing, throughout the Class Period it also was not true that the Company's financial statements and reports were prepared in accordance with Generally Accepted Accounting Principles ("GAAP") and Securities and Exchange Commission ("SEC") rules; and,

- As a result of the aforementioned adverse conditions which defendants failed to disclose, throughout the Class Period, defendants lacked any reasonable basis to claim that CVBF was operating according to plan, or that CVBF could achieve guidance sponsored and/or endorsed by defendants.

5.    It was only on August 9, 2010, however, when defendants filed with the SEC the Company's 2Q:10 Form 10-Q for the quarter ended June 30, 2010, that investors learned the truth about the Company.   Defendants shocked the

4

market by revealing that the Company was the subject of an investigation by the SEC into possible accounting violations related to the manner in which defendants accounted for troubled loans. This belated disclosure had an immediate adverse impact on the price of Company shares, as evidenced by the chart below:



6.    Defendants were motivated to, and did, conceal the true operational and financial condition of CVBF, and materially misrepresented and failed to disclose the conditions that were adversely affecting CVBF throughout the Class Period, because this enabled them to: (a) deceive the investing public regarding CVBF's business, operations, management, and the intrinsic value of CVBF common stock; (b) sell their privately held CVBF shares while in possession of material, adverse, non-public information about the Company; and, (c) cause

CLASS ACTION COMPLAINT

plaintiff and other members of the Class to purchase CVBF common stock at artificially inflated prices.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

9.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b).  CVBF maintains its principal place of business in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

10.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

11.     Plaintiff **BARRY R. LLOYD**, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of

CLASS ACTION COMPLAINT

CVBF at artificially inflated prices during the Class Period and has been damaged thereby.

12.     Defendant **CVB FINANCIAL CORP.** is a California corporation with its principal place of business at 701 North Haven Avenue - Suite 350, Ontario, CA 91764.  According to the Company's profile, CVBF operates as a bank holding company for Citizens Business Bank that provides various retail banking and financial services to small to mid-sized businesses, high net-worth individuals, and professionals in the United States.  The Company offers various deposit products, including checking, savings, money market, and time certificates of deposit for business and personal accounts.  The Company also acts as a federal tax depository for business customers.  As of December 31, 2009, CVBF operated 46 business financial centers located in the Inland Empire, Los Angeles County, Orange County, and the Central Valley of California.

13.     Defendant **CHRISTOPHER D. MYERS** ("Myers") was, during the relevant period, Chief Executive Officer, President, and Director of the Company, as well as Chief Executive Officer and President of Citizens Business Bank. During the Class Period, defendant Myers signed and/or certified the Company's SEC filings.

14.     Defendant **EDWARD J. BIEBRICH Jr.** ("Biebrich") was, during the Class Period, Chief Financial Officer and Principal Accounting Officer, and

CLASS ACTION COMPLAINT

Chief Financial Officer and Executive Vice-President of Citizens Business Bank. During the Class Period, defendant Biebrich signed and certified the Company's SEC filings.

15.    The defendants referenced above in ¶¶13-14 are referred to herein as the "Individual Defendants."

16.    Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets, and present and future business prospects *via* access to internal corporate documents (including the Company's operating plans, budgets and forecasts, and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and reports and other information provided to them in connection therewith.

17.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, traded on the Nasdaq National Market Exchange (the "Nasdaq"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial

CLASS ACTION COMPLAINT

statements, business, products, markets, management, earnings, and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

18. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder, and investor reports, as well as other communications complained of herein. They were aware of, or deliberately disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature.

19. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases, and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases

9

detailed herein and is therefore primarily liable for the representations contained therein.

20.    Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of CVBF common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.   The scheme:  (a) deceived the investing public regarding CVBF's business, operations, management, and the intrinsic value of CVBF common stock; (b) enabled CVBF insiders to sell their privately held CVBF shares while in possession of material, adverse, non-public information about the Company; and, (c) caused plaintiff and other members of the Class to purchase CVBF common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the common stock of CVBF between **October 21, 2009, and August 9, 2010,** inclusive (the "Class"), and who were damaged thereby.  Excluded from the Class are defendants; the officers and directors of the Company at all relevant times; members of their immediate families; their legal representatives, heirs, successors or assigns; and, any entity in which defendants have or had a controlling interest.

22.   The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, CVBF common shares were actively traded on the Nasdaq.  As of May 4, 2010, the Company had over 106.29 million shares of common stock issued and outstanding.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by CVBF or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

23.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

24.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

25.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

11

(a)   whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)   whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of CVBF; and,

(c)   to what extent the members of the Class have sustained damages and the proper measure of damages.

26.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Defendants' Materially False and Misleading
### <u>Statements Made During the Class Period</u>

27.   **Q3:09 Results Announced.** On October 21, 2009, the inception of the Class Period, CVBF published a release reporting "record" results for the third quarter of 2009. This release stated, in part, the following:

12

CVB Financial Corp. Reports <u>Record</u> Results for Third Quarter 2009

Quarterly Net Income of $19.3 million, highest in company history

Diluted Earnings per Common Share $0.10 (reduced by $0.07 for TARP repayment)

Deposits, including customer repos, grew $943.6 million over September 30, 2008

Allowance for credit losses 2.43% of total loans & leases

Ontario, CA, October 21, 2009-CVB Financial Corp. (NASDAQ:CVBF) and its subsidiary, Citizens Business Bank ("the Company"), announced record results for the third quarter of 2009. The Company reported net income of $19.3 million for the third quarter of 2009. This represents the highest quarterly net income in the history of the Company.

