UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY LLOYD, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>CVB FINANCIAL CORPORATION, CHRISTOPHER D. MYERS, and EDWARD J. BIERBRICH, JR,<br><br>        Defendants. | ) CASE NO. CV 10-06256 MMM (PJWx)<br>)<br>) ORDER GRANTING MOTION FOR<br>) CONSOLIDATION OF RELATED CASES<br>) AND FOR APPOINTMENT AS LEAD<br>) PLAINTIFF AND LEAD COUNSEL<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

This is a putative class action alleging securities fraud under the Securities Exchange Act of 1934 and the Private Securities Litigation Reform Act of 1995 ("PSLRA" or the "Reform Act"). On October 22, 2010, the Jacksonville Police and Fire Pension Fund (the "Jacksonville Fund") filed a motion for appointment as lead plaintiff and for consolidation of this action with a related case, *Englund v. CVB Financial Corporation*.[1]

---

[1] Motion for Appointment of Counsel Appointment as Lead Plaintiff and for Consolidation of Related Actions ("Jacksonville Motion"), Docket No. 10 (Oct. 22, 2010). The related case – *Carl Englund v. CVB Financial Corporation*, CV 10-06815 MMM (PJWx) – was filed on September 14, 2010 (See Complaint ("Englund Complaint"), Docket No. 1 (Sept. 14, 2010)), and transferred to this court on November 4, 2010 (see Order Re Transfer Pursuant to General Order 08-05, Docket No. 16 (Nov. 4, 2010)). On October 22, 2010, Carl Englund, an individual investor, filed a motion for appointment as lead plaintiff and for consolidation of this case with the action he had filed. (Motion for Appointment of Counsel and for Appointment as Lead Plaintiff, Docket No. 7 (Oct. 22, 2010).) On January 3, 2011, Englund withdrew his motion. (Notice of Withdrawal for Appointment of Counsel, Docket No. 16 (Jan. 3, 2011).)

## I. BACKGROUND

Both this action and the *Englund* action have been filed by plaintiffs seeking to represent a class of individuals who purchased the common stock of CVB Financial Corporation ("CVB") between October 21, 2009 and August 9, 2010.[2] The complaints contain substantially identical factual allegations. CVB is a bank holding company for Citizens Business Bank, a California-based lender with almost seven billion dollars in assets that provides retail banking and financial services to small and mid-sized businesses and high net worth individuals primarily in the Inland Empire, Los Angeles County, Orange County, and Central Valley regions.[3] The complaints allege that, throughout the class period, CVB represented that it was adept at managing its loan portfolio and banking assets, and repeatedly stated that it maintained systems, procedures, and controls that gave it a competitive advantage and enabled it to produce strong profits.[4] Also during the class period, CVB purportedly issued repeated guidance and reported results that met or exceeded analysts' expectations, including allegedly record-setting results for the second quarter of 2010.[5] The complaints assert CVB was well-aware that its business model was entirely dependent on its ability to manage its loan portfolio and properly value its loans, especially impaired loans that required write-downs to reflect their true market value.[6] CVB was also allegedly aware that it was critical for it to maintain an adequate system of internal controls if it was going to manage the loan portfolio properly.[7]

Plaintiffs assert that CVB's representations concerning its systems, procedures and controls were untrue. Specifically, they contend that, unbeknownst to investors, CVB manipulated its

---

[2]Complaint ("Lloyd Complaint"), Docket No. 1 (Aug. 23, 2010) at 2; Englund Complaint, ¶ 4.

[3]Lloyd Complaint, ¶ 1; Englund Complaint, ¶ 5.

[4]Lloyd Complaint, ¶ 2; Englund Complaint, ¶¶ 24-25.

[5]*Id*.

[6]Lloyd Complaint, ¶ 3.

[7]*Id*.

accounting during the class period, failing properly to account for impaired loans; materially overstating the company's profitability by violating accounting standards in reporting troubled loans; failing to prepare its statements and reports in accordance with generally accepted accounting principles and Securities and Exchange Commission rules; and failing to disclose that it did not have adequate systems of internal operations and financial controls in place.[8] Investors did not learn these adverse facts until August 9, 2010, when CVB filed a report with the SEC revealing that the company was being investigated by the SEC for possible accounting violations associated with its reporting of troubled loans.[9] CVB's disclosure had an immediate and adverse impact on the price of its shares.[10] Both complaints state two causes of action: (1) violation of § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, and (2) violation of § 20(a) of the Securities and Exchange Act.[11]

The Jacksonville Fund, which seeks appointment as lead plaintiff, contends that it sustained significant losses as a result of CVB's false representations.[12]

The Jacksonville Fund's motion is currently on calendar for hearing on January 24, 2011. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds the matter appropriate for decision without oral argument and vacates the hearing scheduled for January 24, 2011.

