VICK LAW GROUP, APC
  Scott Vick (No. 171944)
  Jason T. Riddick (No. 235980)
  Rachelle S. Torres (No. 243392)
  Lital Gilboa (No. 263372)
800 West Sixth Street, Suite 1220
Los Angeles, California 90017
Telephone:  (213) 784-6225
Facsimile:  (213) 985-7155
E-Mail:  Scott@vicklawgroup.com
         Jason@vicklawgroup.com

WACHTELL, LIPTON, ROSEN & KATZ
  David M. Murphy (*pro hac vice*)
  Warren R. Stern (*pro hac vice*)
  Wayne M. Carlin (*pro hac vice*)
  Jeffrey D. Hoschander (*pro hac vice*)
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
E-Mail:  DMMurphy@wlrk.com
         JDHoschander@wlrk.com

Attorneys for Defendants
CVB FINANCIAL CORP., CHRISTOPHER D.
MYERS AND EDWARD J. BIEBRICH, JR.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BARRY R. LLOYD, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>   v.<br><br>CVB FINANCIAL CORP., et al.,<br><br>   Defendants. | Case No. CV 10-06256 MMM (PJWx)<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:     August 29, 2011<br>Time:     10:00 a.m.<br>Location: Courtroom 780 |

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

I.   Garrett's Financial Difficulties and Loan Modifications Do Not
     Render Any of the Alleged Misstatements False or Misleading....................3

II.  The Importance of the Garrett Loans and the Timing of Insider Sales
     Do Not Give Rise to a Strong Inference that Defendants Misled
     Investors Knowingly or with Deliberate Recklessness ..................................8

     A.   Absent an allegation of specific facts giving rise to a duty of
          disclosure, the allegation that the Garrett loans involved "core
          operations" proves nothing .................................................................8

     B.   The volume and timing of the insider sales do not support a
          strong inference of scienter ...............................................................11

III. The Opposition Does Not Remedy the CAC's Failure to Allege
     Loss Causation..............................................................................................12

CONCLUSION......................................................................................................13

| 1 | **TABLE OF AUTHORITIES** |
|---|---|
| 2 | |

**Cases**                                                                                                                       **Page**

*Berson* v. *Applied Signal Tech., Inc.*,
　527 F.3d 982 (9th Cir. 2008) .................................................................................. 9, 10

*Dura Pharm., Inc.* v. *Broudo*,
　544 U.S. 336 (2005) .................................................................................................. 13 n.8

*Falkowski* v. *Imation Corp.*,
　309 F.3d 1123 (9th Cir. 2002) ................................................................................ 5

*Fecht* v. *Price*,
　70 F.3d 1078 (9th Cir. 1995) .................................................................................. 7

*Glazer Capital Mgmt., LP* v. *Magistri*,
　549 F.3d 736 (9th Cir. 2008) .................................................................................. 10

*Glen Holly Entm't, Inc.* v. *Tektronix Inc.*,
　352 F.3d 367 (9th Cir. 2003) .................................................................................. 7 n.5

*Hubbard* v. *BankAtlantic Bancorp, Inc.*,
　625 F. Supp. 2d 1267 (S.D. Fla. 2008) .................................................................. 5

*In re Convergent Techs. Sec. Litig.*,
　948 F.2d 507 (9th Cir. 1991) .................................................................................. 6

*In re Cutera Sec. Litig.*,
　610 F.3d 1103 (9th Cir. 2010) ................................................................................ 3 n.2

*In re Immersion Corp. Sec. Litig.*,
　2011 WL 871650 (N.D. Cal. Mar. 11, 2011) ........................................................ 12

*In re LeapFrog Enters., Inc. Sec. Litig.*,
　527 F. Supp. 2d 1033 (N.D. Cal. 2007) ................................................................ 7 n.4

*In re Maxim Integrated Prods., Inc. Sec. Litig.*,
　639 F. Supp. 2d 1038 (N.D. Cal. 2009) ................................................................ 12

*In re New Century*,
　588 F. Supp. 2d 1206 (C.D. Cal. 2008) ................................................................. 5-6, 13

*In re Toyota Motor Corp. Sec. Litig.*,
　2011 WL 2675395 (C.D. Cal. July 7, 2011) ......................................................... 9-10

