1  VICK LAW GROUP, APC
     Scott Vick (No. 171944)
2    Jason T. Riddick (No. 235980)
     Rachelle S. Torres (No. 243392)
3    Lital Gilboa (No. 263372)
4  800 West Sixth Street, Suite 1220
   Los Angeles, California  90017
5  Telephone:  (213) 784-6225
   Facsimile:   (213) 985-7155
6  E-Mail:  Scott@vicklawgroup.com
7            Jason@vicklawgroup.com

8  WACHTELL, LIPTON, ROSEN & KATZ
     David M. Murphy (*pro hac vice*)
9    Warren R. Stern (*pro hac vice*)
     Jeffrey D. Hoschander (*pro hac vice*)
10 51 West 52nd Street
   New York, New York  10019
11 Telephone:  (212) 403-1000
   Facsimile:   (212) 403-2000
12 E-Mail:  DMMurphy@wlrk.com
13          JDHoschander@wlrk.com

14 Attorneys for Defendants
15 CVB FINANCIAL CORP., CHRISTOPHER D.
   MYERS AND EDWARD J. BIEBRICH, JR.
16
17              UNITED STATES DISTRICT COURT

18   FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

19 | BARRY R. LLOYD, Individually and | Case No. CV 10-06256 MMM (PJWx) |
20 | on Behalf of All Others Similarly Situated, | |
   | | **DEFENDANTS' REPLY IN** |
21 | | **FURTHER SUPPORT OF** |
   | Plaintiff, | **MOTION TO DISMISS THE FIRST** |
22 | | **AMENDED CONSOLIDATED** |
   | v. | **CLASS ACTION COMPLAINT** |
23 | | |
24 | CVB FINANCIAL CORP., et al., | Date:        June 4, 2012 |
   | | Time:        10:00 a.m. |
25 | Defendants. | Location:   Courtroom 780 |
26
27
28

---

1

# TABLE OF CONTENTS

2

**Page**

3

INTRODUCTION ..................................................................................................1

4

I.    The FAC's falsity allegations remain deficient.................................................5

5

    A.    Statements about the Garrett loans.......................................................5

6

    B.    "Risk factor" disclosures.....................................................................7

7

    C.    Statements about underwriting and credit quality ..............................7

8

    D.    Alleged GAAP violations ...................................................................8

9

II.    The FAC's scienter allegations remain deficient. ...........................................10

10

    A.    The Garrett loans...............................................................................10

11

    B.    Other scienter allegations.................................................................12

12

III.    The FAC's loss causation allegations remain deficient. ...............................14

13

CONCLUSION...................................................................................................15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

# TABLE OF AUTHORITIES

3

**Cases**                                                                            **Page(s)**

4

*Atlas* v. *Accredited Home Lenders Holding Co.*,
5
   556 F. Supp. 2d 1142 (S.D. Cal. 2008) ................................................................6-7

6

*Berson* v. *Applied Signal Tech.*,
   527 F.3d 982 (9th Cir. 2008) .................................................................... 13 n.11
7

8

*Connecticut Retirement Plans & Trust Funds* v. *Amgen Inc.*,
   660 F.3d 1170 (9th Cir. 2011) ................................................................. 5-6 n.3

9

*Dura Pharmaceuticals, Inc.* v. *Broudo*,
10
   544 U.S. 336 (2005) ........................................................................14, 15 n.14

11

*In re Almost Family, Inc. Sec. Litig.*,
12
   2012 WL 443461 (W.D. Ky. Feb. 10, 2012) ................................................. 14

13

*In re American Apparel, Inc. S'holder Litig.*,
14
   2012 WL 1131684 (C.D. Cal. Jan. 13, 2012) ...................................... 7, 11, 12

15

*In re Downey Sec. Litig.*,
16
   2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ........................................... 8 n.5

17

*In re Hansen Natural Corp. Sec. Litig.*,
18
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ....................................................... 14

19

*In re Immersion Corp. Sec. Litig.*,
20
   2011 WL 871650 (N.D. Cal. Mar. 11, 2011) ............................................... 14

21

*In re Maxim Integrated Prods., Inc. Sec. Litig.*,
   639 F. Supp. 2d 1038 (N.D. Cal. 2009) ...................................................... 14
22

23

*In re New Century*,
   588 F. Supp. 2d 1206 (C.D. Cal. 2008) ............................................ 6-7, 15 n.13

24

*In re Toyota Motor Corp. Sec. Litig.*,
25
   2011 WL 2675395 (C.D. Cal July 7, 2011) ........................................... 13 n.11

26

*In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*,
27
   694 F. Supp. 2d 1192 (W.D. Wash. 2009) ......................................... 15 n.13

28

*In re Wells Fargo Sec. Litig.*,
   12 F.3d 922 (9th Cir. 1993)......................................................................................................10

*Janbay* v. *Canadian Solar, Inc.*,
   2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ........................................................................14

*Matrixx Initiatives, Inc.* v. *Siracusano*,
   131 S. Ct. 1309 (2011) ...................................................................................................10 n.8

*McCasland* v. *FormFactor Inc.*,
   2009 WL 2086168 (N.D. Cal. July 14, 2009)........................................................................13

*Metzler Inv. GMBH* v. *Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008)..............................................................................10, 13, 14

