VICK LAW GROUP, APC
  Scott Vick (No. 171944)
  Jason T. Riddick (No. 235980)
  Rachelle S. Torres (No. 243392)
  800 West Sixth Street, Suite 1220
Los Angeles, California  90017
Telephone:  (213) 784-6225
Facsimile:  (213) 985-7155
E-Mail:  Scott@vicklawgroup.com
         Jason@vicklawgroup.com

WACHTELL, LIPTON, ROSEN & KATZ
  David M. Murphy (*pro hac vice*)
  Warren R. Stern (*pro hac vice*)
  Jeffrey D. Hoschander (*pro hac vice*)
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
E-Mail:  DMMurphy@wlrk.com
         JDHoschander@wlrk.com

Attorneys for Defendants
CVB FINANCIAL CORP., CHRISTOPHER D.
MYERS AND EDWARD J. BIEBRICH, JR.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BARRY R. LLOYD, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CVB FINANCIAL CORP., et al.,<br><br>Defendants. | Case No. CV 10-06256 MMM (PJWx)<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:      February 11, 2013<br>Time:      10:00 a.m.<br>Location:  Courtroom 780 |

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

I.    The "New Allegations" in the SAC still negate plaintiff's already deficient claims of falsity and scienter. .........................................................4

II.   The Opposition perpetuates plaintiff's assertion of misleading allegations. ....................................................................................................7

III.  The Opposition's effort to amend the SAC is as improper, ineffectual and misleading as the SAC itself. ................................................................8

IV.  The Opposition's other arguments fail to remedy the SAC's inadequate falsity and scienter allegations. ................................................11

V.    The SAC's loss causation allegations remain deficient. .............................13

CONCLUSION......................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barbera* v. *WMC Mortg. Corp.*,
  2006 WL 167632 (N.D. Cal. Jan. 19, 2006) ............................................................... 9

*Brown* v. *China Integrated Energy, Inc.*,
  2012 WL 2866462 (C.D. Cal. July 12, 2012) ....................................................... 9 n.5

*Dura Pharms. Inc.* v. *Broudo*,
  544 U.S. 336 (2005) ............................................................................... 11 n.7, 15

*In re Apollo Group, Inc. Sec. Litig.*,
  2010 WL 5927988 (9th Cir. June 23, 2010) ....................................................... 14 n.9

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) ............................................................................. 11 n.7

*In re Daou Systems, Inc.*,
  411 F.3d 1006 (9th Cir. 2005) ............................................................................. 13

*In re Gilead Sciences Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................................. 14 n.9

*In re Rigel Pharm., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ....................................................... 7 n.4, 9 n.5, 12 n.8

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) ............................................................................. 9 n.5

*Metzler Inv. GMBH* v. *Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ......................................................................... passim

*Norwest Bank Worthington* v. *Ahlers*,
  485 U.S. 197 (1988) ............................................................................................. 6

*Ronconi* v. *Larkin*,
  253 F.3d 423 (9th Cir. 2001) ............................................................................. 9 n.5

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................. 7 n.4

*Zucco Partners, LLC* v. *Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)......................................................................7 n.4, 9 n.5

**Statutes and Rules**

15 U.S.C. § 78u-4(b)..........................................................................................7 n.4

Fed. R. Civ. P. 9(b) ............................................................................................7 n.4

# INTRODUCTION

Dismissing the FAC, this Court held that "plaintiff has failed to plead either falsity or scienter regarding defendants' knowledge or disclosure of the status of the Garrett loans." Even as alleged in plaintiff's SAC — and, indeed, even more so in this third complaint than in the two preceding it — the facts make clear that the Garrett situation was fluid, highly nuanced and subjective, and amenable to good banking and business judgment, and that its uncertainties were adequately conveyed in CVB's risk disclosures and the full context of management remarks to analysts. Just as fundamentally, the accounting treatment of the Garrett loans was proper in light of facts known at the time. Even with 20/20 hindsight, CVB has never been compelled to restate its financials by its independent auditors or federal regulators, and plaintiff is unable to point to a single accounting treatment that was erroneous in light of facts known to management at the time the accounting judgments were made.

Ironically, plaintiff's third complaint confirms nearly everything this Court previously has written about the insufficiency of plaintiff's theory of this case. No new fact or detail pled by plaintiff would, even if it were to be proven, suffice to establish that any of CVB's public disclosures or statements were materially false or misleading when made, and no new fact or detail pled by plaintiff would make an inference of scienter any more plausible than it was with plaintiff's prior complaints.

