1  BERNSTEIN LITOWITZ BERGER
2     & GROSSMANN LLP
   BLAIR A. NICHOLAS (Bar No. 178428)
3  (blairn@blbglaw.com)
   TIMOTHY A. DeLANGE (Bar No. 190768)
4  (timothyd@blbglaw.com)
   NIKI L. MENDOZA (Bar No. 214646)
5  (nikim@blbglaw.com)
   12481 High Bluff Drive, Suite 300
6  San Diego, CA 92130
   Tel:   (858) 793-0070
7  Fax:   (858) 793-0323

8  *Counsel for Lead Plaintiff Jacksonville*
   *Police & Fire Pension Fund, and Lead*
9  *Counsel for the Settlement Class*

10
11               UNITED STATES DISTRICT COURT
12              CENTRAL DISTRICT OF CALIFORNIA
13                   WESTERN DIVISION

14  BARRY R. LLOYD, Individually and    Case No. 10-cv-06256-CAS (PJWx)
    on Behalf of All Others Similarly
15  Situated,                            **LEAD PLAINTIFF'S NOTICE OF**
                                         **MOTION AND MOTION FOR**
16                       Plaintiff,      **FINAL APPROVAL OF CLASS**
                                         **ACTION SETTLEMENT AND PLAN**
17           v.                          **OF ALLOCATION;**
                                         **MEMORANDUM OF POINTS AND**
18  CVB FINANCIAL CORP., et al.,         **AUTHORITIES IN SUPPORT**
                                         **THEREOF**
19                       Defendants.
                                         Judge:  Hon. Christina A. Snyder
20                                       Courtroom:  8D
                                         Date:  March 13, 2017
21                                       Time:  10:00 a.m.

22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT,** pursuant to the Court's December 5, 2016 Order Preliminarily Approving Proposed Settlement and Providing for Notice ("Preliminary Approval Order," ECF No. 127), on March 13, 2017, at 10:00 a.m., before the Honorable Christina A. Snyder, United States District Court, Central District of California, Western Division, 350 W. First Street, Courtroom 8D on the 8th Floor, Los Angeles, California 90012, Lead Plaintiff, Jacksonville Police & Fire Pension Fund, ("Lead Plaintiff") on behalf of itself and all members of the Settlement Class will and hereby does move the Court for an order, pursuant to Fed. R. Civ. P. 23(e), granting final approval of the Settlement in the above-captioned action (the "Action") on the terms set forth in the Stipulation and Agreement of Settlement previously filed with the Court on November 4, 2016, and approving the proposed Plan of Allocation for distribution of the settlement proceeds.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities in Support Thereof; the Declaration of Timothy A. DeLange in Support of Final Approval of Class Action Settlement and Plan of Allocation, and Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("DeLange Decl."); the exhibits thereto; all pleadings and papers filed herein; arguments of counsel; and any other matters properly before the Court.

Lead Counsel is unaware of any opposition to this Motion. Pursuant to the Preliminary Approval Order, any objection to any aspect of the Settlement or the Plan of Allocation must be filed on or before February 21, 2017. To date, no objections have been filed. Following expiration of the objection and opt-out deadline, Lead Plaintiff will submit for the Court's consideration the Parties' agreed-upon form of proposed Judgment, along with a list of exclusion requests, and a proposed order approving the Plan of Allocation.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

I.    INTRODUCTION .............................................................1

II.   THE SETTLEMENT WARRANTS FINAL APPROVAL ...........................3

      A.    The Standards For Judicial Approval Of Class Action
            Settlements .........................................................3

      B.    The Settlement Meets The Ninth Circuit Standard For
            Approval ...........................................................5

            1.    The Settlement Is The Result Of Arm's-Length
                  Negotiations .................................................5

            2.    Review Of The *Hanlon* Factors Supports Final
                  Approval Of The Settlement ..............................7

                  a)    Lead Plaintiff's Case Is Strong, But Entails
                        Risks ...............................................7

                  b)    The Expense, Complexity, And Likely
                        Duration Of Further Litigation .....................9

                  c)    The Risk Of Maintaining Class Action
                        Status Throughout The Trial........................10

                  d)    The Amount Obtained In Settlement................11

                  e)    The Extent Of Discovery Completed And
                        The Stage Of The Proceedings ....................13

                  f)    The Experience And Views Of Lead
                        Plaintiff And Lead Counsel ........................16

                  g)    The Reaction Of The Settlement Class To
                        The Proposed Settlement............................18

III.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE,
      AND ADEQUATE............................................................18

IV.   THE SETTLEMENT CLASS RECEIVED ADEQUATE
      NOTICE....................................................................20

V.    CERTIFICATION OF THE SETTLEMENT CLASS
      REMAINS WARRANTED................................................21

VI.   CONCLUSION............................................................22

## TABLE OF AUTHORITIES

Case                                                                                                    Page

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
     909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................................6

*Browne v. Am. Honda Motor Co.*,
     2010 WL 9499072 (C.D. Cal. July 29, 2010).....................................................10

*Class Plaintiffs v. Seattle*,
     955 F.2d 1268 (9th Cir. 1992) ...........................................................................18