Net income of $19.3 million reflects an increase of $1.8 million, or 10.66%, compared to net income of $17.5 million for the third quarter of 2008. Diluted earnings per common share were $0.10 for the third quarter of 2009, a decrease of $0.11 or 49.43%, from diluted earnings per common share of $0.21 for the third quarter of 2008. Due to the repayment of TARP preferred stock, current-quarter diluted earnings per common share reflected a one-time, non-cash reduction in net income applicable to common stockholders of $7.6 million, or $.07 per share.

28.   In addition to the foregoing, the Company's October 21, 2009 release also quoted defendant Myers, in part, as follows:

"We are very pleased to report these outstanding results for the third quarter, particularly in these challenging times," said Chris Myers, President & CEO. "Our net income increased 21.82% sequentially, our deposit growth (including customer repos) increased $943.6 million year-over year, or 26.53%, and our overall credit quality remains sound."

CLASS ACTION COMPLAINT

29.   **FY:2009 Results Announced.**   On January 21, 2010, CVBF published a release announcing results for the fourth quarter and year ended December 31, 2009.  This release stated, in part, the following:

CVB Financial Corp. Reports Positive Earnings for 2009

Record net interest income, before provision for credit losses, of $222.3 million

Net income of $65.4 million for 2009

Diluted earnings per common share $0.56 (Reduced by $0.14 due to TARP preferred stock dividends)

Deposits, including customer repos, grew $1.06 billion over December 31, 2008

Allowance for credit losses 3.02% of total CBB loans & leases

ONTARIO, Calif., Jan 21, 2010 (BUSINESS WIRE) -- CVB Financial Corp. (NASDAQ:CVBF) and its subsidiary, Citizens Business Bank ("the Company"), announced earnings for the year ended December 31, 2009.

CVB Financial Corp. reported net income of $65.4 million for the year ended December 31, 2009. This represents an increase of $2.3 million, or 3.72%, when compared with net income of $63.1 million for the year ended December 31, 2008. Diluted earnings per share were $0.56 for the year ended December 31, 2009. This was down $0.19, or 24.55%, from diluted earnings per share of $0.75 for the same period last year.

\*     \*     \*

Net income for the year ended December 31, 2009 produced a return on beginning equity of 10.64%, a return on average equity of 10.00% and a return on average assets of 0.98%. The efficiency ratio, excluding the provision for credit losses, the gain on sale of securities,

14

and the gain on acquisition, was 52.64% for the year. Operating expenses as a percentage of average assets were 2.01%.

The Company reported net income of $17.1 million for the fourth quarter ending December 31, 2009. This represented an increase of $4.8 million, or 39.02%, when compared with the $12.3 million in net income reported for the fourth quarter of 2008. Diluted earnings per share were $0.16 for the fourth quarter of 2009. This was up $0.02 from diluted earnings per share of $0.14 for the fourth quarter of 2008. The excess of the acquired assets over assumed liabilities resulted in an after-tax gain of $12.3 million. Fourth quarter operating results also include a $25.5 million provision for credit losses.

Net income for the fourth quarter of 2009 produced a return on beginning equity of 10.39%, a return on average equity of 9.99% and a return on average assets of 0.97%. The efficiency ratio, excluding the provision for credit losses and the gain on acquisition, was 58.88%. Operating expenses as a percentage of average assets were 2.25%.

30.   In addition to the foregoing, the Company's January 21, 2010 release also quoted defendant Myers, in part, as follows:

"We achieved several goals in 2009: we raised $132.5 million in capital, re-paid all of our TARP funds, acquired San Joaquin Bank, increased our allowance for loan losses by $55 million and had substantial organic deposit growth. All of these efforts contributed to strengthening the Bank and helped us grow and prosper in this challenging environment."

31.   **2009 Form 10-K.**  On or about March 4, 2010, defendants filed with the SEC the Company's 2009 Form 10-K, for the fourth quarter and year ended December 31, 2009, signed and certified by defendants Biebrich and Myers.  In addition to making substantially similar statements concerning the Company operations and financial condition as was reported previously in the Company's

CLASS ACTION COMPLAINT

January 21, 2010 release, the Company's 2009 Form 10-K also stated, in part, the following:

> DIRECTORS, EXECUTIVE OFFICERS AND CORPORATE GOVERNANCE
>
> Except as hereinafter noted, the information concerning directors and executive officers of the Company, corporate governance and our audit committee financial expert is incorporated by reference from the section entitled "Discussion of Proposals recommended by the Board — Proposal 1: Election of Directors" and "Beneficial Ownership Reporting Compliance," "Corporate Governance Principles and Board Matters," and "Audit Committee" of our definitive Proxy Statement to be filed pursuant to Regulation 14A within 120 days after the end of the last fiscal year. For information concerning the executive officers of the Company, see Item 4A of Part I hereto.
>
> The Company has adopted a Code of Ethics that applies to all of the Company's employees, including the Company's principal executive officer, the principal financial and accounting officer, and all employees who perform these functions.... If the Company shall amend its Code of Ethics as applies to the principal executive officer, principal financial officer, principal accounting officer or controller (or persons performing similar functions) or shall grant a waiver from any provision of the code of ethics to any such person, the Company shall disclose such amendment or waiver on its website at www.cbbank.com under the tab "Investor Relations."