## II. DISCUSSION

Where multiple securities class actions have been filed involving the same or substantially similar claims, the Reform Act directs that the court before which the actions are pending first

[8]Lloyd Complaint, ¶ 4; Englund Complaint, ¶¶ 7-8, 24-25.

[9]Lloyd Complaint, ¶ 5 ;Englund Complaint, ¶¶ 6, 9.

[10]Lloyd Complaint, ¶ 5; Englund Complaint, ¶¶ 7-8.

[11]Lloyd Complaint, ¶¶ 59-73; Englund Complaint, ¶¶ 42-47.

[12]Jacksonville Motion at 2.

consider whether consolidation is appropriate.  See 15 U.S.C. § 78u-4(a)(3)(B)(ii);[13] see also *In re MicroStrategy Inc. Securities Litig.*, 110 F.Supp.2d 427, 430 (E.D. Va. 2000) ("The threshold issue under the PSLRA is consolidation"); *Weisz v. Calpine Corp.*, No. 4:02-CV-1200, 2002 WL 32818827, *2 (N.D. Cal. Aug. 19, 2002) ("The PSLRA 'directs that cases should be consolidated where . . . there is "more than one action on behalf of a class asserting substantially the same claim or claims.'"  Where, as here, there is more than one action on behalf of the proposed class asserting substantially the same claim, Section § 78u-4(a)(3)(B)(ii) of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(ii), requires that any motions for consolidation be decided first, and that 'as soon as practicable' thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions," quoting  *In re Cendant Corp.Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998)).

As soon as practicable after a decision regarding consolidate has bee made, the court should appoint as lead plaintiff "the member or members of the purported plaintiff class that [it] determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(I); see also *In re MicroStrategy Inc. Securities Litig.*, 110 F.Supp.2d at 432 ("The statute next requires the selection of a lead plaintiff").  The expectation is that the person or group with the largest financial stake can best prosecute the claims, and will best be able to select, negotiate with, and monitor class counsel.  This presumption can be rebutted, however, and the district court is charged with oversight of the process.  See 15 U.S.C. § 77z-1 (a)(3)(B)(iii)(I); see also *In re MicroStrategy Inc. Securities Litig.*, 110 F.Supp.2d at 433 ("[T]he statute creates a rebuttable presumption that the most adequate plaintiff is the 'person or group of persons' who (i) 'has either filed the complaint or made a motion in response to [notice given],' 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa), (ii) 'has the largest financial interest in the relief sought by

---

[13]That section provides: "If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this paragraph."

the class,' 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) and (iii) 'otherwise satisfies the requirements of [Rule 23, Fed. R. Civ. P.],'  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  This presumption may be rebutted by evidence that the presumptively 'most adequate plaintiff' (i) 'will not fairly and adequately protect the interests of the class' or (ii) 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class'").

Once a party is appointed lead plaintiff, it selects counsel to represent the class, subject to the court's approval.  See 15 U.S.C. § 77z-1(a)(3)(B)(v); see *Cohen v. U.S. Dist. Court for Northern Dist. of California*, 586 F.3d 703, 709 (9th Cir. 2009) ("Here we address only the PSLRA's mandate that '[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.'  15 U.S.C. § 78u-4(a)(3)(B)(v).  This provision clearly identifies the most adequate plaintiff as the actor that 'select[s] and retain[s]' class counsel.  Although this power is subject to court approval and is therefore not absolute, it plainly belongs to the lead plaintiff").

### A.    Consolidation of Related Actions

Under Rule 42(a) of the Federal Rules of Civil Procedure,

"[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary cost or delay."

See FED.R.CIV.PROC. 42(a).

The PSLRA directs that cases be consolidated where, as here, there is "more than one action on behalf of a class asserting substantially the same claim or claims."  See 15 U.S.C. § 78u-4(a)(3)(B)(ii).  Neither Rule 42 nor the PSLRA demands that actions be identical before they may be consolidated.  See *In re MicroStrategy Inc. Securities Litig.*, 110 F.Supp.2d at 431 ("The existence of slight differences in class periods, parties, or damages among the suits does not necessarily defeat consolidation where the essential claims and factual allegations are similar").  See also *In re Cendant Corp. Litig.*, 182 F.R.D. at 479 (noting that different class periods, and different measure of damages does not preclude consolidation).  Rather, in deciding

whether to consolidate actions under Rule 42(a), a court must balance the savings of time and effort consolidation will produce against any inconvenience, delay, confusion, or prejudice that may result. See *Burrus v. Turnbo*, 743 F.2d 693, 704 (9th Cir. 1984), vacated on other grounds sub nom. *Hijar v. Burrus*, 474 U.S. 1016 (1985).