*In re Vantive Corp. Sec. Litig.*,
　283 F.3d 1079 (9th Cir. 2002) ................................................................................ 5

*In re Wash. Mut., Inc. Sec., Der. & ERISA Litig.*,
  694 F. Supp. 2d 1192 (W.D. Wash. 2009) ................................................ 12, 13 n.8

*In re Wash. Mut., Inc. Sec., Der., & ERISA Litig.*,
  259 F.R.D. 490 (W.D. Wash. 2009) ............................................................ 7, 13 n.8

*In re Wells Fargo Sec. Litig.*,
  12 F.3d 922 (9th Cir. 1993) .................................................................................... 7

*McCasland* v. *FormFactor Inc.*,
  2009 WL 2086168 (N.D. Cal. July 14, 2009) ..................................................... 11

*Metzler Inv. GMBH* v. *Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) .................................................................. 5, 11, 12

*No. 84 Employer-Teamster Joint Council Pension Trust Fund* v.
  *Am. W. Holding Corp.*, 320 F.3d 920 (9th Cir. 2003) ............................ 10 n.6, 11

*Patel* v. *Parnes*,
  253 F.R.D. 531 (C.D. Cal. 2008) ........................................................................... 5

*Rombach* v. *Chang*,
  355 F.3d 164 (2d Cir. 2004) .................................................................................. 6

*Ronconi* v. *Larkin*,
  253 F.3d 423 (9th Cir. 2001) ............................................................................... 11

*Rudolph* v. *UTStarcom*,
  2008 WL 4002855 (N.D. Cal. Aug. 21, 2008) .................................................... 12

*S.E.C.* v. *Cotton*,
  2006 WL 6382128 (C.D. Cal. Dec. 21, 2006) ...................................................... 7

*Sharenow* v. *Impac Mortg. Holdings, Inc.*,
  385 Fed. App'x 714 (9th Cir. June 29, 2010) ..................................................... 10

*United States* v. *Turner*,
  2007 WL 1367597 (W.D. Wash. May 8, 2007) .............................................. 7 n.5

*Zeid* v. *Kimberley*,
  930 F. Supp. 431 (N.D. Cal. 1996) .................................................................. 7 n.4

*Zucco Partners, LLC* v. *Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ............................................................................... 10

**Other Authorities**

Christine Hurt, Regulating Compensation, 6 Entrepren. Bus. L.J. 21 (2011) ........... 4

Unable to specify a single default or loss reserve judgment that CVB got wrong during the Garrett loan relationship — indeed, unable to point to any fact or circumstance that should have led CVB to declare the Garrett loans to be "non-performing" before CVB's September 2010 announcement that Garrett had stopped making timely payments on his loans — plaintiff responds to defendants' motion to dismiss with a prolix, repetitious memorandum as devoid of particularity as the prolix, repetitious CAC it seeks to save from dismissal. Plaintiff's only factual predicates for accusing defendants of fraud are (a) Garrett was experiencing business difficulties, and (b) senior CVB management must have been aware of the circumstances surrounding the Garrett relationship, including modifications of payment schedules, efforts to work with the borrower and the like. But, so what? That is good banking in the face of a collapsing economy, not fraud.

Under the PSLRA, for the CAC to be sufficient in pleading fraud, plaintiff must allege more. If, for instance, plaintiff had alleged specific facts constituting a material default at a date prior to CVB's September 2010 announcement of Garrett charge-offs, or specific facts showing that CVB's loan reserves were materially and knowingly misstated in publicly filed financial statements, that might be the stuff of a "fraud" case. But the CAC does not contain a single such factual allegation.

Like the brief defending it, the CAC is larded with conclusions rather than facts. It nowhere alleges that a single Garrett loan, much less the Garrett loans as a group, was in material default prior to the September 2010 announcement that Garrett was no longer performing. Absent an allegation showing that defendants knew but deliberately disregarded particularized facts showing that Garrett was not meeting its obligations under the loans as modified or that CVB had failed to take adequate reserves for those loans, the CAC reduces to nothing more than a claim that, because CVB later charged off the loans in September 2010, it must have

divined sometime earlier in the class period that the loans would be charged off. In other words, an impermissible claim of fraud by hindsight.