*Meyer* v. *St. Joe Co.*,
   2012 WL 94584 (N.D. Fla. Jan. 12, 2012)............................................................................14

*Ronconi* v. *Larkin*,
   253 F.3d 423 (9th Cir. 2001)..........................................................................................13 n.12

*Rudolph* v. *UTStarcom*,
   2008 WL 4002855 (N.D. Cal. Aug. 21, 2008)............................................. 14-15 n.13

*Sharenow* v. *Impac Mortg. Holdings, Inc.*,
   385 Fed. App'x 714 (9th Cir. June 29, 2010) ............................................. 12-13 n.11

*South Ferry LP, No. 2* v. *Killinger*,
   542 F.3d 776 (9th Cir. 2008)..........................................................................................13 n.11

*Zucco Partners, LLC* v. *Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009)...................................................................................................11

**Statutes and Regulations**

15 U.S.C. § 78u-4(b)...................................................................................................................6 n.3

17 C.F.R. § 210.9-03.......................................................................................................................9

1

# INTRODUCTION

2          This Court dismissed plaintiffs' previous pleading because it failed to allege

3   either falsity or scienter.  As to falsity, plaintiffs "failed adequately to allege that

4   defendants' representations regarding the Garrett loans were materially false or

5   misleading."  As to scienter, plaintiffs alleged "no facts from which it can be inferred

6   that management knew during the class period that the Garrett relationship had passed

7   the point of repair."  MTD Order at 59-60.

8          Plaintiffs' latest pleading suffers from the same defects.  As before, plaintiffs

9   fail to allege that a single Garrett loan should have been classified as "nonperforming"

10  as of any date within the class period.  So too, plaintiffs fail to allege a single new fact

11  from which any inference — much less a "strong" one — could be drawn that CVB

12  management knew during the class period that the Garrett loans would stop

13  performing.  To the contrary, with Garrett's loan balance shrinking rather than

14  growing during the class period — and with Garrett's threats and negotiating ploys

15  having never actually led it to cease making payments on even a single loan — the

16  *only* reasonable inference is that CVB management believed Garrett had sufficient

17  cash flow to continue to service and pay down its debt, and would continue doing so

18  (as, throughout the class period, Garrett did).

19                          *              *              *

20          Plaintiffs' central allegation — that CVB misleadingly stated that the Garrett

21  loans were "performing as agreed" — remains totally unsupported by loan-specific

22  facts showing an impairment as to any Garrett loan.  Worse still, the allegation is

23  based on a distortion of defendants' actual statements:  CVB said that the Garrett

24  loans were "performing as agreed," but also disclosed publicly that the loans were

25  classified as "substandard."[1]  Thus, on the question of  "falsity," defendants never

26  misled investors into believing that the Garrett loans were stronger from a credit

27  _____

28  [1]      "Substandard" means that there was a "distinct possibility" that CVB would
"sustain some loss."  MTD Br. at 11.

1   standpoint than warranted by the known facts.  And on the question of "scienter,"

2   defendants' disclosure that the loans were "substandard" (and thus presented a

3   "distinct possibility" of loss) manifestly negates any inference at all of fraudulent

4   intent.

5        Faced with the fact that Garrett continued to pay down its debt to CVB

6   throughout the class period — i.e., that the loans continued to "perform" — plaintiffs

7   focus their allegations on attacking the legitimacy of unspecified modifications to

8   Garrett loan terms.  As with their last pleading, challenging the *bona fides* of these

9   loan modifications is the heart of plaintiffs' case — but plaintiffs' latest theory as to

10  what was wrong with these loan modifications is even less plausible and less

11  supported by specific factual allegations than their original theory.

12       As this Court will recall, in their previous attempt to state a claim for securities

13  fraud, plaintiffs alleged that CVB's loan modifications were part of an "extend and

14  pretend" scheme, which plaintiffs defined as when "money is 'round tripped' and

15  never leaves the Bank," but is "just add[ed] to the loan balance" to make the borrower

16  appear current.  CAC ¶ 47.  In defendants' first motion to dismiss, however,

17  defendants pointed out that the financial statements on which plaintiffs were

18  purporting to rely in alleging such "round tripp[ing]" of money showed, *on their face*,

19  the opposite:  namely, that during the class period Garrett was paying interest *and*

20  *amortizing principal*, thereby belying any "extend and pretend" scheme.

21       This time — with the FAC itself expressly conceding this decline in principal

22  during the class period — plaintiffs abandon their oft-repeated incantation of "extend

23  and pretend" and instead allege that the mere fact that CVB modified certain loans in

24  the face of knowledge or information that Garrett was having financial difficulties

25  means all of the Garrett loans were "impaired" and should have been reported as

26  "nonperforming."

27       Nothing could be more absurd.  During times of financial distress, lenders

28  routinely modify loans as a matter of business judgment.  They may do so to obtain

---

1   additional collateral protection against the risk of default, or additional cross-default

2   or contractual protections, or nontraditional collateral, such as liens on a borrower's

3   cash flow (as CVB did with Garrett).  So too, a lender may modify or customize loan

4   terms to meet the business or cash flow needs of the borrower.  From an accounting

5   perspective, the crucial point is that a loan modification, in and of itself, does *not*

6   mean a loan is "impaired" or "nonperforming."  For as is demonstrated in the MTD

7   Brief and again herein (*see infra* Point I.D.), there are highly specific accounting and

8   regulatory rules under which loan modifications are analyzed — the most essential of

9   which is whether the lender has made a *material economic concession to the borrower*

10  such that the lender may be required to recognize a loss as of the date of the

11  concession.