As before, plaintiff's accounting claims still amount to rank second-guessing of credit, business and accounting judgments that were reasonable when made. As before, plaintiff is unable to point to a single fact or circumstance known to management that required a *different* credit, business or accounting judgment as of any point in time. Applying the PSLRA and Fed. R. Civ. P. 9(b), therefore, this Court twice has recognized that the most plausible inference from the facts pled is that CVB worked with Garrett to be repaid — specifically, to *lower*, not raise, Garrett's principal balance owed, and to continue collecting interest at market rates — until it became clear to CVB that Garrett had passed the point of repair. If anything,

1  plaintiff's latest complaint demonstrates why it was reasonable for CVB management
2  to conclude that Garrett would view any bankruptcy option as self-destructive and
3  unacceptable, and why, so long as he continued to have cash flow sufficient to keep
4  current on interest to CVB, Garrett would forbear from making good on any of the
5  saber-rattling he and his team kept attempting as they sought to renegotiate their loans.

6        At its core, the theory of plaintiff's third complaint shares the unsupported
7  premise of plaintiff's first two pleadings — namely, (i) Paul Garrett and his
8  commercial real estate development firm had failed as early as 2008; (ii) CVB
9  management knew the firm had failed and personal recourse against Garrett was
10  worthless; but (iii) CVB management, for reasons still not articulated in plaintiff's
11  latest complaint or Opposition,[1] propped Garrett up for two years knowing all the
12  while CVB would never be repaid in whole or in part.  This Court has rejected this
13  premise repeatedly; nothing in this latest complaint lends new *factual* support to this
14  premise; and, in reality, much in this latest complaint negates this premise.

15        Notwithstanding the effort in its Opposition to embroider its allegations and
16  obfuscate the relevant issues, plaintiff still cannot gainsay that *before and during the*
17  *class period* — even through January 2010, when, according to a double-hearsay
18  account, Paul Garrett ostensibly told CVB management that he might file for
19  bankruptcy relief from his debts rather than keep paying them — Paul Garrett:  (i) was
20  representing to CVB in writing that he and his real estate development firm had a net
21  worth far in excess of outstanding loans; (ii) was actively endeavoring to shore up his
22  liquidity with asset sales and outside investors; and (iii) still had operating cash flow
23  from his business sufficient to allow him to continue to pay market-rate interest and to

---

[1]  "Opposition" or "Opp." refers to Lead Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss the Second Amended Consolidated Class Action Complaint [DN 77].  Previously defined terms have the same meaning as in Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss the Second Amended Consolidated Class Action Complaint ("MTD Brief" or "MTD Br.") [DN 75-1].

reduce his principal balance.  It was thus not only "reasonable" for CVB management to have considered the Garrett loans to have been "performing," the Garrett loans were "performing."  Even now, plaintiff cannot plead with particularity why the judgment of CVB, its outside auditors and federal bank regulators that the loans were "performing" (albeit graded "substandard") as of any particular date was in any respect incorrect.

Nor do the facts as pled support *any* inference, much less a "strong" inference, that CVB's executives deluded themselves into believing, or "pretended," that Garrett could keep making his loan payments.  Quite the opposite:  The facts as pled show that CVB had every reason to believe what Paul Garrett was representing in writing about his personal net worth (and thus the value of CVB's recourse against him) and his efforts to improve his liquidity.  Add to this the *res ipsa loquitur* — the fact that Garrett was continuing to pay CVB out of operating cash flow — and the fact that Paul Garrett's personal net worth (free and clear of any debt) gave him *a huge personal incentive* to avoid being wiped out by a bankruptcy filing, and it becomes truly hard to imagine any banker who would view alleged talk of an imminent bankruptcy as anything but a negotiating ploy.