*In re Critical Path, Inc. Sec. Litig.*,
     2002 WL 32627559 (N.D. Cal. June 18, 2002)...................................................15

*In re Datatec Sys., Inc. Sec. Litig.*,
     2007 WL 4225828 (D.N.J. Nov. 28, 2007) .........................................................18

*Ellis v. Naval Air Rework Facility*,
     87 F.R.D. 15 (N.D. Cal. 1980) ............................................................................16

*In re Gen. Instrument Sec. Litig.*,
     209 F. Supp. 2d 423 (E.D. Pa. 2001) ..................................................................18

*Glass v. UBS Fin. Servs., Inc.*,
     2007 WL 221862 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 Fed. App'x.
     452 (9th Cir. 2009)...............................................................................................15

*Hanlon v. Chrysler Corp.*,
     150 F.3d 1011 (9th Cir. 1998) ...................................................................4, 7, 11

*In re Heritage Bond Litig.*,
     2005 WL 1594403 (C.D. Cal. June 10, 2005)................................................9, 16

*Hicks v. Stanley*,
     2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).......................................................7

*In re Indep. Energy Holdings PLC Sec. Litig.*,
     2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ...................................................6

*Lane v. Facebook, Inc.*,
     696 F.3d 811 (9th Cir. 2012) ............................................................................3, 4

*Linney v. Cellular Alas. P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ...................................................................13, 15

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) ...................................................................1, 9, 14

*Lundell v. Dell, Inc.*,
   2006 WL 3507938 (N.D. Cal. Dec. 5, 2006)...............................................6

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...................................................................11, 13, 15

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)...............................................................9, 17

*Nobles v. MBNA Corp.*,
   2009 WL 1854965 (N.D. Cal. June 29, 2009)............................................9

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ...................................................................3, 4, 11

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008)......................................................3, 10, 11, 18

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. 2014) ...............................................................13

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...................................................................16

*In re Portal Software, Inc. Sec. Litig.*,
   2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...........................................21

*In re Rambus Inc. Derivative Litig.*,
   2009 WL 166689 (N.D. Cal. Jan. 20, 2009)................................................13, 18

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...................................................................20

*Satchell v. Fed. Express Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)............................................6

*In re TD Ameritrade Account Holder Litig.*,
   2011 WL 4079226 (N.D. Cal. Sept. 13, 2011)............................................13, 15

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) .........................................................................7, 9

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) ....................................................................10

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab.*
   *Litig.*,
   2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ..........................................11, 13

*In re Wireless Facilities, Inc. Sec. Litig.*,
   253 F.R.D. 630 (S.D. Cal. 2008) ....................................................................20

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ............................................................18

**STATUTES, RULES & REGULATIONS**

15 U.S.C. § 78u-4(a)(7) ........................................................................................20

Federal Rules of Civil Procedure
   Rule 23 ....................................................................................................passim

Private Securitites Litigation Reform Act of 1995, Pub. L. No. 104-
   67, 109 Stat. 737 (1995)...............................................................14, 17, 18, 21

**SECONDARY AUTHORITIES**

Cornerstone Research, "Securities Class Action Settlements: 2015
   Review and Analysis,", *available at*
   www.cornerstone.com/Publications/Reports/Securities-Class-
   Action-Settlements-2015-Review-and-Analysis ..............................................12

H.R. Rep. No. 104-369 (1995) (Conf. Rep.) ........................................................18

NERA, "Recent Trends in Securities Class Action Litigation:  2015
   Full-Year Review," *available at*
   www.nera.com/content/dam/nera/publications/
   2016/2015_Securities_Trends_Report_NERA.pdf ...........................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

Lead Plaintiff and Lead Counsel have successfully settled this securities class action for a cash payment of $6.2 million for the benefit of the Settlement Class.  Having evaluated the facts and applicable law, and recognizing the risks and expense of continued litigation, they submit that the proposed Settlement is in the best interests of the Settlement Class for all of the reasons discussed below and in the supporting declarations.

As detailed in the DeLange Declaration, this Settlement was reached only after Lead Plaintiff conducted an extensive investigation, filed three rounds of detailed consolidated complaints, opposed Defendants' three rounds of motions to dismiss; and appealed to the Ninth Circuit.  *See Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200 (9th Cir. 2016).  While Lead Plaintiff was successful in obtaining a partial reversal of Judge Morrow's prior dismissal orders, the Ninth Circuit's opinion also limited the class and the potentially recoverable damages in the event that plaintiffs were wholly successful through further motion practice, trial, and inevitable additional appeal.[1]

---

[1] As a result of the Ninth Circuit opinion, the Settlement Class, as stipulated by the Parties and certified in the Court's Preliminary Approval Order, is defined as:  All persons and entities who purchased or otherwise acquired the common stock of CVB between March 4, 2010, and August 9, 2010, inclusive (the "Settlement Class Period"), and were damaged thereby.  Defendants and certain other persons and entities are excluded from the Settlement Class.  Also excluded from the Settlement Class are any putative Settlement Class Members who exclude themselves by submitting a request for exclusion in accordance with the requirements set forth in the Notice.  Lead Plaintiff respectfully refers the Court to the accompanying DeLange Declaration for a detailed description of the case and the Settlement.  When not defined herein, capitalized terms are defined in the Stipulation and Agreement of Settlement (ECF No. 122-1, the "Stipulation").