32.   **Controls.** The Company's 2009 Form 10-K contained statements that attested to the purported sufficiency of CVBF's controls and procedures, in part, as follows:

> ITEM 9A. CONTROLS AND PROCEDURES
>
> 1)   Management's Report on Internal Control over Financial Reporting

Management of CVB Financial Corp., together with its consolidated subsidiaries (the "Company"), is responsible for establishing and maintaining adequate internal control over financial reporting. The Company's internal control over financial reporting is a process designed under the supervision of the Company's principal executive and principal financial officers to provide reasonable assurance regarding the reliability of financial reporting and the preparation of the Company's financial statements for external reporting purposes in accordance with U.S. generally accepted accounting principles.

Our internal control over financial reporting includes policies and procedures that pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect transactions and dispositions of assets; provide reasonable assurances that transactions are recorded as necessary to permit preparation of financial statements in accordance with U.S. generally accepted accounting principles, and that receipts and expenditures are being made only in accordance with authorizations of management and the directors of the Company; and provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the Company's assets that could have a material effect on our financial statements.

As of December 31, 2009, management conducted an assessment of the effectiveness of the Company's internal control over financial reporting based on the framework established in Internal Control — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). Based on this assessment, management has determined that the Company's internal control over financial reporting as of December 31, 2009 is effective. KPMG LLP, an independent registered public accounting firm, has issued their report on the effectiveness of internal control over financial reporting as of December 31, 2009.

33.   **Certifications.**  In addition to the foregoing, the Company's 2009 Form 10-K contained certifications signed by defendants Biebrich and Myers, which attested to the purported accuracy and completeness of the Company's financial and operational reports, in part, as follows:

---

17

1.     I have reviewed this annual report on Form 10-K of CVB Financial Corp.;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)     Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

CLASS ACTION COMPLAINT

(d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's Board of Directors (or persons performing the equivalent functions):

a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: March 3, 2010
/s/ Christopher D. Myers
Christopher D. Myers
Chief Executive Officer

* * *

Date: March 3, 2010
/s/ Edward J. Biebrich. Jr.
Edward J. Biebrich Jr.
Chief Financial Officer

## CERTIFICATION CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO SECTION 906 OF THE SARBANES-OXLEY ACT OF 2003

In connection with the Annual Report of CVB Financial Corp. (the "Company") on Form 10-K for the fiscal year ended December 31, 2009, as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, Christopher D. Myers, Chief Executive Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2003, to the best of my knowledge that:

(1)   The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)   The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: March 3, 2010
/s/ Christopher D. Myers
Christopher D. Myers
Chief Executive Officer

## CERTIFICATION CERTIFICATION PURSUANT TO  18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO SECTION 906
## OF THE SARBANES-OXLEY ACT OF 2003

In connection with the Annual Report of CVB Financial Corp. (the "Company") on Form 10-K for the fiscal year ended December 31, 2009, as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, Edward J. Biebrich, Jr., Chief Financial Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2003, to the best of my knowledge that:

(1)   The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)   The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

CLASS ACTION COMPLAINT

Date: March 3, 2010
/s/ Edward J. Biebrich Jr.
Edward J. Biebrich Jr.
Chief Financial Officer

34.    The statements contained in CVBF's October 21, 2009 and January 21, 2010 releases, and those statements contained in the Company's 2009 Form 10-K, referenced above, were each materially false and misleading when made, and known by defendants to be false or were deliberately disregarded as such, for the following reasons, among others:

(a)    At all times during the Class Period, it was not true that the Company's purported success was the result of its integration of acquisitions or defendants' competent management when, in fact, throughout the Class Period, defendants had propped up the Company's results by manipulating CVBF's accounting for costs and expenses by failing to properly account for impaired loans;

(b)    At all times during the Class Period, unbeknownst to investors, defendants had materially overstated the Company's profitability by engaging in possible accounting violations related to the manner in which defendants accounted for troubled loans - - which violations would ultimately become the subject of an SEC investigation;

CLASS ACTION COMPLAINT

(c)     Throughout the Class Period, it was also not true that CVBF contained adequate systems of internal operational or financial controls, such that CVBF's reported financial statements were true, accurate, or reliable;

(d)     As a result of the foregoing, throughout the Class Period it also was not true that the Company's financial statements and reports were prepared in accordance with GAAP and SEC rules; and,

(e)     As a result of the aforementioned adverse conditions which defendants failed to disclose, throughout the Class Period, defendants lacked any reasonable basis to claim that CVBF was operating according to plan, or that CVBF could achieve guidance sponsored and/or endorsed by defendants.

35.     **1Q:10 Results Announced.**  On April 21, 2010, CVBF published a release announcing results for the first quarter ended March 31, 2010.  This release stated, in part, the following:

CVB Financial Corp. Reports Increased Earnings for First Quarter 2010

Net income of $16.1 million for the first quarter of 2010

Diluted earnings per common share $0.15

Deposits, including customer repos, grew $864.5 million over March 31, 2009

Allowance for credit losses 3.20% of total CBB non-covered loans & leases

CLASS ACTION COMPLAINT

ONTARIO, Calif., Apr 21, 2010 (BUSINESS WIRE) --CVB Financial Corp. (NASDAQ:CVBF) and its subsidiary, Citizens Business Bank ("the Company"), announced earnings for the first quarter of 2010.