Here, the *Englund* and *Lloyd* complaints contain substantially identical factual allegations. They set forth identical class periods and class definitions and seek identical relief. Clearly, the burden on the parties and on witnesses will be less if the actions are consolidated than it they are maintained separately. Judicial resources will be conserved, and consolidation will avoid the possible inconsistent adjudication of common factual and legal issues and lessen the time and expense required for all parties. Accordingly, the court finds ample justification for consolidation of the cases

### B.      Appointment of Lead Plaintiff

On August 23, 2010, Barry Lloyd, the plaintiff who filed the first action against CVB, published notice of the pendency of the action.[14] The notice satisfied the content requirements of the Reform Act by advising of the pendency of the action, the claims asserted therein, the purported class period, and the deadline by which motions to serve as lead plaintiff had to be filed.[15] The Reform Act provides that within "60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Only the Jacksonville Fund and Carl Englund sought appointment as lead plaintiff during the sixty day period.[16] As noted, Englund subsequently withdrew his motion.

The Reform Act requires that the court select a lead plaintiff "as soon as practicable" after consolidation has been determined. 15 U.S.C. § 78u-4(a)(3)(B)(ii); see also *In re Cree, Inc.,*

---

[14]Declaration of Blair A. Nicholas ("Nicholas Decl."), Docket No. 11 (Oct. 22, 2010), Exh. A (copy of Lloyd's notice of pendency of action).

[15]*Id.*

[16]The current motion was filed on October 22, 2010, sixty days after August 23, 2010.

*Securities Litig.*, 219 F.R.D. 369, 371 (M.D.N.C. 2003).  The statute provides that

> "the court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter . . . referred to as the 'most adequate plaintiff'). . . ."  15 U.S.C. § 78u-4(a)(3)(B)(i).

In selecting the lead plaintiff,

> "the court shall adopt a presumption that the most adequate plaintiff in any private action . . . is the person or group of persons that – (aa) has either filed the complaint or made a motion [for designation as lead plaintiff]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

This presumption may be rebutted

> "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff – (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."   15 U.S.C. § 78u-4(a)(3)(B)((iii))(II).

The statute contains a restriction on "professional plaintiffs," meaning that

> "[e]xcept as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period." 15 U.S.C. § 78u-4(a)(3)(B)(vi).

As the Jacksonville Fund has filed a motion for appointment as lead plaintiff, it has satisfied the first requirement for consideration under the statute.  In addition, the Jacksonville Fund has

filed the certification mandated by 15 U.S.C. § 78u-4(a)(2).[17]  See, e.g., *In re Advanced Tissue Sciences Securities Litigation*, 184 F.R.D. 346, 349 (S.D. Cal. 1998) (explaining the certification requirement for parties seeking appointment as lead plaintiff).  Citing the remaining factors set forth in the statute, the Jacksonville Fund asserts that it is presumptively the most adequate plaintiff.[18]  No member of the putative class has asserted otherwise.

### 1.    Whether the Jacksonville Fund Is an Adequate Plaintiff

### a.    Financial Stake

By emphasizing financial stake, the Reform Act establishes a preference that sophisticated institutional investors direct the course of securities cases.  See, e.g., *Armour v. Network Assocs., Inc.*, 171 F.Supp.2d 1044, 1048 (N.D. Cal. 2001) ("The legislative history of the PSLRA reveals that the above provisions were motivated by Congressional concerns about the prevalence of 'lawyer-driven' securities class actions"); *Gluck v. CellStar Corp.*, 976 F.Supp. 542, 548 (N.D. Tex. 1997) ("The legislative history of the Reform Act is replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors"); *Greebel v. FTP Software, Inc.*, 939 F.Supp. 57, 63-64 (D. Mass. 1996) (same); *Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997) ("The Reform Act affords large, sophisticated institutional investors a preferred position in securities class actions. . . .  Congress sought to eliminate

---

[17]The statute requires that "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that – (i) states that the plaintiff has reviewed the complaint and authorized its filing; (ii) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this chapter; (iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary; (iv) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint; (v) identifies any other action under this chapter, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class; and (vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4)."  15 U.S.C. § 78u-4(a)(2).

[18]Jacksonville Motion at 2.

figurehead plaintiffs who exercise no meaningful supervision of litigation").