Lacking a single factual allegation from which a strong inference of fraud or scienter can be drawn, plaintiff resorts to compiling citations to other cases sustaining securities fraud complaints. But the fact that some courts have sustained complaints dealing with loan losses, GAAP, announcements of investigations and the like does not mean that this complaint should be sustained. The legal principles are not in dispute, and the CAC must stand or fall on the strength of its own allegations. And those allegations fall short of alleging fraud. For that reason, the relevant precedents are those dismissing securities fraud complaints that followed upon announcement of loan losses because the complaints failed to show that the borrowers' problems were so substantial and apparent as to render prior statements or accounting treatment materially false, misleading and fraudulent at the time when they were made.

Because the CAC does not allege facts showing a knowingly or recklessly false or misleading misrepresentation of a material fact, it must be dismissed. But the CAC also suffers from failure to allege that a disclosure correcting the alleged misrepresentation caused plaintiffs to suffer economic loss. Plaintiff claims that disclosure of the SEC investigation constituted such a corrective disclosure, but ignores the absence of any "correction" in the announcement itself or the surrounding media reports, and relies on cases in which the announcements of investigations revealed far more than the mere fact that an investigation had commenced. Here, by contrast, the SEC explicitly stated that it had reached no conclusion concerning the matters investigated, CVB has unequivocally denied any misconduct, and CVB has restated no financials and received unqualified audit opinions.

I.     **Garrett's Financial Difficulties and Loan Modifications Do Not Render Any of the Alleged Misstatements False or Misleading.**

In the Opposition,[1] plaintiff frames the CAC as alleging five false or misleading statements. Opp. at 1-2. Plaintiff acknowledges that the CAC must plead allegations demonstrating why each of these statements was materially false and misleading when made. *Id.* at 6. Plaintiff says that the CAC has satisfied this burden because it alleged that Garrett was financially troubled, the Garrett loans were modified or extended, and that CVB sometimes relied on appraisals that did not take into account occupancy and maintenance requirements. Opp. at 6-15.[2]

---

[1]     "Opposition" or "Opp." refers to Lead Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss [ECF 49]. Previously defined terms have the same meaning as in Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss the Consolidated Class Action Complaint ("MTD Brief" or "MTD Br.") [ECF 44-1].

[2]     Plaintiff does allege one fact that contradicted one statement by a defendant — the allegation that Myers said that CVB had "zero loans against" a group of buildings that allegedly included one building that partly secured one of the Garrett loans. CAC ¶¶ 54, 55. Even if this was a misstatement, the loan in question amounted to only $16 million (or less than 0.5% of CVB's loans outstanding) and the building was only part of the collateral that allegedly secured this loan and only one of at least 41 properties securing Garrett loans (CAC ¶¶ 2, 55, 77, 81) and could not reasonably be viewed as material. MTD Br. at 16 n.15; *see also In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) ("Central to a 10b-5 claim is the requirement that a misrepresentation or omission of fact must be material."). In any event, the CAC does not allege that defendant Myers knew any information to contradict his alleged statement; therefore, as a matter of hornbook law, he cannot be considered to have spoken fraudulently. *See infra* Point II.A. Similarly, there is no indication that the transfer of funds from a Garrett line of credit to a Garrett checking account (the CAC offers no details about an amount) (CAC ¶ 97) or the $600,000 disagreement between a manager and an employee about an appraisal (*id.* ¶ 84) rendered any of defendants' statements materially false or that defendants knew about these anecdotes. MTD Br. at 13-15, 24-28; *see also infra* Point II.A.

Defendants demonstrated in their MTD Brief that these allegations are too vague to support the conclusion that the challenged statements were false or misleading when made. MTD Br. at 10-21. And the Opposition points to nothing in the CAC showing that: (a) any Garrett loan was not, in fact, performing at any relevant time; (b) the alleged extensions or modifications were in any way improper or not adequately taken into account in the setting of loan loss reserves; or (c) the appraisals referenced had anything to do with Garrett or otherwise meaningfully impaired credit quality.