12          Under plaintiffs' theory, once a bank has knowledge or information that a

13  borrower is experiencing financial distress, *a fortiori* any loan modification of any

14  kind would be sufficient to support an inference of fraud.  But this is not the law.

15  Critically absent from plaintiffs' latest pleading is even one specific allegation of a

16  loan modification that constituted a material economic concession by CVB.  For

17  instance, do plaintiffs allege that CVB forgave even a single dollar of principal Garrett

18  owed?  No.  Do plaintiffs allege that CVB offered Garrett a below-market interest

19  rate?  No.  Do plaintiffs allege that CVB overlooked or forgave even one significant

20  delinquency on any Garrett loan?  Not remotely.  These are the types of concessions

21  that may give rise to an impairment and, concomitantly, to recognition of a loss on a

22  loan.  *Yet plaintiffs do not allege a single economic concession on a single Garrett*

23  *loan*.  If anything, they elide the fact that many of the Garrett loan modifications

24  strengthened CVB's collateral position on the Garrett loans and thus gave Garrett a

25  greater, not lesser, incentive to repay CVB *in full*.

26          The fact that neither CVB's outside auditors nor its federal bank regulators

27  have, even after plaintiffs' allegations first were made in the fall of 2010, compelled

28  CVB to restate any financial statements based on a finding that it should have

1   recognized any Garrett impairment or loss as of any earlier date, confirms that none of

2   the loan modifications involved material economic concessions.

3          Fundamentally, therefore, plaintiffs are asking this Court to repudiate its

4   carefully reasoned analysis of the original claims in this case based on a single new

5   allegation:  an anonymous account from a former Garrett employee who, though not

6   himself a witness to the conversation, believes that Garrett threatened CVB

7   management with the possibility that Garrett would file for bankruptcy protection.

8   This allegation is no different from the claims of financial distress that plaintiffs

9   pressed in their previous complaint, and proves absolutely nothing as to CVB

10  management's state of mind.  Especially during difficult economic times, the business

11  of banking involves constant negotiation — with borrowers claiming an inability to

12  pay in order to renegotiate terms and with lenders insisting on continued payments

13  and repayment in full.  In attempting to plead scienter, however, the relevant question

14  is whether management concluded that Garrett could continue to service and pay

15  down its debt to CVB.  Plaintiffs concede that Garrett continued to pay interest and

16  amortize principal and never filed for bankruptcy at any time during the class period.

17  And plaintiffs make no particularized allegation remotely suggesting that CVB

18  management concluded that Garrett did not have sufficient cash flow to keep meeting

19  its obligations to CVB.  Thus, by far the most plausible and "strongest" inference

20  from the facts as pled is that CVB management did not credit Garrett's threats and

21  believed — correctly — that Garrett would continue to pay its debts on regular

22  commercial (as opposed to concessionary "workout") terms.

23         In sum, the first "extend and pretend" theory that plaintiffs trumpeted 14 times

24  in their previous complaint was shown to be baseless by the fact that CVB's own

25  financial statements showed Garrett was paying down its loans during the class

26  period, not "round tripp[ing]."  The bankruptcy threat at the heart of this latest

27  complaint is negated by the fact that Garrett continued to pay interest and amortize

28

DEFENDANTS' REPLY IN FURTHER            - 4 -            Case No. 10-CV-06256-MMM (PJWx)
SUPPORT OF MOTION TO DISMISS THE FAC

1  principal for *nearly two years* after the first alleged "threat" in September 2008.

2  Enough is enough.  This second dismissal should be with prejudice.

3  **I.      The FAC's falsity allegations remain deficient.**

4       Plaintiffs do not dispute that they must allege falsity with particularity — i.e.,

5  that they must allege particular contemporaneous facts showing that the statements at

6  issue were materially false when made.  In the Opposition,[2] plaintiffs argue that they

7  have met this standard, but the argument depends on mischaracterizations of

8  defendants' statements and unwarranted inferences.

9       A.      Statements about the Garrett loans

10      Plaintiffs argue that supposed Garrett bankruptcy threats followed by

11  "modifications" or extensions somehow show that the Garrett loans were not

12  "performing as agreed," making any CVB statement to that effect false and

13  misleading.  Not so.

14      In the first place, the FAC wrenches CVB's alleged statements about the

15  performance of the Garrett loans completely out of context.  In fact, CVB said that,

16  although the Garrett loans were "performing as agreed," they were classified as

17  "substandard" — i.e., there was a "distinct possibility" of sustaining a loss — because

18  of Garrett's financial difficulties.  MTD Br. at 5, 11 & n.13.  This is plainly evident

19  from the analyst report that plaintiffs selectively and misleadingly quote and neglect to

20  attach to their complaint.  *Id.*  Plaintiffs offer no denial.[3]

21  _____

22  [2]      "Opposition" or "Opp." refers to Lead Plaintiff's Memorandum of Points and
23  Authorities in Opposition to Defendants' Motion to Dismiss the First Amended
   Consolidated Class Action Complaint [DN 65].  Previously defined terms have the
24  same meaning as in Defendants' Memorandum of Points and Authorities in Support
   of Motion to Dismiss the First Amended Consolidated Class Action Complaint
25  ("MTD Brief" or "MTD Br.") [DN63-1].