This is not to suggest that CVB did not recognize that Garrett was under considerable cash flow pressure.  Did CVB management, its auditors and federal regulators grade his loans as if they posed a risk of loss?  Yes, as any prudent banker would do.  CVB management classified the Garrett loans as "substandard," which, by definition, meant they posed a risk of loss.  But even now, on its third attempt at stating a claim, plaintiff cannot point to a single fact showing that CVB management did not genuinely believe Paul Garrett could and would continue to pay as — after *both* September 2008 and January 2010 — he did.  Nevertheless, even after three attempts, plaintiff (a) cannot and does not allege Garrett stopped making interest payments on his loans; (b) cannot and does not allege those interest payments were paid at concessionary or below-market rates so as to constitute a "troubled debt

1  restructuring" (to the contrary, plaintiff acknowledges that Garrett offered and CVB
2  obtained additional security); (c) cannot and does not allege how or why CVB
3  management's banking judgments at each point — that is, as of September 2008 and
4  as of January 2010 — were mistaken, much less fraudulently so (for, after all, Garrett
5  did continue to pay after both of these dates); and (d) cannot and does not allege how
6  or why the accounting treatment as of those dates (approved by CVB's outside
7  auditors and bank regulators and not compelled to be restated) was mistaken, much
8  less fraudulently so.

9      Finally, on loss causation, plaintiff's argument amounts to nothing more than an
10 untimely and unsupported motion to reconsider this Court's previous decision on the
11 contrived premise that erroneous "speculation" by an anonymous blogger somehow
12 warrants a new decision.  It doesn't.  Speculation — and certainly erroneous
13 speculation by an anonymous blogger — suggesting a risk of a future corrective
14 disclosure manifestly fails to meet the loss causation standard under binding Ninth
15 Circuit precedent.  A stock drop in response to a risk recognized by the market is
16 insufficient; *the operative disclosure must be corrective*.  Here, the stock drop at the
17 time the SEC subpoena was announced was not a response to a corrective disclosure.
18 There is no reason for this Court to abandon its prior holding.

19 **I.    The "New Allegations" in the SAC still negate plaintiff's already deficient
20         claims of falsity and scienter.**

21     In its Opposition, plaintiff argues that it has responded to this Court's direction
22 in the FAC Dismissal Order and provided "greater detail" about what CW9 allegedly
23 knew about Garrett's communications to CVB regarding the depth of Garrett's
24 financial difficulties.  Opp. at 1.  But it turns out, as alleged by the SAC, CW9 did not
25 know much, and that which he did allegedly know does not support plaintiff's theory
26 of falsity and scienter.  Indeed, the "new allegations" in the SAC do not remedy
27 plaintiff's previous failures to show that CVB management "knew during the class
28 period that the Garrett relationship had passed the point of repair."  MTD Br. at 12-16

(quoting FAC Dismissal Order at 46).  To the contrary, as demonstrated by defendants, the "new allegations" *negate* any inference of material falsity or scienter.  *Id*.  And, in the Opposition, plaintiff fails to rehabilitate these allegations:

    1.    <u>Absence of CW9's Reliability</u>:  Plaintiff does not deny that CW9 did not attend either of the two alleged meetings at which plaintiff previously alleged that Garrett threatened bankruptcy.  *See* MTD Br. at 12-13.  Nor does plaintiff deny that CW9 does not even claim to have heard about the meetings until "[t]wo weeks after Garrett's September 2008 meeting" and as much as a week after the January 2010 meeting, respectively.  *See id*. (quoting SAC ¶ 33).

    2.    <u>Omission of Bankruptcy Threat</u>:  Notwithstanding the allegations in the FAC, the SAC does not allege that CW9 reports that any bankruptcy threat was made by Garrett at the September 2008 meeting.  *Id*.  The Opposition ignores this.

    3.    <u>Two Other Options</u>:  The Opposition does not deny that CW9 reports that Garrett tried to persuade CVB at the January 2010 meeting (at which bankruptcy was allegedly mentioned as one of three options) that he was attempting to improve his liquidity through (i) the sale of valuable assets and (ii) the obtaining of an equity partner to bring in investor capital.  *Id*. (citing SAC ¶¶ 2, 43, 44).

    4.    <u>Garrett's $150 Million in Net Worth</u>:  As it must, consistent with the SAC, plaintiff concedes that Garrett provided documentary evidence before the January 2010 meeting demonstrating that he still had $150 million in equity, net of debt.  Opp. at 3-4, 9 ("evidence" of Garrett's $150 million remaining "net worth"); *see also* MTD Br. at 2, 4, 14-15.

    5.    <u>CVB's Additional Security</u>:  Plaintiff does not dispute that CVB obtained additional collateral and security for its loans to Garrett in exchange for the $10 million loan in September 2008, including UCC-1 security interests in the excess cash flow from 15 income-producing commercial properties.  *See* MTD Br. at 3, 14, 18-19.

    Taken together, these "new allegations" make it even less plausible that CVB management "knew during the class period that the Garrett relationship had passed the

point of repair." Indeed, notwithstanding Garrett's financial difficulties, it is now even more evident that CVB reasonably believed that Garrett would repay his loans on market terms rather than filing for bankruptcy.