The Settlement is the result of months of arms'-length negotiations that began after issuance of the Ninth Circuit opinion, and were conducted with the assistance of former U.S. District Judge and experienced mediator, the Honorable Layn R. Phillips.  As detailed in his accompanying Declaration, Judge Phillips strongly supports the Settlement and understands that the $6.2 million settlement amount is the most that could be obtained by Lead Plaintiff at the time the Settlement was reached.  *See* Declaration Of Former U.S. District Court Judge Layn R. Phillips In Support Of Class Action Settlement ("Phillips Decl."), attached to the DeLange Decl. as Exhibit 1.

The terms of the Settlement are set forth in the Stipulation (ECF No. 122-1). In the Court's Preliminary Approval Order, the Court preliminarily approved the Settlement, certified the Settlement Class for purposes of the Settlement, and directed that notice be distributed to potential members of the Settlement Class. Shortly thereafter, the Claims Administrator began sending the Court-Approved Notice to potential Settlement Class Members beginning on December 19, 2016. *See* Affidavit Of Jennifer M. Keough Regarding (A) Mailing Of The Notice And Proof Of Claim Form; (B) Publication Of The Summary Notice; (C) Establishment Of The Telephone Hotline; (D) Establishment Of The Settlement Website; And (E) Report On Requests For Exclusion Received To Date ("Keough Aff."), attached as Exhibit 2 to the DeLange Decl.  The Court-approved Summary Notice was also published in the *Investor's Business Daily* and over the *PR Newswire*.  Following over 10,000 Notices to potential Settlement Class Members and their brokers and nominees, there is not a single objection to any aspect of the Settlement.  In addition, there have been only three requests for exclusion from the Settlement Class, received on behalf of four individuals, none of which indicate that they purchased CVB stock during the Settlement Class Period and thus otherwise would have been Settlement Class Members.  The deadline for objecting or requesting exclusion is February 21, 2017.  Lead Plaintiff

LEAD PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF SETTLEMENT
Case No. 10-cv-06256-CAS (PJWx)

will provide the Court with an update on any objections that may be received, and will provide a list of exclusion requests, when Lead Plaintiff files it reply papers.

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation for the Settlement proceeds.  The Plan of Allocation will govern how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to valid claimants.  The Plan of Allocation was prepared with the assistance of Lead Plaintiff's consultant and is based on his event study estimating the amount of artificial inflation in the prices of CVB common stock during the Settlement Class Period.  *See* Declaration Of Michael L. Hartzmark, Ph.D. In Support Of The Proposed Plan Of Allocation ("Hartzmark Decl."), attached to the DeLange Decl. as Exhibit 3.  As discussed below, it is substantively the same as plans that have been approved and successfully used to allocate recoveries in other securities class actions.

## II.  THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.  The Standards For Judicial Approval Of Class Action Settlements

It is well established that "voluntary conciliation and settlement are the preferred means of dispute resolution," especially in class actions.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits.").  Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action may be settled upon notice of the proposed settlement to class members, and a court finding, after a hearing, that it is fair, reasonable and adequate.  *See Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012).

A court's role in settlement approval is essentially twofold:  determining whether the settlement (i) is tainted by fraud or collusion, and (ii) is fair,

reasonable and adequate.  *See Officers for Justice*, 688 F.2d at 625.  The decision whether to approve a settlement is committed to the Court's sound discretion.  In exercising that discretion, courts in the Ninth Circuit are instructed to consider the following factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (quoting *Officers for Justice*, 688 F.2d at 625); *see also Lane*, 696 F.3d at 819 (referring to these as the "*Hanlon* factors").  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."   *Officers for Justice*, 688 F.2d at 625.  Weighing these factors is not an adjudication of the merits of the case:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Id*. (emphasis added).

Here, the Settlement is the product of hard-fought litigation and extensive arms'-length negotiations before a highly-qualified mediator by experienced

securities class action litigators and directed by a sophisticated institutional investor Lead Plaintiff.  There is not even a hint of collusion.  In Lead Plaintiff's and Lead Counsel's considered judgment, as well as the Mediator's professional mediator judgment, the Settlement represents a fair, reasonable, and adequate resolution of the litigation and warrants this Court's approval.

### B.  The Settlement Meets The Ninth Circuit Standard For Approval

#### 1.  The Settlement Is The Result Of Arm's-Length Negotiations

The Parties' negotiations were thorough and the Settlement reached without collusion after good-faith bargaining among the Parties directly through their counsel, then through an in-person mediation, followed by additional communications.  As detailed in Judge Phillips' Declaration, following the Ninth Circuit's February 1, 2016 opinion reversing in part Judge Morrow's dismissal orders, the Parties met directly through counsel to explore potential settlement opportunities.  The Parties, however, were unable to reach agreement, and agreed to mediation before Judge Phillips.  DeLange Decl. ¶40; Phillips Decl. 1 ¶7.  While the litigation continued on remand to this Court, on July 28, 2016, the Parties and CVB's insurance carrier participated in an in-person full-day mediation session before Judge Phillips and another Phillips ADR Mediator, Greg Lindstrom.  In advance, the Parties had exchanged and submitted to the Mediators detailed mediation statements and responses thereto, addressing liability, damages, and the impact of the Ninth Circuit's decision.  Phillips Decl. ¶¶8-10.