CVB Financial Corp. reported net income of $16.1 million for the first quarter of 2010. This represents an increase of $2.9 million, or 22.42%, when compared with net income of $13.2 million for the first quarter of 2009. Diluted earnings per share were $0.15 for the first quarter of 2010. This was up $0.02, or 13.11%, from diluted earnings per share of $0.13 for the same period last year. First quarter operating results include a $12.2 million provision for credit losses and were impacted by the accounting treatment of credit-related transactions from the San Joaquin Bank ("SJB") loan portfolio as discussed below.

Net income for the first quarter of 2010 produced a return on beginning equity of 10.24%, a return on average equity of 10.07% and a return on average assets of 0.96%. The efficiency ratio, excluding the provision for credit losses, was 50.50% for the quarter. Operating expenses as a percentage of average assets were 2.13%.

Interest income on loans for the first quarter of 2010 totaled $67.8 million, which includes a $13.4 million discount accretion on covered loans acquired from SJB. This amount represents the discount recognized from the sale of two loans and principal payments on other loans. It is recorded as a yield adjustment in interest income. Excluding the discount accretion, interest income on loans would have been $54.4 million for the first quarter of 2010. This represents an increase of $4.9 million when compared to interest income on loans of $49.5 million during the same period last year.

The yield adjustment to interest income of $13.4 million was partially offset by a $10.6 million reduction in the FDIC loss sharing asset. This amount appears as a reduction of other operating income. We also recognized an other-than-temporary impairment on a private-label mortgage-backed investment security during the first quarter of 2010. The credit-impairment loss of $685,000 was recognized as an offset to other operating income.

CLASS ACTION COMPLAINT

Net interest income before the provision for credit loss and excluding the $13.4 million discount accretion on SJB covered loans was $60.0 million. This is record quarterly net interest income for the Company. "We are pleased with our top-line performance," said Chris Myers, President and CEO.

36.  In addition to the foregoing, the Company's April 21, 2010 release also quoted defendant Myers, in part, as follows:

"Our deleveraging strategy has positively impacted our net interest margin and reduced our sensitivity to a potential future rise in interest rates," said Chris Myers.

37.  **1Q:10 Form 10-Q.**  On or about May 10, 2010, defendants filed with the SEC the Company's 1Q:10 Form 10-Q, for the first quarter and year ended March 31, 2010, signed by defendant Biebrich and certified by defendants Biebrich and Myers.  In addition to making substantially similar statements concerning the Company operations and financial condition as was reported previously in the Company's April 21, 2010 release, the Company's 1Q:10 Form 10-Q also stated, in part, the following:

1. SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

The accompanying condensed consolidated unaudited financial statements and notes thereto have been prepared in accordance with the rules and regulations of the Securities and Exchange Commission for Form 10-Q and conform to practices within the banking industry and include all of the information and disclosures required by accounting principles generally accepted in the United States of America for interim financial reporting. The results of operations for the three months ended March 31, 2010 are not necessarily indicative of the results for the full year. These financial statements should be

24

read in conjunction with the financial statements, accounting policies and financial notes thereto included in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2009 filed with the Securities and Exchange Commission. In the opinion of management, the accompanying condensed consolidated unaudited financial statements reflect all adjustments (consisting only of normal recurring adjustments), which are necessary for a fair presentation of financial results for the interim periods presented. A summary of the significant accounting policies consistently applied in the preparation of the accompanying consolidated financial statements follows.

38.   **Controls.** The Company's 1Q:10 Form 10-Q contained statements that attested to the purported sufficiency of CVBF's controls and procedures, in part, as follows:

ITEM 4. CONTROLS AND PROCEDURES

As of the end of the period covered by this report, we carried out an evaluation of the effectiveness of the Company's disclosure controls and procedures under the supervision and with the participation of the Chief Executive Officer, the Chief Financial Officer and other senior management of the Company. Based on the foregoing, the Company's Chief Executive Officer and the Chief Financial Officer concluded that the Company's disclosure controls and procedures were effective as of the end of the period covered by this report.

During our most recent fiscal quarter, there have been no changes in our internal control over financial reporting that have materially affected or are reasonably likely to materially affect our internal control over financial reporting.

39.   **Certifications.** In addition to the foregoing, the Company's 1Q:10 Form 10-Q contained certifications signed by defendants Biebrich and Myers, which attested to the purported accuracy and completeness of the Company's financial and operational reports, in part, as follows:

25

**CERTIFICATION PURSUANT TO**
**18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO**
**SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

In connection with the Quarterly Report of CVB Financial Corp. (the "Company") on Form 10-Q for the period ended March 31, 2010, as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, Christopher D. Myers, Chief Executive Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, to the best of my knowledge that:

(1)     The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)     The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: May 10, 2010
/s/ Christopher D. Myers
Christopher D. Myers
Chief Executive Officer

\*     \*     \*

**CERTIFICATION PURSUANT TO**
**18 U.S.C. SECTION 1350,  AS ADOPTED PURSUANT TO**
**SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

In connection with the Quarterly Report of CVB Financial Corp. (the "Company") on Form 10-Q for the period ended March 31, 2010, as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, Edward J. Biebrich, Jr., Chief Financial Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, to the best of my knowledge that:
(1)     The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

CLASS ACTION COMPLAINT

(2)    The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: May 10, 2010
/s/ Edward J. Biebrich Jr.
Edward J. Biebrich Jr.
Chief Financial Officer

40.    The statements made by defendants and contained in the Company's April 21, 2010 release and in CVBF's 1Q:10 Form 10-Q, were each materially false and misleading when made and known by defendants to be false at that time, or were deliberately disregarded as such thereby, for the reasons stated in ¶32, *supra*.