The Jacksonville Fund asserts that it holds the largest financial stake in this litigation. The fund sustained losses of approximately $157,940.[19] No other investor contends that he, she or it has sustained greater losses. Because the Jacksonville Fund has demonstrated that it is the investor with the largest financial stake in this litigation – the most important factor in choosing a lead plaintiff – the court next considers whether it satisfies the requirements of Rule 23. See *Advanced Tissue Sciences Securities Litig.*, 184 F.R.D. at 350 ("All else equal the PSRLA requires that a court appoint as lead plaintiff the 'person or group of persons that . . . in the determination of the court has the *largest* financial interest in the relief sought by the class'").

**b.     Typicality and Adequacy under Rule 23**

"A wide-ranging analysis under Rule 23 is not appropriate [at the initial stage of the litigation] and should be left for consideration on a motion for class certification." *Fischler v. AmSouth Bancorp.*, No. 96-1567-Civ-T-17A, 1997 WL 118429, *2 (M.D. Fla. Feb. 6, 1997); see also *Gluck*, 976 F.Supp. at 546 ("Evidence regarding the requirements of Rule 23 will, of course, be heard in full at the class certification hearing. There is no need to require anything more than a preliminary showing at this stage"). Some inquiry under Rule 23 is nonetheless required to determine whether there is reason to believe that the presumptively most adequate plaintiff has interests at odds with the remainder of the class. See *Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398, 408-09 (D. Minn. 1998). This inquiry should "focus[ ] on the qualities of the class representatives enumerated in Rule 23(a)(3) and 23(a)(4), that is typicality and adequacy." *Gluck*, 976 F.Supp. at 546. See also *In re Flight Safety Technologies, Inc. Securities Litig.*, 231 F.R.D. 124, 130 (D. Conn. 2005) ("[w]hile the PSLRA requires that the lead plaintiff satisfy all of Rule 23's requirements, the third and fourth requirements of Rule 23 – typicality and adequacy – are the key factors for a court's lead plaintiff determination" (internal quotations omitted)).

---

[19]Jacksonville Motion at 5; Nicholas Decl., Exh. C (certification of losses); *id.*, Exh. D (statement of losses).

### (1)    Typicality

"The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the [lead plaintiff] ha[s] incentives that align with those of absent class members so . . . that the absentees' interests will be fairly represented." *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994) (citation omitted).   "Under [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).   "Typicality entails an inquiry whether the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Baby Neal*, 43 F.3d at 57-58 (internal quotation marks and citations omitted); see also *In re Cree, Inc., Securities Litig.*, 219 F.R.D. at 372 ("The typicality requirement of the rule requires that a lead plaintiff suffer the same injuries as the class as a result of the defendant's conduct and ha[ve] claims based on the same legal issues"); *Patrykus v. Gomilla*, 121 F.R.D. 357, 362 (N.D. Ill. 1988) (holding that a "representative's claim is typical if it arises from the same . . . practice or course of conduct that gives rise to the claims of the other class members and . . . is based on the same legal theory" (internal quotation marks and citation omitted)).

Like other class members, the Jacksonville Fund purchased CVB common stock during the class period at prices that were allegedly artificially inflated by CVB's false and misleading representations, and sustained monetary damages as a result.[20]   The typicality requirement thus appears to be satisfied because the Fund's claims arise "from the same event[s] or course of conduct that gives rise to the claims of other class members," and are "based on the same legal theory."   See *Baby Neal*, 43 F.3d at 58.   The Jacksonville Fund purchased its shares of CVB on the open market, meaning that its claims will be based on the same general facts and legal theories as other class members' claims.   Compare *In re Critical Path, Inc. Securities Litig.*, 156

---

[20]Jacksonville Motion at 7; see also Nicholas Decl., Exh. C (certification of losses pursuant to federal securities law), Exh. D (statement of losses).

F.Supp.2d 1102, 1111 (N.D. Cal. 2001) (rejecting a potentially suitable lead plaintiff because it had purchased stock through a private placement, not on the open market); *In re Network Associates, Inc., Securities Litig.*, 76 F.Supp.2d 1017, 1029-30 (N.D. Cal. 1999) (denying an institutional investor lead plaintiff status because it had acquired its shares through a merger transaction and therefore may have relied on non-public information).