Indeed, the Opposition undermines plaintiff's argument. The authorities that plaintiff musters to support its allegations that the Garrett loan modifications were improper "extend and pretend" suggest the opposite. According to those authorities, "extend and pretend" refers to a bank's ignoring a "defaulted" loan. Christine Hurt, Regulating Compensation, 6 Entrepren. Bus. L.J. 21, 33 & n.40 (2011) (Opp. at 7-8). Here, the CAC does not allege that Garrett defaulted on any loan, much less that CVB ignored any such default.[3] Indeed, the CAC does not even allege that, but for the modifications, Garrett would have defaulted on any loan or that the modifications were not properly reflected in CVB's loan accounts.

The Opposition obliquely suggests that the Court should not decide whether the allegedly undisclosed facts rendered the challenged statements false or

---

[3] A loan is categorized as non-performing when it is past due at least 90 days or on non-accrual status. The CAC does not allege otherwise. On the contrary, the CAC explains that as "[l]oan distress worsens as time passes . . . the loan moves through a series of categories reporting the loan." CAC ¶ 104. The CAC then expressly lays out the progression as follows: "(i) past due under 30-59 days, to (ii) past due 60-89 days, to (iii) past due 90 or more, to (iv) non-performing and non-accrual status (*i.e.*, in default)." *Id.* Yet the CAC does not allege with particularity that any Garrett loan was past due *even one day* at the time of any alleged misstatement, let alone that any such loan progressed through the CAC's categories (i), (ii) and (iii) going past due 90 days all the way into CAC category (iv) and becoming "non-performing." And for good reason, the Garrett loans were *performing*.

---

misleading but should reserve the issue for a jury. Opp. at 5, 6, 9, 18, 24. But the PSLRA requires a court to dismiss a complaint that — as here — fails to plead material falsity with specificity. *Metzler Inv. GMBH* v. *Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) ("By requiring specificity, [the PSLRA] prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful."); *Falkowski* v. *Imation Corp.*, 309 F.3d 1123, 1133 (9th Cir. 2002) ("Although the allegations here are voluminous, they do not rise to the level of specificity required under the PSLRA.  The allegations consist of vague claims about what statements were false or misleading, how they were false, and why we can infer intent to mislead.  We have dismissed much more specific and compelling allegations."); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1085 (9th Cir. 2002) ("[T]hese allegations do not meet the requirements of the PSLRA because they are not sufficiently particularized."); *Patel* v. *Parnes*, 253 F.R.D. 531, 553 (C.D. Cal. 2008) ("The organization plaintiffs offer in their opposition brief does not cure the pleading deficiencies in their complaint.  To the contrary, it highlights plaintiffs' failure to plead defendants' purportedly false and misleading statements with specificity as required by the PSLRA.").

Plaintiff burdens the Court with citations to numerous inapposite and non-controlling decisions of other courts, some sustaining securities complaints arising from loan losses.  These cases involve specific allegations that, if true, would undermine the accuracy of statements regarding credit quality or show violations of GAAP.  For example, in *Hubbard* v. *BankAtlantic Bancorp, Inc.*, 625 F. Supp. 2d 1267 (S.D. Fla. 2008) (Opp. at 10), numerous specific allegations of obviously deficient underwriting practices directly contradicted statements that the company adhered to conservative lending practices. *Id*. at 1273-75. Likewise, in *In re New Century*, 588 F. Supp. 2d 1206 (C.D. Cal. 2008) (Opp. at 12), the complaint set

Case 2:10-cv-06256-MMM -PJW Document 54 Filed 08/09/11 Page 10 of 19 Page ID #:1027

1 defendants' statements about high quality credit and underwriting standards against
2 "detailed allegations of practices that utterly failed to meet those standards." *Id.* at
3 1225-27. These allegations included data and confidential witness statements
4 showing rising delinquencies, poor quality of loans issued, weak internal controls
5 and lenient loan origination standards. *Id.* at 1215. Indeed, *New Century* involved
6 reserves and other financial items that the defendant company *itself* determined
7 were inaccurate and needed to be restated. *Id.* at 1214-15, 1226-27. By contrast,
8 the CAC's allegations, including those about Garrett's financial difficulties and the
9 anecdotal use of an alternative appraisal value, do not show that CVB's statements
10 about its underwriting practices were materially false or that its financial
11 statements were materially incorrect. MTD Br. at 10-21.