26  [3]      Plaintiffs argue that defendants are not permitted to assert a "truth-on-the-
27  market" defense at the motion to dismiss stage.  Opp. at 8 n.4.  But that is irrelevant.
   Plaintiffs cite *Connecticut Retirement Plans & Trust Funds* v. *Amgen Inc.*, 660 F.3d
28  1170 (9th Cir. 2011).  Opp. at 8 n.4.  First, in *Amgen*, a class certification case, the

1      Nor do the allegations show that the loans were not performing.  Not only was

2  Garrett paying both interest and principal, but the FAC offers absolutely no details of

3  any specific loan terms that were modified.  MTD Br. at 6 & n.6, 13 n.15.  And it does

4  not allege even a single material economic concession that might illustrate how any

5  loans ceased to "perform as agreed" or became "impaired."  *Id.* at 17-18.  Defendants

6  classified and disclosed the Garrett loans as "substandard" and recognized that there

7  was a "*distinct possibility*" of loss.  *Id.* at 5, 11 (emphasis added).  But nothing in the

8  FAC demonstrates that it was "probable" that CVB would be "unable to collect" all

9  principal and interest "in accordance with the original contractual terms" or that CVB

10 "deemed" such amounts "uncollectible" (Opp. at 3 n.2).  MTD Br. 11-13.[4]  Likewise,

11 plaintiffs' attack on CVB's statements that CVB did not harbor "serious doubts"

12 concerning the ability of borrowers to repay their loans (Opp. at 4-5, 12-13) also

13 remains fatally deficient.  *See also* MTD Br. 11-15.  The allegations of Garrett threats

14 and *Garrett* employees' understanding of Garrett's internal financial condition do not

15 demonstrate that *CVB* had "serious doubts" about Garrett's ability to continue to repay

16 its loans during the class period.  *Id.*

17      Plaintiffs unsuccessfully try to argue that their allegations suffice to show

18 falsity by citing *In re New Century*, 588 F. Supp. 2d 1206 (C.D. Cal. 2008) and *Atlas*

19

20 Ninth Circuit made it perfectly clear that a "plaintiff must plausibly allege … that the
claimed misrepresentations were material."  *Id.* at 1172.  More fundamentally,
21 nowhere does *Amgen* give license to plaintiffs to allege falsity by selectively and
22 misleadingly quoting portions of defendants' statements out of context.  To the
contrary, the burden to allege falsity and scienter with particularity under the PSLRA
23 is upon plaintiffs.  15 U.S.C. § 78u-4(b); *see also* MTD Order at 31-32.  And it is this
24 burden that plaintiffs have failed to satisfy.

25 [4]     Of course, the use of the phrase "in accordance with the original contractual
terms" in CVB's securities filings (*see* Opp. at 3 n.2) does not mean that *any*
26 extension or modification renders a loan "impaired."  Rather, the loan is impaired only
27 if CVB concludes it is probable that it cannot collect all interest and principal
amounts.  *See, e.g.*, MTD Br. at 17-18; FAC ¶ 41 (recognizing that "impaired" entails
28 a "loss in value").

1    v. *Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142 (S.D. Cal. 2008).

2    Rejecting a similar argument in *In re American Apparel, Inc. Shareholder Litigation*,

3    this Court pointed out that citing such cases "actually undercuts their argument by

4    demonstrating the type of facts … that should be alleged to survive a motion to

5    dismiss."  2012 WL 1131684, at *21 (C.D. Cal. Jan. 13, 2012).  The Court recognized

6    that those cases involved detailed allegations not present here, including allegations of

7    "progressively riskier loan origination practices" and "data indicating rising defaults

8    and delinquent loans" in *New Century* and the "loosen[ing]" of defendant's "own

9    underwriting standards" in *Atlas*.  *Id.* (internal quotation marks omitted).  Allegations

10   such as these are absent in the FAC, just as they were in the CAC.  MTD Br. at 10-26.

11           B.    "Risk factor" disclosures

12           As defendants have demonstrated, the FAC's "risk factor" allegations are

13   merely repeated from the CAC and are just as inadequate in the FAC.  MTD Br. at

14   14-15.  The Court has already rejected these allegations.  MTD Order at 39-40.  The

15   fact is that CVB disclosed the negative impact of the economic decline, including

16   losses and charge-offs and that the "risk" was for "additional" provisions and losses.

17   MTD Br. at 14-15.  The Opposition offers no new response.

18           C.    Statements about underwriting and credit quality

19           The Court rejected the CAC's allegations regarding statements about CVB's

20   underwriting and credit quality because (a) the CAC did not contain sufficient facts to

21   contradict such statements, (b) the statements were puffery, and (c) the failure of

22   CVB's competitors tended to show that CVB's statements were true.  MTD Order at

23   40-45.  The FAC does not remedy these deficiencies.  MTD Br. at 15-16.