Plaintiff impertinently notes that Lehman Brothers and WorldCom had "equity" before filing for bankruptcy. Opp. at 9. But this, of course, completely misses the point. Equity holders of both those bankrupt corporations were wiped out.[2] Here, the complaint alleges that Paul Garrett is the one who threatened bankruptcy.[3] Yet, it was Paul Garrett, who stood to lose his assets and equity, as creditors (such as CVB) stand before equity holders (such as Garrett) in a bankruptcy. *See, e.g.*, *Norwest Bank Worthington* v. *Ahlers*, 485 U.S. 197, 201-02 (1988). It would have made no sense for Paul Garrett to precipitate his own demise. And it would have made no sense for CVB management to believe otherwise.

Indeed, the Opposition *itself* illustrates the reasonableness of CVB management's belief that Garrett would not file for bankruptcy during the class period. Plaintiff makes the statement that "Garrett likely would not have sold assets voluntarily at a large loss in 2010, when it did not sell those assets at a smaller loss in prior years." Opp. at 9 n.6. If Garrett was unwilling to sell even certain assets, *a fortiori* CVB management reasonably believed that Garrett would have been unwilling to give up control of *all his assets* in a bankruptcy at that time.

---

[2] *See* Order Confirming Modified Third Amended Joint Chapter 11 Plan, *In re Lehman Brothers' Holdings Inc.*, No. 08-bk-13555, at Ex. A, 28-29 (Bankr. S.D.N.Y. Dec. 6, 2011) [DN 23023] (cancelling stock; entitling equity interest holders to remaining assets only if each of eleven creditors classes' claims is satisfied; deeming all eleven classes impaired); Order Confirming Debtors' Modified Second Amended Joint Plan, *In re WorldCom, Inc.*, No. 02-bk-13533, at Ex. A, 21 (Bankr. S.D.N.Y. Oct. 31, 2003) [DN 9686] (extinguishing equity interests without distributions).

[3] It is not clear from the complaint whether this alleged threat was intended to refer to a personal bankruptcy, a bankruptcy of Paul Garrett's real estate development firm, The Garrett Group LLC, or otherwise.

  The Court has already properly dismissed the two previous complaints for failure to adequately allege material falsity or to raise a strong inference of scienter at least as compelling as any competing inference. *See* FAC Dismissal Order at 35, 38, 49 (allegations "not adequate to establish CVB's and Myers's knowledge of Garrett's allegedly impending bankruptcy"). Accordingly, plaintiff's failure to rehabilitate the "new allegations" is dispositive and fatal.

## II. The Opposition perpetuates plaintiff's assertion of misleading allegations.

  As this Court has explained, the PSLRA's "heightened standard" precludes reliance on allegations that are "vague" and "unaccompanied by a particularized explanation" demonstrating falsity and scienter. FAC Dismissal Order at 19-20 (quoting *Metzler Inv. GMBH* v. *Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008)).[4] And as defendants illustrated in the MTD Brief, plaintiff relies not only on vague allegations, but also on several misleading allegations. MTD Br. 17-20, 25-26; *see also* FAC Dismissal Order at 30 ("Plaintiff also selectively quotes analyst reports and SEC disclosures in an effort to plead falsity."), 40 (characterizing plaintiff allegation as "somewhat misleading"). The Opposition neither denies nor explains these misleading allegations. For example:

  1. <u>Misleading Selective Quotation of CVB Statements</u>: Plaintiff's Opposition offers no explanation for the SAC's repetition of the misleading selective partial quotation of a sentence from a January 25, 2010 analyst report, which concluded with the point — omitted from the SAC just as it was omitted from the FAC — that management noted that the Garrett credit "remain[ed] on classified status (substandard)." *See* MTD Br. at 17; FAC Dismissal Order at 30. As the Court explained, "Rather than misrepresenting the status of the Garrett loans, the disclosure

---

[4]  *See also* 15 U.S.C. § 78u-4(b); Fed. R. Civ. P. 9(b); *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012); *Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

supports an inference that when concerns arose regarding the status of the Garrett loan portfolio, defendants made efforts to disclose the situation in a timely manner." FAC Dismissal Order at 30.