During the course of the mediation, Judge Phillips and Mediator Lindstrom engaged in extensive discussions with counsel and the insurance carrier in an effort to find common ground.  At the end of the day, however, no settlement was reached and the parties continued with the litigation.  *Id.* ¶¶11-13.

Following the mediation session, Judge Phillips continued to engage in communications with counsel and the carrier while litigation continued. *Id.* ¶¶14-15. Approximately two months after the mediation session, and after further communications, the Parties ultimately agreed to settle the case for $6.2 million. Judge Phillips approved of the settlement amount based on his experience as a litigator, judge, and mediator; his experience with the relevant Parties and counsel; his acknowledgement that this case had been proceeding for over 6 years, and that the Parties were well-versed in the facts and law applicable to the case; and his understanding of the limitations and risks presented by the Ninth Circuit's opinion. *Id.* ¶16. Judge Phillips concludes as follows:

> I believe that this Settlement represents a recovery and outcome that is reasonable and fair for the Settlement Class and all parties involved. I further believe it is in the best interests of all of the parties that they avoid the burdens and risks associated with taking this case through further motion practice, full discovery, trial, and further appeals, and that they agree on the settlement now before the Court. In sum, I strongly support the approval of the settlement in all respects.

*Id.* ¶19.

As courts within this Circuit and nationwide have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see Lundell v. Dell, Inc.*, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006) (approving class action settlement that was "the result of intensive, arms'-length negotiations between experienced attorneys familiar with the legal and factual issues of this case"); *see also In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding a settlement fair where the parties engaged in "arm's length negotiations," including mediation before Judge Phillips, "an experienced and well-regarded mediator of

complex securities cases"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable") (citation omitted).

The fact that the Parties did not reach agreement either at counsel's initial meeting, or at the mediation session, and that additional negotiations were needed, further demonstrates that the Settlement was the product of arms'-length negotiations. *See, e.g., Hicks v. Stanley*, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature.") (citation omitted). The arms'-length nature of the negotiations supports final approval of the Settlement.

### 2. Review Of The *Hanlon* Factors Supports Final Approval Of The Settlement

#### a) Lead Plaintiff's Case Is Strong, But Entails Risks

Courts evaluating proposed class action settlements consider the strength of the plaintiffs' case and the risks of further litigation. *See, e.g., Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). While Lead Plaintiff and Lead Counsel believe that they could ultimately prevail against Defendants, they recognize that numerous risks and uncertainties would accompany further litigation on the claims that remained following the Ninth Circuit's opinion.

As detailed in the DeLange Declaration, this case has been pending since 2010. Three times Lead Plaintiff filed consolidated complaints and opposed Defendants' motions to dismiss, and three times Judge Morrow dismissed the complaint. The consolidated complaints alleged securities fraud under Section 10(b) of the Securities Exchange Act of 1934 on behalf of a class of investors who purchased CVB common stock between October 21, 2009 (when the first alleged

false statement was made), and August 9, 2010.  This encompassed a ten-month class period, beginning when the first alleged false statement was made, and continuing through when the truth was allegedly revealed when CVB announced receipt of a subpoena from the U.S. Securities and Exchange Commission ("SEC").  The complaints alleged that Defendants made false and misleading statements that fall generally into four categories:  (i) CVB's touting of its loan underwriting culture, credit metrics, and the quality of its loan portfolio; (ii) CVB's statements that the deteriorating real estate market "could" harm its borrowers' ability to repay; (iii) CVB's financial statements, which allegedly violated Generally Accepted Accounting Principles ("GAAP"); and (iv) CVB's assurance in its SEC filings that it was "not aware of any other loans . . . for which known credit problems of the borrower would cause serious doubts as to the ability of such borrowers to comply with their loan repayment terms."

Although the Ninth Circuit reversed and remanded, the claims that the Ninth Circuit sustained were for only two alleged false statements and omissions that CVB made in its SEC filings on March 4, 2010, and May 10, 2010, that there were no "serious doubts" as to the ability of CVB's borrowers, in particular, its largest borrower, Garrett, to comply with loan repayment terms.

Even with respect to the sustained allegations, Lead Plaintiff and Lead Counsel knew there were significant risks of proceeding with further motion practice, through trial and appeal.  Lead Plaintiff would bear the burden of proving that the two statements were material and false when made, that Defendants made them knowingly or with severe recklessness, and that the two alleged false statements caused the investor class to incur loss.  Each of these issues would continue to be vigorously contested.  For example, Defendants would continue to argue at summary judgment and at trial that they had no serious doubts about Garrett's ability to repay its loans, and that they truthfully believed at the time that Garrett would repay its loans.  They would argue that they had no intention to

mislead investors and that they sufficiently disclosed to investors that the Garrett loans were "substandard."