41.    **2Q:10 Results Announced**.  On July 21, 2010, CVBF published a release announcing results for the second quarter ended June 30, 2009.  This release stated, in part, the following:

CVB Financial Corp. Reports Record Second Quarter Earnings for 2010

Net income of $19.0 million for the second quarter of 2010

Diluted earnings per common share $0.18

Completed FDIC and Department of Financial Institutions Safety and Soundness Examination

Sold $162.8 million in securities and achieved a gain of $8.8 million

Prepaid $100 million of our $250 million in repurchase agreement debt and took a one-time charge of $5.7 million

CLASS ACTION COMPLAINT

Allowance for credit losses increased to 3.38% of total CBB non-covered loans & leases

ONTARIO, Calif., Jul 21, 2010 (BUSINESS WIRE) -- CVB Financial Corp. (NASDAQ:CVBF) and its subsidiary, Citizens Business Bank ("the Company"), announced record earnings for the second quarter of 2010.

CVB Financial Corp. reported net income of $19.0 million for the second quarter of 2010. This is the highest second quarter earnings in the history of the Company. This represents an increase of $3.1 million, or 19.88%, when compared with net income of $15.9 million for the second quarter of 2009. Diluted earnings per share were $0.18 for the second quarter of 2010. This was up $0.01, or 7.38%, from diluted earnings per share of $0.17 for the same period last year. Second quarter operating results include an $11.0 million provision for credit losses, an $8.8 million gain on sale of securities, and a $5.7 million charge for the prepayment of borrowings.

Net income for the second quarter of 2010 produced a return on beginning equity of 11.68%, a return on average equity of 11.44% and a return on average assets of 1.11%. The efficiency ratio, excluding the provision for credit losses, was 52.05% for the quarter. Operating expenses as a percentage of average assets were 2.42%.

Net income for the six months ending June 30, 2010 was $35.1 million. This represents an increase of $6.1 million, or 21.03%, when compared with net income of $29.0 million for the same period of 2009. Diluted earnings per share for the six months ending June 30, 2010 were $0.33, an increase of $0.03, or 9.90%, over diluted earnings per share of $0.30 for the same period last year. The operating results for the first six months of 2010 include a provision for credit losses of $23.2 million. Net income for the six months ending June 30, 2010 produced a return on beginning equity of 11.10%, a return on average equity of 10.77% and a return on average assets of 1.03%.

The operating results for the second quarter and first six months of 2010 were impacted by the accounting treatment of credit-related

transactions from the San Joaquin Bank ("SJB") loan portfolio as discussed below.

Interest income on loans for the second quarter of 2010 totaled $59.2 million, which includes a $4.5 million discount accretion on covered loans acquired from SJB. This amount represents the discount recognized from accelerated principal payments on SJB loans. It is recorded as a yield adjustment in interest income. Excluding the discount accretion, interest income on loans would have been $54.7 million for the second quarter of 2010. This represents an increase of $4.9 million when compared to interest income on loans of $49.8 million for the same period last year.

The yield adjustment to interest income of $4.5 million for the second quarter of 2010 was partially offset by a $1.6 million reduction in the FDIC loss sharing asset and a loss on sale of covered OREO of $1.1 million. Both the reduction in the FDIC loss sharing asset and the loss on sale of covered OREO appear as a reduction of other operating income.

Interest income on loans for the first six months of 2010 totaled $126.9 million, which includes a $17.9 million discount accretion on covered loans acquired from SJB. This amount represents the discount recognized from accelerated principal payments on SJB loans. It is recorded as a yield adjustment in interest income. Excluding the discount accretion, interest income on loans would have been $109.1 million for the first six months of 2010. This represents an increase of $9.8 million when compared to interest income on loans of $99.3 million for the same period last year.

The yield adjustment to interest income of $17.9 million for the first six months of 2010 was partially offset by a $12.2 million reduction in the FDIC loss sharing asset and a loss on sale of covered OREO of $1.1 million. Both the reduction in the FDIC loss sharing asset and the loss on sale of covered OREO appear as a reduction of other operating income.

42.     While defendant Myers did not make a statement in the July 21, 2010 release, several days later, on July 26, 2010 he was quoted in another release that

CLASS ACTION COMPLAINT

announced the purported retirement of defendant Biebrich as CFO of the Company. The July 26, 2010 release stated, in part, the following:

**CVB Financial Corp. Chief Financial Officer Announces Retirement**

ONTARIO, Calif., Jul 26, 2010 (BUSINESS WIRE) -- Chris Myers, President and Chief Executive Officer of Citizens Business Bank (NASDAQ: CVBF), announced the December 31, 2010 projected retirement of Edward J. Biebrich, Jr., Executive Vice President and Chief Financial Officer for the Bank and CVB Financial Corp., the bank's holding company.

"Ed has enjoyed a very successful 12-year career with Citizens Business Bank," stated Chris Myers, President and CEO. Mr. Biebrich joined the Bank in February of 1998 bringing extensive experience and expertise in banking and finance, as well as the private business sector.

Under Biebrich's financial leadership, the Bank has grown from $1.8 billion to $6.9 billion in assets. Net earnings have grown from $24.1 million in 1998 to over $65 million in 2009. "Ed has assembled and led a first-rate team of financial accounting and investment professionals. In addition, Ed has meant a lot more to this organization in terms of his overall leadership related to strategy, teamwork, and ethics. He will be truly missed," commented Myers.