In addition, there are common questions of law and fact apparent on the face of the complaint, including (1) whether CVB violated the securities laws by misrepresenting or omitting material facts during the class period; (2) whether the CVB and its agents acted knowingly or with deliberate recklessness; (3) whether CVB's stock price was artificially inflated; and (4) whether, and to what extent, plaintiffs suffered damages. See, e.g., *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 667 (C.D. Cal. 2005) ("Here, Kurtz's claims are typical because, just like other class members, he: (1) purchased or acquired Autobytel securities during the Class period, (2) at prices alleged to be artificially inflated by defendants' materially false and misleading statements and/or omissions, and (3) suffered damage as a result"). Thus, the court's review satisfies it that the Jacksonville Fund has made the necessary preliminary showing that it meets the typicality prong of Rule 23.

### (2)    Adequacy of Class Representation

Rule 23(a) requires that the person representing the class be able "fairly and adequately to protect the interests" of all members in the class. FED.R.CIV.PROC. 23(a)(4). Whether the class representative will adequately represent the class depends on the circumstances of each case. *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981). The Ninth Circuit has held that representation is "adequate" when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive. *In re Northern Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982). In addition, the class representative must have a sufficient interest in the outcome of the case to ensure vigorous advocacy. See *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986). "Adequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed

11

lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff[s] to vigorously prosecute the action." *In re Milestone Scientific Securities Litig.*, 183 F.R.D. 404, 416 (D.N.J.1998).

Analysis of this factor partially mirrors the analysis of whether or not a plaintiff has a large enough financial incentive to vigorously monitor the litigation. As noted, the Jacksonville Fund appears to have suffered the largest single loss of any plaintiff. It thus has a sufficient interest in the outcome of the case to ensure that the action will be vigorously prosecuted. Finally, no party has suggested that the other factors relevant in assessing adequacy – e.g., the employment of competent counsel, the absence of antagonistic interests with absent class members, and the absence of collusion – are not met. Accordingly, the court finds that the Jacksonville Fund will adequately represent the proposed class.

Because the Jacksonville Fund has suffered the greatest financial loss and has demonstrated that it meets the requirements, at least preliminarily, of typicality and adequacy under Rule 23, the court finds that the Jacksonville Fund is presumptively the most adequate lead plaintiff in this matter. Because no member of the putative class has attempted to rebut the presumption, the court grants the fund's motion for appointment as lead plaintiff.

## C.    Appointment of Class Counsel

Once the court has designated a lead plaintiff, the PSLRA directs that that plaintiff, "subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). A court may disturb the lead plaintiff's choice of counsel only if it appears necessary to "protect the interests of the class." 15 U.S.C. § 78u-(a)(3)(B)(iii)(II)(aa).

The Jacksonville Fund indicates that it wishes to retain the law firm of Bernstein Litowitz, LLP as lead counsel.[21] The court has reviewed the firm's résumé, and is satisfied that it is capable of serving competently in this role. Bernstein Litowitz has been appointed sole or co-lead counsel

---

[21]Jacksonville Motion at 8.

in numerous complex securities class actions in this district and around the country.[22]   The firm clearly has adequate experience litigating securities fraud class actions on behalf of individual investors, and its briefing to date indicates a familiarity with the applicable law.  Accordingly, the Jacksonville Fund's request that its selection of Berstein Litowitz as lead counsel be approved is granted.

### III.  CONCLUSION

For the reasons stated, the court consolidates *Englund v. CVB Financial Corporation, et al.* and *Barry Lloyd v. CVB Financial Corporation, et al.* for all purposes.  The court also grants the Jacksonville Fund's motion for appointment as lead plaintiff and approves its selection of lead counsel.

DATED: January 21, 2011

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

---

[22]Nicholas Decl., Exh. E (Bernstein Litowitz's firm biography).  For example, Bernstein Litowitz served as co-lead counsel in *In re WorldCom, Inc. Securities Litigation*, a case litigated in the Southern District of New York that resulted in a settlement fund exceeding six billion dollars.  The firm also served as co-lead counsel in *In re McKesson HBOC, Inc. Securities Litigation*, a case filed in the Northern District of California; there, the firm negotiated a settlement to which the issuer defendant contributed $960 million, the auditor defendant contributed $72 million, and the investment bank defendant contributed $10 million.  Bernstein Litowitz is currently serving as lead counsel in the *Toyota* and *New Century* securities class actions in this district.  Since the enactment of the PSLRA, Bernstein Litowitz has served as lead or co-lead counsel in numerous other securities class actions in federal district courts within the Ninth Circuit, including *In re International Rectifier Corp. Securities Litigation* (Central District of California), *In re Gemstar-TV Guide International Securities Litigation* (Central District of California), *In re Legato Systems Inc. Securities Litigation* (Northern District of California), and *In re Network Assocs. Securities Litigation* (Northern District of California). (Jacksonville Motion at 9.)