Similarly, plaintiff cites several cases for the proposition that a disclosed risk factor may be materially false and misleading if the risk had materialized and was known or recklessly disregarded, yet not disclosed, and points to CVB's disclosure that continuing deterioration in the real estate market could result in loan charge-offs and provisions for credit losses in the future. Opp. at 9. But plaintiff does not allege any facts showing that CVB knew or recklessly disregarded that the Garrett loans should have been charged off any earlier than the date on which those charge-offs were taken or that provisions for the loans were inadequate in light of facts known at the time the provisions were made. Thus, there was no undisclosed materialization of the risk. And, as did the courts in two of the cases cited by plaintiff (Opp. at 9), *Rombach* v. *Chang*, 355 F.3d 164, 173-74 (2d Cir. 2004), and *In re Convergent Technologies Securities Litigation*, 948 F.2d 507, 515-16 (9th

**Defendants' Reply in Further Support of Motion to Dismiss** – 6 – Case No. 10-CV-06256-MMM (PJWx)

Cir. 1991), this Court should decline to find the risk factor materially false or misleading simply because the CAC has asserted otherwise.[4]

Plaintiff does not merely rely on cases that are factually distinguishable; plaintiff goes so far as to cite cases applying pleading standards that are obviously inapplicable here. Some predate the PSLRA. *See Fecht* v. *Price*, 70 F.3d 1078, 1081 (9th Cir. 1995) (Opp. at 6); *In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 926 (9th Cir. 1993) (Opp. at 12). Some involve claims under statutes not subject to PSLRA pleading standards. *See In re Wash. Mut., Inc. Sec., Der., and ERISA Litig.*, 259 F.R.D. 490, 502-03, 507 (W.D. Wash. 2009) (Opp. at 12-13) (finding falsity allegations sufficient "under the more permissive pleading standards of the Securities Act," but expressly dismissing Section 10(b) claims under the PSLRA); *S.E.C.* v. *Cotton*, 2006 WL 6382128, at *4 (C.D. Cal. Dec. 21, 2006) (Opp. at 11) ("[T]he 'more rigorous' pleading requirements under the [PSLRA] . . . only apply to private securities fraud actions; they do not apply to a case, such as this, brought by the SEC.").[5]

---

[4] *See also In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1048 (N.D. Cal. 2007) ("Plaintiffs also allege that certain of LeapFrog's disclosures of 'Risk Factors' . . . are false and misleading. . . . [T]hese statements . . . are not actionable to the extent plaintiffs contend defendants should have stated that the adverse factors 'are' affecting financial results rather than 'may' affect financial results."); *Zeid* v. *Kimberley*, 930 F. Supp. 431, 437 (N.D. Cal. 1996) ("Plaintiffs' argument is absurd. Defendants' warnings regarding potential adverse factors are not actionable as a matter of law.").

[5] *United States* v. *Turner*, 2007 WL 1367597, at *1 (W.D. Wash. May 8, 2007) (Opp. at 11-12), also an enforcement action to which the PSLRA has no applicability, involved a motion to compel expert discovery and is completely irrelevant here. And *Glen Holly Entertainment, Inc.* v. *Tektronix Inc.*, 352 F.3d 367 (9th Cir. 2003) (Opp. at 14), involved allegations of fraud under state law and had absolutely nothing to do with federal securities law or the PSLRA. Moreover, the court actually found the challenged statements to be non-actionable puffery. *Id.* at 379.

Finally, plaintiff's half-hearted attempt to dismiss the authorities cited by defendants as involving "generic" allegations (Opp. at 13 n.11) simply assumes that the CAC has pleaded specifics as required by the PSLRA. The plaintiffs in those cases, too, argued that the allegations were sufficiently specific to meet the PSLRA, but the courts disregarded the plaintiffs' rhetoric and found the allegations lacking in the detail required by the pleading standards. The CAC suffers from analogous defects and should likewise be dismissed.

## II. The Importance of the Garrett Loans and the Timing of Insider Sales Do Not Give Rise to a Strong Inference that Defendants Misled Investors Knowingly or with Deliberate Recklessness.

Plaintiff acknowledges that the CAC must plead allegations — with particularity — demonstrating a "strong inference" of scienter at least as compelling as any opposing inference. Opp. at 5-6, 15-16. In the Opposition, plaintiff says that the CAC has satisfied this burden because the Garrett loans were part of CVB's "core operations" and confidential witnesses report that senior management was kept informed about the Garrett relationship and because of insider sales. Opp. at 17-27. These allegations fail to raise a strong inference of scienter because they are unconnected to any specific material undisclosed information known by senior management that rendered any public statements false or misleading or that was known to the selling defendants when they sold CVB shares.