24           Plaintiffs again argue that CVB "overvalued" collateral.  Opp. at 9-11.  But

25   these allegations are largely repeated from the CAC and, in any event, do not

26   demonstrate the falsity of defendants' statements.  MTD Br. at 17.[5]  Similarly

27   ───────────────────

28   [5]    The appraisal anecdote (FAC ¶ 46) has already been considered by the Court, and does not show that there is anything improper about multiple estimates of value in

1   unavailing is the new assertion that CVB overvalued the Empire Corporate Center

2   (Opp. at 11).  MTD Br. at 17 & n.17.  The FAC alleges that this property was valued

3   at $16 million for purposes of a CVB loan, but also says that the "appraised value on

4   CVB's books" was $9-10 million more than offers that came in at $12-13 million.

5   FAC ¶ 47.  This confusing and inconsistent anonymous account is attributed to a

6   former *Garrett* employee with no apparent basis for saying anything about CVB

7   internal valuations.  *See id*.  Nor is there any indication that CVB knew of the alleged

8   offers or that such offers reflected the value of the property at the time.  Likewise, the

9   conclusory assertion that CVB overvalued at least 32 properties (FAC ¶ 48) is

10   unsupported.  That there were delinquent taxes on such properties (*id*.) does not

11   demonstrate that CVB's internal valuations were incorrect, much less fraudulently so.

12         D.     Alleged GAAP violations

13        A loan modification does not constitute a "troubled debt restructuring" unless

14   there is a material economic concession as defined by GAAP.  None is alleged here.

15   The accounting rule is explicit that, to constitute a "troubled debt restructuring," there

16   must be a concession in the context of a loan modification that the lender "would not

17   otherwise consider," but for a debtor's financial difficulties.  MTD Br. at 17-18

18   (quoting ASC 310-40-15-5).[6]  Here, the FAC alleges absolutely no concession that

19   _____

20   an appraisal.  MTD Br. at 17 (citing MTD Order at 42 & n.139).  Moreover, this
allegation had nothing to do with any Garrett loan.  FAC ¶ 46.  Furthermore, that a

21   confidential witness disagreed with a supervisor (*id*.) proves nothing.  *See In re Downey Sec. Litig*., 2009 WL 2767670, at *11 (C.D. Cal. Aug. 21, 2009).  And

22   plaintiffs' quotation of FASB EITF Topic No. D-80 (Opp. at 11) does not change that
the FAC merely highlights an internal disagreement about an accounting judgment.

23   
[6]     Plaintiffs' misleading quotation of two examples of circumstances that may

24   constitute a concession (Opp. at 14 n.14 (citing ASC 310-40-15-6)) does not change
the rule.  Moreover, neither example is relevant here.  First, the FAC does not allege

25   with specificity any "reduc[tion] or defer[ral]" of payments.  *Id*.  Indeed, Garrett not

26   only continued to make interest payments, but also amortized principal.  Second, the
FAC nowhere alleges any acceptance by CVB "*in satisfaction of the debt*" of any

27   "transfer of assets or … grant of equity securities," let alone that the "value received"

28   was "less than the amount of the debt."  ASC 310-40-15-6 (emphasis added).

1    CVB "would not [have] otherwise consider[ed]."  There is no allegation of a reduction

2    to below-market interest rates or any forgiveness of principal.  MTD Br. at 6, 17-18.

3    Nor is there even any allegation of a significant deferral of interest payments.  *Id*.

4    Nothing in the FAC suggests that CVB's financial benefit from the Garrett loans was

5    reduced as a result of any of the vaguely alleged modifications.  The extension of a

6    loan at market rates is certainly something that CVB would have considered even if

7    Garrett was not encountering financial difficulties.  Thus, such modifications,

8    particularly in the context of CVB having strengthened its collateral position as

9    Garrett continued to make interest payments (and even paid down principal), cannot

10    be considered "troubled debt restructurings."  *See also id*. at 17-18.

11         The FAC's allegations about disclosure of the Garrett relationship remain

12    similarly deficient.  Defendants have now demonstrated that SEC Financial Reporting

13    Release No. 13 *did not* require specific disclosure of the Garrett relationship, which

14    amounted to only 2.4% of CVB's loan portfolio, well under the disclosure threshold

15    of 10%.  MTD Br. at 18-19.[7]  Plaintiffs, therefore, argue instead that other provisions

16    (SEC Regulation S-X Rule 9-03 ¶ 7(a)(7), ASC 825-10-50-20 and ASC 825-10-50-

17    21) required such disclosure.  Opp. at 13 n.12.  But SEC Regulation S-X Rule 9-03

18    ¶ 7(a), in its entirety, refers to disclosure of loan "categories" and ¶ 7(a)(7) itself

19    makes clear that it is referring to "any other loan *category*."  17 C.F.R. § 210.9-03

20    (emphasis added); *see also* MTD Br. at 18-19.  And plaintiffs offer no basis for

21    asserting that a relationship amounting to 2.4% of a loan portfolio must be disclosed

22    separately under ASC 825-10-50-20 and ASC 825-10-50-21 (Opp. at 13 n.12).

23         Likewise, the bare allegations about understated loan loss reserves do not

24    include the details necessary to state a claim for falsity under the PSLRA.  MTD Br. at

25    16-17.  The Court has already rejected these claims (MTD Order at 43-44), and

26    _____

27    [7]     The Court's previous assumption on this point appears to have been based on
       plaintiffs' misleading allegation that the Garrett loans amounted to 14% of *tangible*
28    *common equity*.  MTD Br. at 18-19 & n.18.