2. <u>Obfuscation of the Recanted September 2008 Bankruptcy Allegation</u>: The Opposition offers no explanation for the SAC's clouding of the recanted allegation of a September 2008 bankruptcy threat with the SAC's use of the word bankruptcy no fewer than 32 times. *See* MTD Br. at 4, 13, 18.

3. <u>Omission of Context of Comments at Analyst Conference</u>: Defendants' MTD Brief pointed out that plaintiff's allegations of CVB responses about the Garrett loans at a December 2, 2009 analyst conference failed to provide the specific questions and the complete answers. MTD Br. at 17-18. Plaintiff's Opposition neither denies nor explains these omissions.

4. <u>Relatively Small Size of the Garrett Relationship</u>: The Opposition itself, like the SAC, again repeats the "tangible common equity" allegation (SAC ¶ 31; Opp. at 21) that this Court has already expressly found "somewhat misleading" (FAC Dismissal Order at 40). *See also* MTD Br. at 25-26. The truth is that the Garrett relationship accounted for only 2.4% of CVB's loan portfolio or, as this Court put it, a "minuscule portion" of CVB's total operations, which does not support an inference of scienter. FAC Dismissal Order at 40, 44; *see also* MTD Br. at 8-9, 25-26.

There is no requirement for the Court to take at face value allegations that are plainly misleading. In any event, such allegations cannot demonstrate material falsity with particularity or support a strong inference of scienter, as required by the PSLRA.

**III. The Opposition's effort to amend the SAC is as improper, ineffectual and misleading as the SAC itself.**

Plaintiff's misleading and inconsistent statements in its Opposition regarding an alleged default in January 2010 only exacerbate plaintiff's pattern of misleading allegations. Specifically, the Opposition states that Garrett "entirely stopped paying its debt as of January 2010" and that Garrett "could not — and, after January 2010,

did not — make any additional payments on its loans." Opp. at 14, 19. These statements in the Opposition are unsupported by the SAC and add nothing.

There is no allegation whatsoever *in the SAC* that Garrett ceased to make all payments on his loans as of any time during the class period. And "[i]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." *Barbera* v. *WMC Mortg. Corp.*, 2006 WL 167632, at *2 n.4 (N.D. Cal. Jan. 19, 2006). The SAC's vague and conclusory allegations without clear attribution that Garrett "began to again default," was "already behind on payments," and "never again became current on its obligations" (SAC ¶¶ 41, 44) do not make it evident what payments Garrett is alleged to have been "behind" on or how far "behind" Garrett supposedly fell. Certainly these allegations do not demonstrate that CVB management considered Garrett to have been a non-performing relationship at any time during the class period. MTD Br. at 19-20.[5]

Furthermore, the SAC itself makes it apparent that Garrett continued to make interest payments and pay down principal before and during the class period. MTD Br. at 9. The SAC alleges that the outstanding principal balance on the Garrett loans was $85 million in September 2008 (SAC ¶ 3), references an $84 million figure in January 2010 (SAC ¶ 141) and acknowledges a decline to $82 million by September 2010 just after the end of the purported class period (SAC ¶¶ 220, 222; *see also* Opp. at 5 (referring to the "entire $82 million Garrett loan portfolio")). Indeed, this Court has already recognized that "Plaintiff concedes that Garrett continued to pay interest

---

[5]  *See also* FAC Dismissal Order at 19; *Rigel*, 697 F.3d at 876 ; *Zucco Partners*, 552 F.3d at 990-91; *Metzler*, 540 F.3d at 1070; *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087 (9th Cir. 2002); *Ronconi* v. *Larkin*, 253 F.3d 423, 431 (9th Cir. 2001). And the Opposition's citation to *Brown* v. *China Integrated Energy, Inc.*, 2012 WL 2866462 (C.D. Cal. July 12, 2012) (Opp. 13 n.13), to excuse plaintiff's failure to plead with particularity is unavailing. In that case, the complaint alleged detailed material discrepancies between statements filed with the SEC and figures reported to Chinese regulators. *China Integrated*, 2012 WL 2866462, at *11. The SAC's vague allegations about Garrett having fallen behind on payments are hardly comparable.

and amortize principal, and never filed for bankruptcy at any time during the class period." FAC Dismissal Order at 49.

Plaintiff now tries to explain this reduction in principal by saying, "If there was any principal balance reduction, it likely would have resulted from a forced sale of Garrett's assets rather than a voluntary payment on Garrett's part." Opp. at 9 (emphasis omitted). Even if this were alleged in the SAC, which it is not, it would only further undermine plaintiff's theory, as it demonstrates that CVB had the leverage to compel Garrett to make asset sales in order to repay his loans.