Defendants would also continue to dispute loss causation. Although the Ninth Circuit reversed dismissal on this issue, and sustained the loss causation allegations, the Ninth Circuit also expressly reserved that "[w]hether [Lead Plaintiff] can establish that causal connection is another question." *CVB,* 811 F.3d at 1211.

Had any of Defendants' arguments been accepted in whole or part, they could have eliminated or, at a minimum, dramatically limited any potential recovery for the Settlement Class as to the remaining claims. Further, Lead Plaintiff would have had to prevail at several stages – motions for class certification and summary judgment, trial – and if it prevailed on those, on the appeals that were likely to follow. The Settlement avoids these litigation risks and guarantees the Settlement Class a favorable and immediate cash recovery of $6.2 million.

**b)** **The Expense, Complexity, And**
**Likely Duration Of Further Litigation**

Courts consistently recognize that the expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *See, e.g., Torrisi*, 8 F.3d at 1376 (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement fair). Thus, a court "shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expense litigation." *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Cass action litigation, and in particular, securities class action litigation, is typically complex and expensive to prosecute. *See, e.g., Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (finding a proposed settlement

proper "given the inherent difficulty of prevailing in class action litigation"); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005).  This securities class action is no exception.  Judge Phillips recognized the complexity of the issues, and that the case had already been proceeding for over six years.  Phillips Decl. ¶¶9, 11, 16.

If the Settlement had not been reached, substantial time and expense would have been required for further discovery and motion practice, including at the class certification and summary judgment stages, and preparing the case for trial. The trial itself would be expensive and uncertain – and no matter the outcome, appeals would be likely.  Even if Lead Plaintiff prevailed through motion practice, and ultimately won at trial and on appeal, the appeals process could span several years, during which the Settlement Class would receive nothing.  *See Browne v. Am. Honda Motor Co.*, 2010 WL 9499072, at *11 (C.D. Cal. July 29, 2010) ("Had the parties aggressively litigated class certification and tried the case, it could have consumed substantial party and court resources.  There is a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'").

In contrast, the Settlement results in an immediate and substantial tangible recovery for the Settlement Class, without the risk, expense, and delay of further litigation.  *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) ("It has been held proper to take the bird in hand instead of a prospective flock in the bush.") (internal citations omitted).  This factor favors approval.

c)     **The Risk Of Maintaining Class Action Status Throughout The Trial**

A pending class certification motion may justify approval of a final settlement where, as here, the motion "may be outcome-determinative in itself." *Omnivision*, 559 F. Supp. 2d at 1041.  When the Settlement was reached, Lead

Plaintiff's class certification motion was pending before the Court.  The Settlement avoids the uncertainty with respect to certification and, thus, supports approval of the Settlement.  *See id.* at 1041-42 ("If the Court were to refuse certification, the unrepresented potential plaintiffs would likely lose their chance at recovery entirely . . . .  As Defendants agree to the class certification for the purposes of the Settlement, there is much less risk of anyone who may have actually been injured going away empty-handed.").[2]

### d)    The Amount Obtained In Settlement

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum.   Nor is the proposed settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Officers for Justice*, 688 F.2d at 625.  As "[s]ettlement is the offspring of compromise[] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027.  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation."  *Officers for Justice*, 688 F.2d at 624.  In fact, a settlement may be acceptable even if it amounts to only a fraction

---

[2] This factor would support Settlement even if, as Lead Plaintiff expected, the Court granted Lead Plaintiff's motion for class certification, as the Court may exercise its discretion to re-evaluate the appropriateness of class certification at any time.    Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification  may be altered or amended before final judgment."); *see also In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig. ("VW")*, 2016 WL 6248426, at *12 (N.D. Cal. Oct. 25, 2016); *Omnivision*, 559 F. Supp. 2d at 1041 ("[T]here is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class.").

of the potential recovery that might be available at trial.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

Here, the Settlement provides for the recovery of $6.2 million in cash.  The Settlement was reached only after Lead Counsel had conducted an extensive investigation, consulted with experts, filed three consolidated complaints, opposed Defendants' three motions to dismiss, appealed to the Ninth Circuit, and engaged in substantial negotiations.  The recovery provides an immediate and tangible benefit to the Settlement Class, and is well within a range of reasonableness in light of the best possible recovery and the substantial risks presented by the litigation.