43.     The statements made by defendants and contained in the Company's July 21 2010 and July 26, 2010 releases were materially false and misleading when made, and known by defendants to be false at that time, or were deliberately disregarded as such thereby, for the reasons stated in ¶32, *supra*.

30

## THE TRUE FINANCIAL AND OPERATIONAL
## CONDITION OF CVBF IS BELATED DISCLOSED

44.     On August 9, 2010, when defendants filed with the SEC the
Company's 2Q:10 Form 10-Q for the quarter ended June 30, 2010, they shocked
the market by announcing that the Company was the subject of an investigation by
the SEC into possible accounting violations related to the manner in which
defendants accounted for troubled loans.  This belated disclosure had an immediate
adverse impact on the price of Company shares.  As evidence of the foregoing, the
following day, August 10, 2010, Marketwatch reported, in part, the following:

**CVB slumps 22% after SEC's subpoena**

**Investigation may divert management from failed-bank purchases**

SAN FRANCISCO (MarketWatch) -- CVB Financial shares slumped
more than 20% Tuesday after the California bank said it had received
a subpoena from the Securities and Exchange Commission asking for
information about how the company handles troubled loans.

The investigation raised concern that CVB's efforts to acquire failed
banks may be disrupted for a short period.

CVB (NASDAQ:CVBF) said the subpoena came from the Los
Angeles office of the SEC on July 26, according to a quarterly
regulatory filing by the lender late Monday.

                    *     *     *

CVB shares slumped 22% to close at $8.00 Tuesday. That left the
stock down more than 7% so far this year.

                    *     *     *

CLASS ACTION COMPLAINT

**Bleak market**

During a December presentation to investors, Myers described a bleak commercial-property market in Ontario, a city in the heart of the Inland Empire and the site of CVB's headquarters.

"You go up our street -- there are 10 buildings of 50,000 to 150,000 square feet with 75% vacancy," Myers said of the town's main artery, Haven Avenue, according to a transcript of the presentation. "We have zero loans against those 10 buildings."

However, an office building at 800 N. Haven Ave. in Ontario was part of collateral for a $16.575 million revolving line of credit that Citizens Business Bank, the banking unit of CVB, extended in March 2008, according to the deed of trust. In August of that year, the property partly secured a $16 million promissory note issued by the bank, another deed of trust shows.

CVB has its main office at 701 N. Haven Avenue, a few minutes' walk from the property....

**'Unusual'**

The timing of the SEC investigation is unusual because it came so soon after the Federal Deposit Insurance Corp. completed its annual safety and soundness examination of CVB's main banking subsidiary, Citizens Business Bank, Brian Zabora and Christopher Mutascio, analysts at Stifel Nicolaus, wrote in a note to investors on Tuesday.

The FDIC, the main regulator of the bank, completed its examination in May, CVB noted in its second-quarter earnings report.

"It seems as if the company's primary regulator may not be involved in this inquiry," the analysts said. "If so, that also may be a bit unusual as to our knowledge many inquiries like this are done [by the SEC in conjunction with the lead bank regulator]."

FDIC spokesman Andrew Gray declined to comment.

45.     The market for CVBF's common stock was open, well-developed, and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, CVBF common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired CVBF common stocking upon the integrity of the market price of CVBF common stock and market information relating to CVBF, and have been damaged thereby.

46.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of CVBF common stock by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business, and its operations, as alleged herein.

47.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused - - or were a substantial contributing cause - - of the damages sustained by plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about CVBF's business, prospects, and operations.  These material misstatements

1    and omissions had the cause and effect of creating in the market an unrealistically

2    positive assessment of CVBF and its business, prospects, and operations, thus

3
     causing the Company's common stock to be overvalued and artificially inflated at
4
5    all relevant times.  Defendants' materially false and misleading statements during

6    the Class Period resulted in plaintiff and other members of the Class purchasing the

7
     Company's common stock at artificially inflated prices, thus causing the damages
8
9    complained of herein.

10                       **CAUSATION AND ECONOMIC LOSS**

11
           48.     During the Class Period, as detailed herein, defendants engaged in a
12
13   scheme to deceive the market, engaged in a course of conduct that artificially

14   inflated CVBF's stock price, and operated a fraud or deceit on Class Period

15
     purchasers of CVBF's stock by misrepresenting the Company's financial results
16
17   and operating condition.  Over a period of approximately eight months, defendants

18   improperly inflated the Company's financial results.  Ultimately, however, when

19
     defendants' prior misrepresentations and fraudulent conduct came to be revealed
20
21   and was apparent to investors, shares of CVBF declined precipitously - - evidence

22   that the prior artificial inflation in the price of CVBF's shares was eradicated.  As a

23
     result of their purchases of CVBF stock during the Class Period, plaintiff and other
24
25   members of the Class suffered economic losses, *i.e.*, damages under the federal

26   securities laws.

27

28

                                         34

49.     By improperly characterizing the Company's financial results and misrepresenting its prospects, the defendants presented a misleading image of CVBF's business and future growth prospects.     During the Class Period, defendants repeatedly emphasized the ability of the Company to monitor and control its operations and expenses, and consistently reported results within the range of guidance sponsored or endorsed by the Company.   These claims caused and maintained the artificial inflation in CVBF's stock price throughout the Class Period and until the truth about the Company was ultimately revealed to investors.