### A. Absent an allegation of specific facts giving rise to a duty of disclosure, the allegation that the Garrett loans involved "core operations" proves nothing.

The Opposition's "core operations" argument merely assumes the falsity of the challenged statements was sufficiently alleged — i.e., that facts available to CVB materially contradicted the challenged statements. If so, the argument would go, CVB's senior management would be aware of those facts by virtue of their

positions in the company and the importance of the Garrett loans. But, as shown above, the CAC does not allege that there were any such facts.

As noted above, the Opposition does seize upon a few alleged details of the Garrett relationship to suggest falsity. These include a transfer of funds from Garrett's line of credit into Garrett's checking account, a building that partially collateralized one Garrett loan, and a disagreement between a manager and an employee over an appraisal. But, as also noted, omission to disclose these details does not render any of the challenged statements materially misleading. Moreover, even if such details could be considered to materially undermine the challenged statements, none can reasonably be considered so important as to raise a strong inference that they were known to the most senior management of the corporation. No case suggests that a "core operations" inference means that every detail of an important business relationship is reported to senior management, and common sense dictates otherwise.

The cases cited by plaintiff in support of the "core operations" inference here involved specific allegations relating to important matters, not operational detail. For example, in *Berson* v. *Applied Signal Technology, Inc.*, 527 F.3d 982 (9th Cir. 2008) (Opp. at 17), the court held that it was reasonable to infer that defendants knew about specifically alleged stop work orders that belied their alleged statements because such orders "*halted* tens of millions of dollars of the company's work" and were so "prominent" that it would have been "absurd to suggest" that senior management was unaware of them. *Id*. at 988-89 (emphasis added). Similarly, the unintended acceleration defect issues alleged to have been known to defendants in *In re Toyota Motor Corp. Sec. Litig.*, 2011 WL 2675395 (C.D. Cal. July 7, 2011) (Opp. at 18), were drawing media scrutiny and were "too significant for it to be plausible that top Toyota management was not aware." *Id*. at *4. Furthermore, such allegations were accompanied by specific allegations of

defendants' knowledge, including an email in which a defendant admitted to "covering up" those defects. *Id*. at *3-*4.[6]

The allegations in the CAC do not remotely involve similar business calamities. Indeed, they are even weaker than the scienter allegations found wanting in *Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009). In *Zucco*, the Ninth Circuit found that senior management knowledge of erroneously capitalized expenditures could not be inferred from allegations, among others, that management not only had access to the manipulated numbers, but actually analyzed them closely. *Id*. at 1000-01. The Ninth Circuit distinguished *Berson*, explaining that the accounting matters did not rise to the level of significance of the stop work orders in *Berson*. *Id*. Similarly, in *Glazer Capital Mgmt., LP* v. *Magistri*, 549 F.3d 736 (9th Cir. 2008), the Ninth Circuit rejected a "core operations" argument because it was not "absurd to suggest" that senior management was unaware of illegal payments made by sales agents in violation of the Foreign Corrupt Practices Act. *Id*. at 746-47; *see also Sharenow* v. *Impac Mortg. Holdings, Inc.*, 385 Fed. App'x 714, 717 (9th Cir. June 29, 2010) ("Sharenow does not persuasively explain how [the core operations] inference transforms the former employees' statements into sufficient allegations.").[7]

---

[6] *No. 84 Employer-Teamster Joint Council Pension Trust Fund* v. *America West Holding Corp.*, 320 F.3d 920 (9th Cir. 2003) (Opp. at 18), is completely inapposite. There, the complaint made numerous detailed allegations about the defendant airline's substantial maintenance problems. *Id*. at 932-35. It also detailed, among other things, a scheme to inflate stock prices that included the sales by several insiders who sold all, or nearly all, of their holdings for tens of millions of dollars. *Id*. at 938-41.