---

DEFENDANTS' REPLY IN FURTHER                    - 9 -              Case No. 10-CV-06256-MMM (PJWx)
SUPPORT OF MOTION TO DISMISS THE FAC

1    plaintiffs' citation of a pre-PSLRA case does not ameliorate the FAC's infirmity.  *See*

2    Opp. at 14 (citing *In re Wells Fargo Sec. Litig.*, 12 F.3d 922 (9th Cir. 1993)).

3           Finally, plaintiffs offer no substantive response to the Ninth Circuit's

4    pronouncement quoted by this Court that "'[a] litany of alleged false statements,

5    unaccompanied by the pleading of specific facts indicating why those statements were

6    false, does not meet th[e] standard [set forth in the PSLRA].'"  *See* MTD Order at 46

7    (quoting *Metzler Inv. GMBH* v. *Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th

8    Cir. 2008)).  Thus, the other GAAP allegations also fail.

9    **II.      The FAC's scienter allegations remain deficient.**

10          Even if CVB's statements were materially false or misleading — though they

11   were not — the pleaded facts do not show that they were knowingly or intentionally

12   so.  MTD Br. at 19-26.  As the Opposition highlights, the alleged statements at issue

13   are characterizations, judgments and opinions.  Yet it points to no facts alleged that

14   would lead to a strong inference that the defendants (a) did not actually believe their

15   characterizations (e.g., that the Garrett loans were "performing as agreed," though

16   "substandard"); (b) did not believe that their judgments were reasonable (e.g., that the

17   Garrett loans entailed a "distinct possibility" of loss, but were not yet "impaired"); and

18   (c) did not actually hold the opinions they expressed (e.g., that their concerns about

19   the Garrett loans did not yet rise to the level of "serious doubts").[8]

20          A.      The Garrett loans

21          As this Court held previously, the most compelling narrative in the CAC was

22   that CVB "attempted to work with Garrett" in order "to ensure it could meet its

23   obligations" and CVB continued these efforts "until it became obvious that Garrett

24   _____

25   [8]     Mischaracterizing *Matrixx Initiatives, Inc.* v. *Siracusano*, 131 S. Ct. 1309, 1324
     (2011) (noting a court "must review all the allegations holistically"), plaintiffs argue
26   that it is a "violation" for defendants to expose the weakness of individual allegations
     in the FAC.  Opp. at 16.  This is absurd.  It makes no sense to require defendants to
27   avoid addressing the infirmities of individual allegations in the demonstration of the
     inadequacy — as here — of plaintiffs' complaint as a whole.  *See* MTD Br. at 10-26.
28

1    would be unable" to repay its loans.  MTD Order at 64.  As defendants have shown,

2    the same is true of the FAC.  MTD Br. at 19-26.

3            The Opposition emphasizes the FAC's repetitive allegations of Garrett threats

4    of bankruptcy at two meetings (Opp. at 1-4, 7-17), but never points to facts showing

5    that CVB management actually believed any such threats (notably, Garrett did not

6    actually declare bankruptcy).  *See* MTD Br. at 12-13, 22-23.  And the "confidential

7    witness" accounts do not identify any statement or conduct by defendants that is

8    inconsistent with their belief at the time that the Garrett loans were likely — as they

9    did throughout the class period — to continue to perform.  *See id*. at 8-9, 20-26.[9]  The

10   facts alleged simply do not show that it was "obvious" or that defendants "knew

11   during the class period that the Garrett relationship had passed the point of repair."

12   *Id*.; *see also* MTD Order at 59, 64; *Am. Apparel*, 2012 WL 1131684, at *23.

13           Moreover, the anonymous account allegedly offered by a Garrett former chief

14   operating officer — the exclusive basis for these threat allegations — is manifestly

15   unreliable and does not support an inference of scienter.  MTD Br. at 12-13; *see also*

16   MTD Order at 36 (citations omitted); *Zucco Partners, LLC* v. *Digimarc Corp.*, 552

17   F.3d 981, 995 (9th Cir. 2009).  This "confidential witness" was admittedly absent

18   from these two meetings and does not — because he cannot — allege what was

19   actually said by Garrett (or even that the word "bankruptcy" was ever mentioned) or

20   how CVB responded.  MTD Br. at 12-13.

21           Furthermore, the conclusion that scienter is inadequately alleged here is

22   buttressed by *American Apparel.*  There, in support of allegations of GAAP violations

23   and false assurances regarding the defendant company's financial health, the plaintiffs

24   _____

25   [9]      Nothing in the Opposition demonstrates why the Court should not again dismiss
     the "confidential witness" allegations repeated from the CAC, and found by the Court
26   "rife with speculation and conjecture" and "lack[ing] the specificity demanded by
     Rule 9(b) and the PSLRA."  *See* MTD Br. at 20-21 (quoting MTD Order at 44).  And
27   the Opposition does not dispute that none of the new "confidential witnesses" had any
     personal knowledge of the state of mind of defendants.  MTD Br. at 20-23.
28

1    alleged that the chief financial officer (CFO), also a defendant, had stated in a

2    contemporaneous email that the company "almost went bankrupt last Friday."  2012

3    WL 1131684, at *7-8, *27 n.214.  This Court held that the allegation "does not show

4    scienter, as the complaint pleads no facts suggesting [the CFO's] statement was true

5    when made, or alleges sufficient detail regarding the nature of [his] concerns about the

6    company's financial viability."  *Id*. at *27 n.214.