Similarly ineffectual, the lengths to which the Opposition goes to demonstrate that the word "default" can mean even immaterial and insignificant departures by the borrower from the loan agreement (Opp. at 8, 13-15 & n.14) border on the absurd. First, even the SAC itself recognizes that borrowers are not considered to be "in default" or "non-performing" until they are at least 90 days delinquent on payments. SAC ¶ 84 ("A distressed loan progresses from: (i) past due under 30-59 days; to (ii) past due 60-89 days; to (iii) past due 90 or more; to (iv) non-performing and non-accrual status (*i.e.*, in default)."). Second, the Opposition's minimization of the meaning of the word "default" — showing that plaintiff understands the word to apply to even immaterial and insignificant departures from loan agreements — further demonstrates the meaninglessness of allegations of "default" in the SAC and Opposition. Certainly, no material misstatement or accounting violation, much less a fraudulent one, has been stated with vague allegations of "default," particularly in the face of Garrett's payment of market-rate interest and amortization of principal. Plaintiff has once again failed to allege both (a) the particulars of any material default and (b) that defendants considered Garrett to have been non-performing.

*Most fundamentally*, the only inference that arises from the SAC — with or without these statements in the Opposition — is that CVB management reasonably believed that Garrett would repay his loans in full. In other words, the SAC "does not contain a sufficiently particularized allegation that CVB management knew, during

the class period, that Garrett lacked the funds to satisfy its loan obligations, and that CVB recklessly or intentionally disregarded the warning signs and tried to portray its largest loan relationship in a deceptively positive light." FAC Dismissal Order at 49.[6]

### IV. The Opposition's other arguments fail to remedy the SAC's inadequate falsity and scienter allegations.

The Opposition rehashes several other already discredited and rejected allegations and arguments. Most of these depend on plaintiff's discredited theory that CVB supposedly knew of Garrett's failure. None deserve any more weight than they were accorded in plaintiff's previous complaints and briefing.[7]

The allegations unrelated to the Garrett loans are also plainly inadequate. For example, the SAC's vague and conclusory allegation regarding non-performing dairy loans (SAC ¶ 46) does not even come close to demonstrating material falsity with particularity or raising a strong inference of scienter. Similarly, the SAC's citation to FASB EITF Topic No. D-80 (*see* Opp. at 12) does not change that the appraisal allegation in the SAC — repeated from the CAC and the FAC — again amounts to a

---

[6] The Opposition adds several misleading allegations, including that the $10 million credit extended as part of a cash-out refinancing was a "total loss six months later." Opp. at 16 n.17. This timing is plainly inaccurate even according to the SAC, which alleges that this $10 million was loaned in September 2008. SAC ¶ 33. Though the SAC does allege that the Garrett loans were subsequently refinanced, there is no allegation whatsoever in the SAC of any additional credit provided at any time after September 2008. And the losses on the Garrett loans did not occur until September 2010 — a full two years after this final provision of a $10 million loan. *Id*. ¶ 220.

[7] Regarding the alleged misstatement by Myers about CVB's partial collateral interest in one of ten buildings (*e.g.*, SAC ¶¶ 131-32), there is nothing added in the SAC to the allegation already considered by this Court in its dismissal of the previous two complaints. This allegation fails again because (a) there is no indication of materiality (*see In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010)); (b) plaintiff alleges no facts demonstrating a strong inference of scienter (*see* CAC Dismissal Order at 41 n.137 ("plaintiffs have failed to plead scienter with respect to the statement, i.e., that Myers knew the statement was incorrect when made")); and (c) plaintiff does not allege loss causation with respect to this statement (MTD Br. at 29 n.23; *see also Dura Pharms. Inc.* v. *Broudo*, 544 U.S. 336, 342, 346-47 (2005)).

disagreement in judgment between CW1 and his supervisor in the amount of $600,000. *See* SAC ¶ 52. This is not an allegation that can support a finding of material falsity, and there is absolutely no basis for a strong inference of scienter with respect to this appraisal allegation. MTD Br. at 23.[8] Likewise, the allegations about CVB's efforts to work with Ennis, another borrower (SAC ¶¶ 47-48; Opp. at 18), still add nothing: (a) no false statement is alleged; (b) the efforts substantially predate the class period; (c) this has nothing to do with the Garrett relationship; and (d) there is nothing inherently inappropriate about working with a borrower, even if troubled.