Lead Counsel engaged a consultant who estimated the potentially recoverable damages remaining following the Ninth Circuit's ruling.  Estimating aggregate damages can be challenging due, among other things, to assumptions that must be made regarding trading activity.  Here, such an estimate of potential maximum recoverable damages, assuming Lead Plaintiff wholly prevailed on the two remaining false statements and before taking into account Defendants' causation arguments and other defenses, was at most approximately $55 million.  However, damages would be reduced or eliminated if the jury accepted any of Defendants' arguments, including finding that a portion or all of the losses were attributable to causes other than the two sustained false statements.  Indeed, if the Court or a jury reduced the damages to the stock price to include only the impact of the Garrett loans on the Company's total performance, the total recoverable damages could be reduced to $15 million.[3]

---

[3] DeLange Decl. ¶55.  Even before accounting for Defendants' causation arguments and other defenses, the recovery of over 11% of the maximum recoverable damages is significantly higher than the 1.8% median settlement recovery as a percentage of estimated damages in securities class actions in 2015, as reported by Cornerstone Research.  *See* Cornerstone Research, "Securities Class

LEAD PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF SETTLEMENT
Case No. 10-cv-06256-CAS (PJWx)

### e)   The Extent Of Discovery Completed And The Stage Of The Proceedings

The stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case are additional factors that courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego Fin.*, 213 F.3d at 459; *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009). "In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement. . . . Instead, courts look for indications 'the parties carefully investigated the claims before reaching a resolution.'" *VW*, 2016 WL 6248426, at *13 (quoting *Mego Fin.*, 213 F.3d at 459; *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014)). Indeed, the Honorable Charles R. Breyer recently granted final approval of the Volkswagen consumer class action where "the parties have not engaged in any dispositive motion practice." *VW*, 2016 WL 6248426, at *13; *see also, e.g., Mego Fin.*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *In re TD Ameritrade Account Holder Litig.*, 2011 WL 4079226, at *6

---

Action Settlements: 2015 Review and Analysis," at p. 8, Figure 7, *available at* www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2015-Review-and-Analysis; *see also* NERA, "Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review," at p. 34, Figure 30 (reporting a 0.7% median settlement value as a percentage of investor losses in 2015), *available at* www.nera.com/content/dam/nera/publications/2016/2015_Securities_Trends_Report_NERA.pdf. Accounting for Defendant's argument that the damages are limited to include only the impact of the Garrett loans on the Company's total performance, the Settlement is over 41% of the estimated recoverable damages.

(N.D. Cal. Sept. 13, 2011) (approving settlement after the filing of a motion to dismiss and prior to significant discovery).

Here, before entering into the Settlement, Lead Plaintiff and Lead Counsel had thoroughly evaluated the strengths and weaknesses of the remaining claims. As set forth in greater detail in the DeLange Declaration, Lead Counsel extensively developed the factual and legal record by, among other things:

- Performing an in-depth and ongoing review and analysis of: (i) CVB's SEC filings, press releases, slide presentations, and other public statements; and (ii) news, media, web resources, property title searches, tax lien documents, foreclosure records, analyst research reports, and court records, *see* DeLange Decl. ¶34;

- Conducting a thorough investigation identifying and interviewing potential percipient witnesses, including Garrett's former Chief Operations Officer, who provided detailed statements regarding the in-person meetings in which CVB was told of Garrett's perilous financial condition, which the Ninth Circuit found "were specific in time, context, and details, and involved important communications from a chief executive officer to his Board," and were thus sufficiently reliable for pleading purposes. *CVB*, 811 F.3d at 1208. *See id*. ¶35;

- Consulting with accounting and damages experts on such issues as GAAP accounting, causation, and damages, *see id*. ¶37;

- Drafting the three consolidated complaints subject to the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA");

- Preparing extensive briefing in response to Defendants' three rounds of motions to dismiss;

- Preparing and exchanging Initial Disclosures and other written document requests and subpoenas.  The Parties were in the process of gathering responsive documents, responding to discovery request, negotiating a protective order, and scheduling depositions when the Settlement was reached, *see id.* ¶36;

- Drafting Lead Plaintiff's motion for class certification, supported by an expert report, *see id.* ¶32; and

- Participating in extensive arms'-length negotiations, including preparing and exchanging mediation briefs and responses and participating in an in-person mediation session, *see id.* ¶¶41-42.

Through these efforts, Lead Plaintiff gained sufficient information to evaluate a potential settlement before additional time and resources were expended on further litigation.  Courts in this Circuit have recognized that, "[t]hrough protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc. Sec. Litig.*, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002).   For this reason, courts have commended class counsel for recognizing when, as in this case, a prompt resolution of the matter is in the best interest of the class.  *See Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly."), *aff'd*, 331 Fed. Appx. 452, 457 (9th Cir. 2009).

Indeed, courts regularly approve settlements reached relatively early in the formal litigation process – and much earlier than in this case which had been pending for six years and through the Ninth Circuit.  *See, e.g., Mego Fin.*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney*, 151 F.3d 1239; *TD Ameritrade*, 2011 WL 4079226, at *6 (approving settlement after the filing of a motion to dismiss and prior to significant discovery).  In sum, the

LEAD PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF SETTLEMENT
Case No. 10-cv-06256-CAS (PJWx)

parties reached a settlement when they were well informed as to the facts, legal issues, and risks of the Action.

### f)      The Experience And Views Of Lead Plaintiff And Lead Counsel

Courts recognize that the opinion of experienced counsel supporting the settlement is "entitled to considerable weight." *See, e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980). This makes sense, as counsel is "most closely acquainted with the facts of the underlying litigation." *Heritage Bond*, 2005 WL 1594403, at *9 (citations omitted). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Heritage Bond*, 2005 WL 1594403, at *9 (internal citation omitted).