50.     The decline in CVBF's stock price at the end of the Class Period was a direct result of the nature and extend of defendants' fraud being revealed to investors and to the market.   The timing and magnitude of CVBF's stock price decline negates any inference that the losses suffered by plaintiff and the other members of the Class was caused by changed market conditions, macroeconomic or industry factors, or even Company-specific facts unrelated to defendants' fraudulent conduct.   During the same period in which CVBF's share price fell over 43% as a result of defendants fraud being revealed, the Standard & Poor's 500 securities index was relatively unchanged.

51.     The economic loss, *i.e.*, damages suffered by plaintiff and other members of the Class, was a direct result of defendants' fraudulent scheme to artificially inflate the price of CVBF's stock and the subsequent significant decline

CLASS ACTION COMPLAINT

in the value of the Company's shares when defendants' prior misstatements and other fraudulent conduct was revealed.  The artificial inflation in the price of CVBF's shares during the Class Period and the sudden and dramatic decline in the price of these shares immediately following defendants' belated disclosures on August 9, 2010, are evidenced by the chart below:



## ADDITIONAL SCIENTER ALLEGATIONS

52.   As alleged herein, defendants acted with scienter in that each defendant knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal

36

securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding CVBF, their control over, and/or receipt and/or modification of CVBF's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning CVBF, participated in the fraudulent scheme alleged herein.

53.    Defendants were motivated to materially misrepresent to the SEC and investors the true financial condition of the Company because their scheme and illegal course of conduct: (a) deceived the investing public regarding CVBF's business, operations, management and the intrinsic value of CVBF common stock; (b) enabled CVBF insiders to sell their privately held CVBF shares while in possession of material adverse non-public information about the Company; and, (c) caused plaintiff and other members of the Class to purchase CVBF common stock at artificially inflated prices.

///

///

///

CLASS ACTION COMPLAINT

1    54.    The insider stock sales which occurred within the Class Period are set

2  forth below:

| Date | Insider | Shares | Type | Transaction | Value* |
|------|---------|--------|------|-------------|--------|
| Aug 2, 2010 | MYERS CHRISTOPHER D Officer | 5,500 | Direct | Automatic Sale at $10.35 per share. | $56,925 |
| May 27, 2010 | BIEBRICH EDWARD JR Officer | 4,680 | Indirect | Disposition (Non Open Market) at $10.29 per share. | $48,157 |
| Apr 26, 2010 | BIEBRICH EDWARD JR Officer | 10,000 | Indirect | Sale at $11.51 per share. | $115,100 |
| Mar 24, 2010 | BIEBRICH EDWARD JR Officer | 3,000 | Indirect | Sale at $10.53 per share. | $31,589 |
| Feb 24, 2010 | MYERS CHRISTOPHER D Officer | 13,000 | Direct | Sale at $9.54 per share. | $124,019 |
| Jan 29, 2010 | BIEBRICH EDWARD JR Officer | 10,000 | Indirect | Sale at $9.95 per share. | $99,500 |
| Jan 25, 2010 | BIEBRICH EDWARD JR Officer | 20,000 | Indirect | Sale at $9.37 per share. | $187,399 |

## Applicability Of Presumption Of Reliance:
## Fraud-On-The-Market Doctrine

55.    At all relevant times, the market for CVBF's common stock was an

efficient market for the following reasons, among others:

(a)    CVBF's stock met the requirements for listing, and was listed

and actively traded on the Nasdaq national market exchange, a highly efficient and

automated market;

(b)    As a regulated issuer, CVBF filed periodic public reports with

the SEC and the Nasdaq;

(c)    CVBF regularly communicated with public investors *via*

established market communication mechanisms, including through regular

disseminations of press releases on the national circuits of major newswire services

and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and,

(d)     CVBF was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

56.     As a result of the foregoing, the market for CVBF securities promptly digested current information regarding CVBF from all publicly available sources and reflected such information in CVBF stock price.  Under these circumstances, all purchasers of CVBF common stock during the Class Period suffered similar injury through their purchase of CVBF common stock at artificially inflated prices and a presumption of reliance applies.

## **NO SAFE HARBOR**

57.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint.  Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the

CLASS ACTION COMPLAINT

extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of CVBF who knew that those statements were false when made.

## BASIS OF ALLEGATIONS

58.    Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of SEC filings by CVBF, as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company.   Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## FIRST CLAIM

### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

59.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

CLASS ACTION COMPLAINT

60.   During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (a) deceive the investing public regarding CVBF's business, operations, management and the intrinsic value of CVBF common stock; (b) enable CVBF insiders to sell their privately held CVBF shares while in possession of material adverse non-public information about the Company; and (c) cause plaintiff and other members of the Class to purchase CVBF common stock at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, defendants, jointly and individually (and each of them) took the actions set forth herein.

61.   Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and, (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for CVBF's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

62.   Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged

CLASS ACTION COMPLAINT

and participated in a continuous course of conduct to conceal adverse material information about the business, operations, and future prospects of CVBF as specified herein.

63.   These defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of CVBF's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about CVBF and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of CVBF common stock during the Class Period.

64.   Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (a) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (b) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation,

development and reporting of the Company's internal budgets, plans, projections, and/or reports; (c) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; and, (d) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or deliberately disregarded was materially false and misleading.