[7] Plaintiff argues that the Ninth Circuit has not foreclosed the possibility that scienter could be imputed to a corporate defendant without demonstrating the scienter of any individual defendant, but fails to find any case in the Ninth Circuit doing so. Opp. at 25-27. Plaintiff certainly offers no reason to do so here. *See also* MTD Br. at 22.

Finally, the unqualified audit opinions and absence of a restatement further undermine any inference of scienter. MTD Br. at 26-28; *see also, e.g.*, *Metzler*, 540 F.3d at 1069 (no inference of scienter for GAAP violations because, in part, complaint "does not allege that Corinthian's external auditors counseled against the practice"); *McCasland* v. *FormFactor Inc.*, 2009 WL 2086168, at *7 (N.D. Cal. July 14, 2009) (dismissing complaint noting that the absence of restatement of relevant numbers rendered plaintiff's inference of scienter implausible).

### B. The volume and timing of the insider sales do not support a strong inference of scienter.

Plaintiff's argument that *America West* supports the proposition that Myers' sales of $180,889 or 5.6% of his stock holdings were sufficient to support an inference of scienter because they constituted a "large amount" of sales (Opp. at 24) is absurd. In *America West*, nine individual defendants were found to have each sold at least 88% of their holdings (five sold 100%) for proceeds of *more than $13 million* and two controlling shareholders sold virtually all their holdings for *$53 million*. 320 F.3d at 939-40. And the inference that Biebrich announced his retirement and sold shares because of knowledge of undisclosed credit issues is not only wildly speculative but presupposes a critical fact the CAC does not allege with particularity — namely that there were, in fact, undisclosed losses anticipated on the Garrett loans over and above reserves. *See Ronconi* v. *Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) ("A corporate insider may sell stock to fund major family expenses, diversify his portfolio, or arrange his estate plan."). In any event, since Myers' sales certainly cannot be considered suspicious and because no other insiders are alleged to have sold during the class period, plaintiff cannot use allegations of insider trading by one executive to support an inference of scienter. *See Metzler*, 540 F.3d at 1067 ("We typically require . . . corroborative sales by other defendants — to allow insider trading to support scienter.").

### III. The Opposition Does Not Remedy the CAC's Failure to Allege Loss Causation.

The inapplicability of the PSLRA's heightened pleading standard does not save a loss causation theory that is manifestly unwarranted by the facts. *See, e.g.*, *Metzler*, 540 F.3d at 1064-65 (a court "is not required to indulge unwarranted inferences in order to save a complaint from dismissal"); *In re Immersion Corp. Sec. Litig.*, 2011 WL 871650, at *8 (N.D. Cal. Mar. 11, 2011) ("Although the final disclosure . . . is at least conceptually tied to the purported fraud . . . the announcement of an investigation, standing alone, does not give rise to a viable loss causation allegation."); *In re Maxim Integrated Prods., Inc. Sec. Litig.*, 639 F. Supp. 2d 1038, 1046-47 (N.D. Cal. 2009) ("While each of these disclosures provides notice that Maxim *may* have illicitly backdated stock options, none of them goes beyond speculation."). No theory of loss causation is warranted from the allegations in the CAC regarding the August 9, 2010 disclosure of the SEC subpoena, as the characterization of the announcement as "partial[ly] corrective" ignores the text of the notice, the SEC's disclaimer and the analyst reactions. *Compare* Opp. at 27-32 *with* MTD Br. at 32-35.

Plaintiff's reliance on *Rudolph* v. *UTStarcom*, 2008 WL 4002855 (N.D. Cal. Aug. 21, 2008) (Opp. at 28-29), is unavailing. The loss causation allegations here are far weaker than in *UTStarcom* where the company itself found it necessary to initiate and announce an internal investigation of its historical financial statements. *See id.* at *4. Also, *UTStarcom* was decided before *Metzler* clarified that "neither *Daou* nor *Dura* support the notion that loss causation is pled where a defendant's disclosure reveals a 'risk' or 'potential' for widespread fraudulent conduct." *Metzler*, 540 F.3d at 1064-65. And the other cases upon which plaintiff relies involved disclosures with considerably greater corrective content and context. *See, e.g.*, *In re Wash. Mut., Inc. Sec., Der. & ERISA Litig.*, 694 F. Supp. 2d 1192, 1224-25 (W.D. Wash. 2009) (Opp. at 29) (disclosure of investigation one in "series" of

corrective disclosures);[8] *In re New Century*, 588 F. Supp. 2d 1206, 1213-14 (C.D. Cal. 2008) (Opp. at 29-30) (disclosure of investigation related to need for restatement and included expectation of conclusion of "material weaknesses" in financial reporting).