7         The FAC's allegations are even weaker than those found unavailing in

8    *American Apparel*.  There, the complaint alleged, among other things:  (i) a specific

9    statement quoted precisely from an email; (ii) by a defendant; (iii) indicating the

10   defendant company's near-bankruptcy; and (iv) reported by the *Los Angeles Times*

11   after it obtained the relevant emails.  *Id*. at *7, *27 n.214.  By contrast, the

12   bankruptcy-threat allegations in the FAC:  (a) do not reveal specifically what was said

13   at the alleged meetings; (b) do not allege that any defendant made any statement

14   indicating that CVB believed Garrett would file for bankruptcy; (c) do not have

15   anything to do with CVB's financial status; and (d) are reported anonymously by

16   someone who admittedly was not present at the alleged meetings.  MTD Br. at 12-13.

17   Thus, the FAC's bankruptcy-threat allegations certainly warrant a similar dismissal by

18   the Court.

19        B.    Other scienter allegations

20        Plaintiffs allege that the loss CVB incurred after the class period amounted to

21   more than 80% of CVB's $52 million in net income during the prior year.[10]  The loss

22   alleged here occurred *after the class period*.  And plaintiffs' attempt to use a post-

23   class period loss to demonstrate scienter — i.e., that defendants knew about or were

24   deliberately reckless in failing to predict the impending *future* loss during the class

25   period — by referencing a core operations inference is completely circular.[11]

---

[10]    This allegation is false.  As defendants highlighted — and as plaintiffs fail to contest — plaintiffs are double-counting $9.3 million in losses.  MTD Br. at 25 n.24.

[11]        *See, e.g.*, *Sharenow* v. *Impac Mortg. Holdings, Inc.*, 385 Fed. App'x 714, 717

---

1      Plaintiffs gain no more traction from their already discredited motive

2    allegations.  This Court already rejected the same insider trading claims that plaintiffs

3    repeat here:  The alleged trading of Myers was too "minimal" to support any inference

4    of scienter and was also pursuant to a 10b5-1 plan.  MTD Order at 60-62; *see also*

5    MTD Br. at 24; *Metzler*, 540 F.3d at 1067 (10b5-1 plan tends to negate scienter).  And

6    the alleged trading of Biebrich is insufficient.  MTD Order at 60-62; *see also* MTD

7    Br. at 24.[12]  Moreover, as demonstrated, the FAC's "growth strategy" allegation is

8    inconsistent with the facts.  MTD Br. at 25.  Plaintiffs do not respond.

9      Finally, neither CVB's independent auditor nor its federal bank regulators have

10   required CVB to make any restatement.  *See* MTD Br. at 3, 7-8.  And though plaintiffs

11   erroneously assert otherwise, the very case that plaintiffs cite (Opp. at 14) —

12   *McCasland* v. *FormFactor Inc.*, 2009 WL 2086168 (N.D. Cal. July 14, 2009) —

13   demonstrates that clean audit opinions *do* raise inferences that the Court may properly

14   consider and *do* undercut the FAC's allegations.  *See id*. at *7 (absence of restatement

15   of relevant numbers rendered plaintiff's inference of scienter implausible); *see also,*

16   *e.g.*, *Metzler*, 540 F.3d at 1069 (no inference of scienter because, in part, complaint

17   "does not allege that [defendant's] external auditors counseled against the practice").

18

---

19   (9th Cir. June 29, 2010) ("[Plaintiff] does not persuasively explain how [the core

20   operations] inference transforms the … statements into sufficient allegations.").
     Given this circularity, plaintiffs' citations to *South Ferry LP, No. 2* v. *Killinger*, 542

21   F.3d 776 (9th Cir. 2008) and *In re Toyota Motor Corp. Securities Litigation*, 2011 WL

22   2675395 (C.D. Cal. July 7, 2011) (Opp. at 19-20) are unavailing.  Moreover,
     plaintiffs' use of the figure "80%" is apparently intended to overcome this Court's

23   finding, based on *Berson* v. *Applied Signal Technology*, 527 F.3d 982 (9th Cir. 2008),

24   that a core operations inference was not warranted here.  MTD Order at 57; MTD Br.
     at 25-26 & n.26.  But *Berson* involved stop-work orders amounting to 80% of

25   *revenue*.  MTD Order at 57 (citations omitted).  Here, the Garrett relationship

26   amounted to less than 2.4% of CVB's revenue.  MTD Br. at 25-26 & n.26.

27   [12]     Plaintiffs' citation to *Ronconi* v. *Larkin*, 253 F.3d 423 (9th Cir. 2001) only
     proves the point, as the court there discounted allegations of insider sales by eleven

28   insiders in much greater amounts.  *Id*. at 435-37.

---

1    **III.    The FAC's loss causation allegations remain deficient.**

2         The inapplicability of the PSLRA's heightened pleading standard does not save

3    a loss causation theory that is manifestly unwarranted by the facts.  *E.g.*, *Metzler*, 540

4    F.3d at 1064-65 (a court "is not required to indulge unwarranted inferences in order to

5    save a complaint from dismissal"); *see also Dura Pharm., Inc.* v. *Broudo*, 544 U.S.