| Category of Allegations | Dependent on Garrett | Inadequacy Demonstrated |
|---|---|---|
| References to absence of "serious doubts" concerning other loans | Opp. at 13-14 | CAC Dismissal Order at 40<br>FAC Dismissal Order at 35<br>MTD Br. at 20-21 |
| "Risk factor" disclosures | Opp. at 12-14 | CAC Dismissal Order at 39-40<br>FAC Dismissal Order at 34-35<br>MTD Br. at 21 |
| Statements about credit quality and underwriting | Opp. at 10 | CAC Dismissal Order at 44-45<br>FAC Dismissal Order at 32-33<br>MTD Br. at 22 |
| Alleged GAAP violations | Opp. at 14-16 | CAC Dismissal Order at 45-50<br>FAC Dismissal Order at 37-41<br>MTD Br. at 22-25 |
| "Core operations" allegations | Opp. at 20-21 | CAC Dismissal Order at 56-60<br>FAC Dismissal Order at 42-47<br>MTD Br. at 25-26 |
| Motive and insider trading allegations | | CAC Dismissal Order at 60-62<br>FAC Dismissal Order at 41-42<br>MTD Br. at 26-27 |

---

[8] *See also* FAC dismissal Order at 31; CAC Dismissal Order at 41-43 ("Moreover, plaintiffs offer only one example of the practice: a single appraisal of the collateral for a non-Garrett loan…. [C]itation of a single, isolated instance does not demonstrate that the practice was rampant in the company."); *Rigel*, 697 F.3d at 878. Plaintiff's other valuation allegations remain focused on values on *Garrett*'s books, not CVB's. *See* MTD Br. at 23-24; FAC Dismissal Order at 33 ("[a]llegations regarding Garrett's failures or misdeeds … will not save [plaintiff's] complaint….").

### V. The SAC's loss causation allegations remain deficient.

Plaintiff concedes the loss causation allegations added to the SAC reflect nothing more than erroneous "speculation" by an "anonymous blogger." *See* MTD Br. at 28. And plaintiff does not deny that the musings of this blogger were wildly off base, as the blogger's theory rested on the erroneous "speculation" that CVB had secretly extended "$120-140 million" in loans to Garrett during the class period, rather than the "stated $83 million." *See id*. (quoting SAC ¶ 203). Accordingly, plaintiff does not even argue that this erroneous "speculation" constituted a "corrective" disclosure for purposes of alleging loss causation. Opp. at 25 (asserting that the SEC subpoena announcement was the "first partial corrective disclosure").

Instead, the Opposition tacitly challenges this Court's prior holding on plaintiff's failure to allege loss causation. The Opposition argues that the Ninth Circuit in *Metzler* recognized that the "principal" case applying *Dura*'s loss causation standard is *In re Daou Systems, Inc.*, 411 F.3d 1006 (9th Cir. 2005). Opp. at 23. The Opposition then continues to rely on *plaintiff's* interpretation of *Daou* in order to undermine this Court's previous holding that the stock price decline following CVB's announcement of an SEC subpoena was inadequate. But this Court properly relied on the Ninth Circuit's express pronouncement in *Metzler* that "neither *Daou* nor *Dura* support[s] the notion that loss causation is pled where a defendant's disclosure reveals a 'risk' or 'potential' for widespread fraudulent conduct." FAC Dismissal Order at 51 (quoting *Metzler*, 540 F.3d at 1064). Plaintiff is, of course, not entitled to ignore the Ninth Circuit's binding interpretation of the Ninth Circuit's own precedent or this Court's holding relying upon the same. And as the Ninth Circuit cautioned:

> So long as there is a drop in a stock's price, a plaintiff will always be able to contend that the market "understood" a defendant's statement precipitating a loss as a coded message revealing the fraud. Enabling the plaintiff to proceed on such a theory would effectively resurrect what *Dura* discredited — that loss causation is established through an allegation that a stock was purchased at an inflated price.

*Metzler*, 540 F.3d at 1064. Plaintiff's protestations notwithstanding, there is no reason for this Court to revisit its holding that CVB's announcement of an SEC subpoena, which was accompanied by an express disclosure stating that the SEC had not made any adverse finding, was not a sufficient allegation for loss causation purposes. FAC Dismissal Order at 53-54; *see also* MTD Br. at 27-30.[9]

Furthermore, the allegation of the immaterial and fleeting stock drop following September 9, 2010 (already rejected by this Court) cannot support a pleading of loss causation. MTD Br. at 29 (citing FAC Dismissal Order at 55; *Metzler*, 540 F.3d at 1064). Nor does plaintiff offer any support for the notion that a disclosure on that date can retroactively transform an earlier insufficient disclosure — i.e., the August 9, 2010 announcement of an SEC subpoena — into a sufficient corrective disclosure.