Here, Lead Counsel has many years of experience in litigating securities class actions throughout the country – including within this Circuit and District in particular – and in assessing the respective merits of each side's case.[4]

---

[4] *See* Firm Resume of Lead Counsel, attached to DeLange Decl. as Exhibit 4-C. For example, Bernstein Litowitz has obtained recoveries on behalf of investors in securities class action litigation in this Circuit, alone – both before and after trial – in amounts totaling over $1 billion. *See, e.g., Roberti v. OSI Sys., Inc.*, 2:13-cv-09174 (C.D. Cal.) ($15 million settlement); *In re Maxim Integrated Prods., Inc. Sec. Litig.*, 5:08cv-00832 (N.D. Cal.) ($173 million); *In re Connetics Sec. Litig.*, 3:07cv-02940 (N.D. Cal.) ($12.75 million); *In re New Century*, 2:07-cv-00931 (C.D. Cal.) ($125 million); *In re Int'l Rectifier Corp. Sec. Litig.*, 2:07-02544 (C.D. Cal.) ($90 million); *In re Gemstar-TV Guide Int'l Inc. Sec. Litig.*, 2:02-cv-02775 (C.D. Cal.) ($92.5 million); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 5:09-cv-01376 (N.D. Cal.) ($125 million); *In re McKesson HBOC, Inc. Sec. Litig.*, 5:99-cv-20743 (N.D. Cal.) (over $1.04 billion); *In re Wash. Mut., Inc. Sec. Litig.*, 2:07-cv-01809 (W.D. Wash.) ($208.5 million); *In re Toyota Motor Corp. Sec. Litig.*, 2:10-cv-00922 (C.D. Cal.) ($25.5 million); *In re SunPower Sec. Litig.*, 3:09-

Additionally, throughout the litigation and settlement negotiations, Defendants have been represented by skilled and respected counsel who brought considerable experience and expertise to bear and spared no effort in the defense of their clients. Judge Phillips explains:

> [T]he advocacy on both sides of the case was excellent.  I have experience with attorneys from the law firms on both sides of this case, which are highly experienced in prosecuting and defending complex securities cases such as this.  I am familiar with the effort, creativity, and zeal they put into their work.  I expected that they would represent their clients in the same manner here, as they did.  All counsel displayed the highest level of professionalism in carrying out their duties on behalf of their respective clients.  The settlement is the direct result of all counsel's experience, reputation and ability in these types of complex class actions.

Phillips Decl. ¶20.

In the face of this knowledgeable and formidable defense, Lead Counsel were nonetheless able to develop a case that was sufficiently strong to overcome the heightened pleading standard of the PSLRA as to some claims, and persuade Defendants, and their insurance carriers, to settle on terms that are favorable to the Settlement Class.

In addition, Lead Plaintiff's support for the Settlement here is further evidence that the Settlement is fair, reasonable and adequate.  Under the regime put in place with the enactment of the PSLRA, the Lead Plaintiff's support for a settlement should be accorded "special weight because [the Lead Plaintiff] may

---

cv-05473 (N.D. Cal.) ($19.7 million); *In re Dendreon Corp. Class Action Litig.*, 2:11-cv-01291 (W.D. Wash.) ($40 million); *In re Clarent Corp. Sec. Litig.*, 3:01-cv-03361 (N.D. Cal.) (obtaining plaintiff verdict at trial against CEO for knowing violation of federal securities laws).

LEAD PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF SETTLEMENT
Case No. 10-cv-06256-CAS (PJWx)

have a better understanding of the case than most members of the class." *DirecTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44 (1995)).   Congress enacted the PSLRA in large part to encourage sophisticated institutional investors to take control of securities class actions and "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Rep. No. 104-369, at *32 (1995) (Conf. Rep.).   Lead Plaintiff is a sophisticated institutional investor, and its strong support of the Settlement further supports its approval.

### g)   The Reaction Of The Settlement Class To The Proposed Settlement

The reaction of the Settlement Class to the Settlement is another factor in determining the adequacy of the Settlement.  *See Rambus*, 2009 WL 166689, at *3 (citation omitted).  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted).   To date, no Settlement Class Member has objected to any aspect of the Settlement, the Plan of Allocation or Lead Counsel's fee and expense request.  As set forth in the Preliminary Approval Order, the deadline to object is February 21, 2017.

### III.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

Assessment of the adequacy of a plan of allocation in a class action is governed by the same standards of review applicable to the settlement as a whole – the plan needs to be "fair, reasonable and adequate."  *See Omnivision*, 559 F. Supp. 2d at 1045; *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992). "An allocation formula need only have a reasonable, rational basis, particularly if

recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citation omitted).

Because they tend to mirror the complaint's allegations in securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares of General Instrument stock" as "even handed").

Here, the proposed Plan of Allocation distributes the settlement proceeds on a *pro rata* basis, calculating a Claimant's relative loss proximately caused by the two sustained allegedly false statements, based on factors such as when and at what prices the Claimant purchased and sold CVB common stock.  As explained in the DeLange Declaration and the Hartzmark Declaration (Exhibit 3 to the DeLange Declaration), Lead Plaintiff engaged Hartzmark Economics Litigation, LLC, to assist in developing a plan to allocate the Settlement proceeds among Claimants.