65.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with deliberate disregard for the truth in that they failed to ascertain and disclose such facts. Such defendants' material misrepresentations and/or omissions were done knowingly or deliberately for the purpose and effect of concealing CVBF's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations, and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were deliberate in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

43

66.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of CVBF common stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices of CVBF's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities traded, and/or on the absence of material adverse information that was known to or deliberately disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired CVBF common stock during the Class Period at artificially high prices and were damaged thereby.

67.     At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that CVBF was experiencing, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their CVBF common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

CLASS ACTION COMPLAINT

68. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

69. As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of
### The Exchange Act Against Individual Defendants

70. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

71. The Individual Defendants acted as controlling persons of CVBF within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the

45

Company's reports, press releases, public filings, and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

73.    As set forth above, CVBF and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.   By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

CLASS ACTION COMPLAINT

1    **B.**    Awarding compensatory damages in favor of plaintiff and the
2   other Class members against all defendants, jointly and severally, for all damages
3
4   sustained as a result of defendants' wrongdoing, in an amount to be proven at trial,
5   including interest thereon;

6    **C.**    Awarding plaintiff and the Class their reasonable costs and
7
8   expenses incurred in this action, including counsel fees and expert fees;

9    **D.**    Awarding extraordinary, equitable and/or injunctive relief as
10  permitted by law, equity and the federal statutory provisions sued hereunder,
11
12  pursuant to Rules 64 and 65 and any appropriate state law remedies to assure that
13  the Class has an effective remedy; and,

14   **E.**    Such other and further relief as the Court may deem just and
15
16  proper.

17              **JURY TRIAL DEMANDED**
18
19  Plaintiff hereby demands a trial by jury.

20  Dated:      August 20, 2010
21
22
23  MICHAEL D. BRAUN
    **BRAUN LAW GROUP, P.C.**
24  10680 Pico Boulevard, Suite 280
25  Los Angeles, CA 90064
    Telephone: (310) 836-6000
26  Facsimile: (310) 836-6010
27  Email: mdb@braunlawgroup.com
28

---

47

1

2
KIM MILLER
**KAHN SWICK & FOTI, LLC**
3
500 Fifth Avenue, Ste. 1810
New York, NY 10110
4
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
5
Email: kim.miller@ksfcounsel.com
6

7
LEWIS KAHN
**KAHN SWICK & FOTI, LLC**
8
206 Covington Street
Madisonville, Louisiana 70447
9
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
10
Email: lewis.kahn@ksfcounsel.com
11

12
**Attorneys for Plaintiff**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

## CERTIFICATION IN SUPPORT OF APPLICATION FOR NAMED PLAINTIFF

_BARRY R. LLOYD_ (name) ("plaintiff") declares, as to the claims asserted under the federal securities law, that:

1.  Plaintiff has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws and retains the firm of Kahn Swick and Foti LLC. and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.  Plaintiff did not purchase securities of CVB Financial Inc. at the direction of counsel or in order to participate in a private action under the federal securities laws.

3.  Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.  During the Class Period, plaintiff has executed transactions in the securities of CVB Financial Inc. as follows. See Attached Schedule.

5.  In the last three years, plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6.  Plaintiff will not accept payment for serving as a lead plaintiff beyond it's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: _8/19_ , 2010

_Plaintiff Signature_

_16781 WEYBURN AVE._
_YORBA LINDA CA 92886_

Plaintiff Address

_BARRY R. LLOYD_
Printed Name

_ITLDEW1 @AOL.COM_
Plaintiff E-mail

_714-812-3484_
Plaintiff Phone Number

### Schedule of Class Period Purchases for
### Barry R. Lloyd in CVB Financial, Inc.

| Date | Units | Price |
|---|---|---|
| January 15, 2010 | 85 | $ 9.55 |
| June/July 2010 Dividend | 78 | $ 10.50 |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV10- 6256 MMM (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
    **312 N. Spring St., Rm. G-8**
    **Los Angeles, CA 90012**

[ ] **Southern Division**
    **411 West Fourth St., Rm. 1-053**
    **Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
    **3470 Twelfth St., Rm. 134**
    **Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
LEWIS KAHN
KAHN SWICK & FOTI, LLC
206 Covington Street
Madisonville, Louisiana 70447

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY R. LLOYD, Individually And On Behalf of All Others Similarly Situated,<br><br>PLAINTIFF(S)<br>v.<br><br>CVB FINANCIAL CORP., CHRISTOPHER D. MYERS, and EDWARD J. BIEBRICH JR.,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV10  6256** _mmm(PSWx)<br><br><br>**SUMMONS** |

TO:    DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Lewis Kahn_____, whose address is _KAHN SWICK & FOTI, LLC,  206 Covington Street Madisonville, Louisiana 70447____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: **23 AUG 2010**

By: _____
MARCIA DAVIS
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| BARRY R. LLOYD | CVB FINANCIAL CORP., CHRISTOPHER D. MYERS, and EDWARD J. BIEBRICH JR. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Lewis S. Kahn; Kahn Swick & Foti, LLC<br>206 Covington Street<br>Madisonville, Louisiana 70447 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. §§ 78j(b) and 78t(a), and 17 C.F.R. § 240.10b-5. Violations of the federal securities laws.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☑ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | SOCIAL SECURITY | |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | REAL PROPERTY | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | | ☐ 220 Foreclosure | IMMIGRATION | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | | ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | | ☐ 871 IRS-Third Party 26 USC 7609 |

CV10 6256

FOR OFFICE USE ONLY: Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)         CIVIL COVER SHEET         Page 1 of 2

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)    ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date   8/20/10

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                          **CIVIL COVER SHEET**