As to the September 9, 2010 announcement, plaintiff's argument is makeweight. The CAC ends the purported class period on August 9, strongly implying that plaintiff does not believe that any purchasers between that date and the September 9 announcement suffered any relevant loss. *See* CAC ¶ 1. The facts make this conclusion obvious: The September 9, 2010 disclosure of a charge-off of the Garrett loans was not a corrective disclosure. MTD Br. at 34-35. That the Garrett loans needed to be charged off in September does not even suggest that any previous charge-off was necessary. *Id*. Moreover, the 2.4% stock drop was within a normal volatility range and ephemeral; the stock quickly recovered and closed down less than 1% that same day. RJN Ex. BB. And by the following week, the stock was above the pre-disclosure stock price and never again fell below it. *Id*.

## CONCLUSION

Unable to allege with particularity (a) how a single accounting judgment was erroneous, much less knowingly false, or (b) why a single credit judgment was contrary to GAAP because of a fact known to CVB or its management, plaintiff effectively rests its entire falsity case on the proposition that CVB described the

---

[8] *In re Washington Mutual, Inc. Sec., Deriv. & ERISA Litig.* is inapposite for yet another reason. There, the loss causation point seems to have been decided under the more permissive standard of Section 11 of the Securities Act of 1933, 694 F. Supp. 2d at 1224-25, which — unlike the *Dura* standard applicable here — places the burden upon the *defendant* to demonstrate the absence of loss causation as an affirmative defense. *See, e.g.*, *Wash. Mut.*, 259 F.R.D. at 507 ("Under Section 11, loss causation is an affirmative defense on which Defendants bear the burden of proof."). By contrast, for a Section 10(b) claim, the complaint must be dismissed if — as here — it fails to allege loss causation in accordance with *Dura Pharmaceuticals, Inc.* v. *Broudo*, 544 U.S. 336, 342, 346-47 (2005).

Garrett loans as "performing" when, in fact, they were not. But whether a loan is performing is — as the CAC itself explains — a term of art, typically referring to loans that have been delinquent for more than 90 days or otherwise in default. *See* CAC ¶ 104. It requires a professional accounting judgment (e.g., an analysis of whether the loan is being paid in accordance with agreed-upon terms; whether those terms have been modified in ways that involve a material economic concession; whether the borrower is believed to have the cash flows to make payments, etc.). That a borrower has financial difficulties — even severe financial difficulties — does not necessarily say anything about the performance of particular loans to such borrower.

As is demonstrated in defendants' MTD Brief, the fact that CVB has not restated its financials in the wake of certain Garrett losses and that its outside auditors have provided unqualified audit opinions in the wake of those losses (the CAC does not allege otherwise) speaks volumes as to the bona fides of CVB's accounting treatment of the Garrett loans and its statements that they were, under GAAP, "performing" until such time as they fell into arrears. But — for purposes of a motion to dismiss under the PSLRA — the signal point is that nowhere in the CAC is there a single particularized allegation as to why CVB should have deemed any of the Garrett loans "non-performing" as of some earlier date. That plaintiff cannot specify that fundamental fact — when and why the Garrett loans supposedly should have been deemed "non-performing" before they were announced as such — is fatal to this complaint.

DATED:  August 9, 2011

Respectfully submitted,

By:   /s/  Scott Vick

VICK LAW GROUP, APC
Scott Vick (No. 171944)
Jason T. Riddick (No. 235980)
Rachelle S. Torres (No. 243392)
Lital Gilboa (No. 263372)
800 West Sixth Street, Suite 1220
Los Angeles, California 90017

WACHTELL, LIPTON, ROSEN & KATZ
David M. Murphy (*pro hac vice*)
Warren R. Stern (*pro hac vice*)
Wayne M. Carlin (*pro hac vice*)
Jeffrey D. Hoschander (*pro hac vice*)

Attorneys for Defendants
CVB FINANCIAL CORP., CHRISTOPHER D. MYERS AND EDWARD J. BIEBRICH, JR.