6    336, 342, 346-47 (2005).  No theory of loss causation is warranted from the

7    allegations in the FAC regarding the August 9, 2010 disclosure of the SEC subpoena,

8    as the characterization of the announcement as "partial[ly] corrective" ignores the text

9    of the notice, the SEC's express disclaimer that the subpoena indicated no wrongdoing

10   and the content of analyst reactions.  *Compare* Opp. at 23-28 *with* MTD Br. at 26-28.

11        Plaintiffs' assertion that defendants "rely almost exclusively on a district court

12   decision" in *In re Maxim Integrated Products, Inc. Securities Litigation*, 639 F. Supp.

13   2d 1038 (N.D. Cal. 2009) (Opp. at 26) is puzzling.  *Maxim*'s holding — that an

14   announcement of an investigation, as here, is insufficient for loss causation purposes

15   — is consistent with Ninth Circuit pronouncements regarding disclosures that are not

16   corrective, but rather merely "reveal[] a 'risk' or 'potential' for … fraudulent

17   conduct."  MTD Br. at 27 (quoting *Metzler*, 540 F.3d at 1064).  Moreover, as

18   defendants highlighted, *several courts* have held that an announcement of an SEC

19   investigation is not a corrective disclosure and, therefore, cannot serve as the basis for

20   a pleading of loss causation.  *Id.* (citing *In re Almost Family, Inc. Sec. Litig.*, 2012 WL

21   443461, at *13 (W.D. Ky. Feb. 10, 2012); *Meyer* v. *St. Joe Co.*, 2012 WL 94584

22   (N.D. Fla. Jan. 12, 2012); *In re Immersion Corp. Sec. Litig.*, 2011 WL 871650, at *8

23   (N.D. Cal. Mar. 11, 2011); *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d

24   1142, 1162 (C.D. Cal. 2007)); *see also Janbay* v. *Canadian Solar, Inc.*, 2012 WL

25   1080306, at *15 (S.D.N.Y. Mar. 30, 2012) ("The announcement of an SEC subpoena

26   … itself is insufficient to plead loss causation.").[13]

27   ───────────────

28   [13]    Rather, it is plaintiffs that have no support for their loss causation argument, as
     the cases they cite (Opp. at 24-25) are inapposite:  *Rudolph* v. *UTStarcom*, 2008 WL

1    As to the September 9, 2010 announcement, plaintiffs fail to explain why, if

2  they believe there was an actionable loss on September 9, 2010, they elected to end

3  the purported class period a month earlier.  *See* MTD Br. at 29.  Nor does the

4  Opposition explain how the September 9, 2010 disclosure of a charge-off of the

5  Garrett loans was a "corrective disclosure."  *See id*.  Finally, the Opposition also fails

6  to explain the basis for a loss in the absence of anything but an insignificant and

7  ephemeral stock drop.  *See id*.[14]

8                          **CONCLUSION**

9    All but conceding that this latest complaint still fails to allege how, why or in

10  what respect a single Garrett loan was "impaired" as of any date within the class

11  period, plaintiffs, without explanation, ask for leave to amend in the event this Court

12  dismisses their latest pleading.  Defendants submit that this would be a waste of

13  judicial resources and unfair to defendants who already have been through two rounds

14  of briefing on two different "theories" of securities fraud that did not remotely state a

15  claim.  Defendants thus respectfully request that any dismissal this time be final and

16  with prejudice.

17

18

19  4002855, at *4 (N.D. Cal. Aug. 21, 2008) (decided before Ninth Circuit statement on

20  risk disclosures and the company *itself* found it necessary to initiate and announce
internal investigation of its historical financial statements); *In re Wash. Mut., Inc. Sec.,*

21  *Deriv. & ERISA Litig.*, 694 F. Supp. 2d 1192, 1224-25 (W.D. Wash. 2009) (decided

22  under the more permissive standard of the Securities Act of 1933 and disclosure of
investigation one in "series" of corrective disclosures); *New Century*, 588 F. Supp. 2d

23  at 1213-14 (disclosure of internal investigation related to need for restatement and

24  included expectation of conclusion of "material weaknesses" in financial reporting).

25  [14]    For the one alleged misstatement about CVB's interest in one of a set of ten
buildings for which there arguably was a corrective disclosure by the media early in

26  the class period, the FAC conveniently omits this corrective disclosure.  MTD Br. at

27  28-29.  The reason for this omission is obvious:  there was no stock drop upon this
corrective disclosure, so plaintiffs cannot allege loss causation with respect to this

28  alleged misstatement.  *Id*; *see also Dura*, 544 U.S. at 342, 346-47.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  May 14, 2012          Respectfully submitted,


By:    /s/  Scott Vick

VICK LAW GROUP, APC
  Scott Vick (No. 171944)
  Jason T. Riddick (No. 235980)
  Rachelle S. Torres (No. 243392)
  Lital Gilboa (No. 263372)

WACHTELL, LIPTON, ROSEN & KATZ
  David M. Murphy (*pro hac vice*)
  Warren R. Stern (*pro hac vice*)
  Jeffrey D. Hoschander (*pro hac vice*)

Attorneys for Defendants
CVB FINANCIAL CORP., CHRISTOPHER D.
MYERS AND EDWARD J. BIEBRICH, JR.