Plaintiff argues that defendants offer "no alternative explanation" for the August 9, 2010 stock price decline. Opp. at 29. *First*, plaintiff has the burden — here, unsatisfied — to plead loss causation. *See* FAC Dismissal Order at 54; *Dura*,

---

[9] Plaintiff's reliance on *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049 (9th Cir. 2008) (Opp. at 24-30), which was decided before *Metzler*, is also unavailing. In that case, there was disclosure of an FDA *finding* of illegal marketing practices. 536 F.3d at 1052-53. *Gilead* held that this disclosure could support an allegation of loss causation even though the price drop was not immediate because — though it corrected false statements — investors "failed to appreciate" the significance until there was an additional corrective disclosure. *Id.* at 1052-54, 1058. Plaintiff argues that CVB's announcement of an SEC subpoena was "a validation" of an anonymous blogger's previous "speculation" that "caus[ed] investors to appreciate the significance of the previously disclosed negative information." Opp. at 30. But this is mere sleight of hand. In *Gilead*, *both* alleged disclosures prior to the alleged price drop were corrective. But here, *neither* alleged disclosure prior to the August 9, 2010 price drop — (i) the erroneous "speculation" of an anonymous blogger or (ii) the announcement of an SEC subpoena — was corrective under *Metzler*, as each disclosed (at most) a risk of a future corrective disclosure. Combining these two still leaves the SAC devoid of any corrective disclosure, partial or complete, prior to the alleged price drop. *See Metzler*, 540 F.3d at 1063 ("losses suffered before the revelation" inadequate). *In re Apollo Group, Inc. Securities Litigation*, 2010 WL 5927988 (9th Cir. June 23, 2010), also addressing two "corrective" disclosures, is similarly inapposite.

544 U.S. at 346.  *Second*, stock prices move on "changed investor expectations" and "other factors" (though inadequate for loss causation purposes) (*Dura*, 544 U.S. at 343) and the price decline here was manifestly caused by the announcement of an SEC subpoena.  *Third*, plaintiff's own argument that the decline occurred because the announcement of the SEC subpoena "validated" the anonymous blogger's erroneous speculation (Opp. at 29) only further underscores plaintiff's failure to plead loss causation.  Not only was the stock price drop caused by disclosure of risk (insufficient for loss causation purposes) rather than a "corrective" disclosure, but investors' perception of that risk was based on speculation that the SAC itself now demonstrates was wildly off base.  In short, there is no reason for this Court to reverse its previous conclusion that loss causation has been inadequately pled.

## CONCLUSION

The Opposition is simply more of the same.  Once again, plaintiff has failed to plead with particularity both material falsity and scienter and has fallen short of the Ninth Circuit's standard for pleading a loss caused by a corrective disclosure, and dismissal is warranted.  This Court has offered clear guidance to plaintiff in its two thoughtful dismissal opinions, yet plaintiff is apparently unable to state a claim.  Through several complaints and rounds of briefing, the allegations newly added to the SAC negate rather than bolster plaintiff's already deficient theory of falsity and scienter.  Without offering any indication of what plaintiff hopes to add, plaintiff "requests leave to amend" if the Court determines the SAC remains deficient.  But plaintiff has already had ample opportunity to state a claim.  Defendants thus respectfully request that any dismissal this time be with prejudice.

| | |
|---|---|
| DATED: December 20, 2012 | Respectfully submitted, |

By:   /s/ Scott Vick

VICK LAW GROUP, APC
  Scott Vick (No. 171944)
  Jason T. Riddick (No. 235980)
  Rachelle S. Torres (No. 243392)

WACHTELL, LIPTON, ROSEN & KATZ
  David M. Murphy (*pro hac vice*)
  Warren R. Stern (*pro hac vice*)
  Jeffrey D. Hoschander (*pro hac vice*)

Attorneys for Defendants
CVB FINANCIAL CORP., CHRISTOPHER D. MYERS AND EDWARD J. BIEBRICH, JR.

---

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS THE SAC      Case No. 10-CV-06256-MMM (PJWx)