In developing the Plan of Allocation, Lead Plaintiff's expert calculated the amount of estimated artificial inflation in the per share closing price of CVB common stock that allegedly was proximately caused by Defendants' alleged false statements.  Lead Plaintiff's expert performed an event study, a widely accepted methodology used to isolate the company-specific portion of a price decline after controlling for market and industry factors, and to determine whether a decline is statistically significant.

The Plan of Allocation was detailed in the Notice.  In response to over 10,000 Notices sent, there have been no objections.

## IV.   **THE SETTLEMENT CLASS RECEIVED ADEQUATE NOTICE**

Lead Plaintiff has provided the Settlement Class with adequate notice of the Settlement. Beginning on December 19, 2016, Lead Plaintiff, through the Claims Administrator, disseminated over 10,000 copies of the Court-approved Notice to potential Settlement Class Members who could be identified with reasonable effort, from multiple sources.  *See* Keough Aff. ¶¶2-11.  In addition, the Court-approved Summary Notice was published in the *Investor's Business Daily* and over the *PR Newswire* on January 2, 2017, and January 3, 2017, respectively.  *See id.* ¶12.  Information regarding the Settlement was also made available through a toll-free telephone number established for the Settlement, *see id.* ¶13, and posted on the website established by the Claims Administrator specifically for this Settlement, and on Lead Counsel's website.  *See id.* ¶14; *see also* DeLange Decl. ¶62.  This method of giving notice, previously approved by the Court, is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]."  Fed. R. Civ. P. 23(e)(1).

The Notice provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement.  It informs the Settlement Class of, among other things:  (1) the amount of the Settlement; (2) the reasons why the parties propose the Settlement; (3) the estimated average recovery per damaged share of CVB common stock; (4) the maximum amount of attorneys' fees and expenses that will be sought; (5) the name, telephone number, and address of representatives of Lead Counsel who will be reasonably available to answer questions from Settlement Class Members concerning matters contained in the Notice; (6) the right of Settlement Class Members to object to the Settlement or seek exclusion from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events.  15 U.S.C. § 78u-4(a)(7). The Notice further explains that the Net Settlement Fund will be distributed to eligible Settlement Class

Members who submit valid and timely Proof of Claim Forms under the Plan of Allocation proposed by Lead Plaintiff and included in the Notice.  Thus, the Notice is sufficient because it "'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (citations omitted); *see also In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008).

In sum, the Notice fairly apprises Settlement Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process.  *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) (approving similar notice program); *see also Roberti v. OSI Sys., Inc.*, 2:13-cv-09174 (C.D. Cal.) (using similar notice plan); *In re Dendreon Corp. Class Action Litig.*, 2:11-cv-01291 (W.D. Wash.) (same).

In addition, Lead Counsel is informed that Defendants caused the notice contemplated by the Class Action Fairness Act of 1995 ("CAFA") to be timely served on November 14, 2016.  A copy of the CAFA Notice was previously filed with the Court on November 18, 2016.  ECF No. 125-1.  *See* DeLange Decl. ¶66.

## V.   CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED

The parties stipulated to certification, for settlement purposes, of a Settlement Class consistent with the Ninth Circuit's decision limiting the class. The Court's December 5, 2016 Preliminary Approval Order granted Lead Plaintiff's motion for preliminary approval of the Settlement and preliminarily certified the Settlement Class for settlement purposes only, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  ECF No. 127.  Nothing has changed to alter the propriety of certification for settlement purposes and, for all

the reasons stated in Lead Plaintiff's previously filed memorandum of law in support of its motion for class certification and supporting expert report (ECF Nos. 117-118), and in Lead Plaintiff's application for preliminary approval (ECF No. 122), Lead Plaintiff requests that the Court grant final certification of the Settlement Class pursuant to Rules 23(a) and (b)(3).

## VI.   **CONCLUSION**

Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement and the proposed Plan of Allocation.

Dated: February 6, 2017

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP


   */s/ Timothy A. DeLange*
   TIMOTHY A. DeLANGE

Blair A. Nicholas (Bar No. 178428)
blairn@blbglaw.com
Timothy A. DeLange (Bar No. 190768)
timothyd@blbglaw.com
Niki L. Mendoza (Bar No. 214646)
nikim@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323
-and-
Gerald H. Silk
jerry@blbglaw.com
Avi Josefson
avi@blbglaw.com
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Counsel for Lead Plaintiff Jacksonville*
*Police & Fire Pension Fund and Lead*
*Counsel for the Settlement Class*

KLAUSNER, KAUFMAN, JENSEN
    & LEVINSON
Robert Klausner
7080 Northwest 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232

*Additional Plaintiffs' Counsel and Counsel for Lead Plaintiff Jacksonville Police & Fire Pension Fund*

LEAD PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF SETTLEMENT
Case No. 10-cv-06256-CAS (PJWx)