BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
BLAIR A. NICHOLAS (Bar No. 178428)
(blairn@blbglaw.com)
TIMOTHY A. DeLANGE (Bar No. 190768)
(timothyd@blbglaw.com)
NIKI L. MENDOZA (Bar No. 214646)
(nikim@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:   (858) 793-0323

*Counsel for Lead Plaintiff Jacksonville
Police & Fire Pension Fund, and Lead
Counsel for the Settlement Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BARRY R. LLOYD, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>CVB FINANCIAL CORP., et al.,<br><br>                    Defendants. | Case No. 10-cv-06256-CAS (PJWx)<br><br>**LEAD COUNSEL'S NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:  Hon. Christina A. Snyder<br>Courtroom:  8D<br>Date:  March 13, 2017<br>Time:  10:00 a.m. |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT,** pursuant to the Court's December 5, 2016 Order Preliminarily Approving Proposed Settlement and Providing for Notice ("Preliminary Approval Order," ECF No. 127), and Fed. R. Civ. P. 23(h), on March 13, 2017, at 10:00 a.m., before the Honorable Christina A. Snyder, United States District Court, Central District of California, Western Division, 350 W. First Street, Courtroom 8D on the 8th Floor, Los Angeles, California 90012, Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz" or "Lead Counsel"), counsel for Lead Plaintiff Jacksonville Police & Fire Pension Fund, ("Jacksonville P&F" or "Lead Plaintiff") and the Settlement Class will and hereby does move the Court, on behalf of Plaintiffs' Counsel, for an order granting an award of attorneys' fees and reimbursement of litigation expenses in the above-captioned securities class action.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities in Support Thereof; the Declaration of Timothy A. DeLange in Support of Final Approval of Class Action Settlement and Plan of Allocation, and Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses; the exhibits thereto; all pleadings and papers filed herein; arguments of counsel; and any other matters properly before the Court.

Lead Counsel is unaware of any opposition to this Motion. Pursuant to the Preliminary Approval Order, any objection to the request for attorneys' fees and reimbursement of Litigation Expenses must be filed on or before February 21, 2017. To date, no objections have been filed. Following expiration of the objection deadline, Lead Counsel will submit for the Court's consideration a proposed order awarding attorneys' fees and litigation expenses.

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ............................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

I.    INTRODUCTION ...................................................................1

II.   THE REQUESTED FEES ARE FAIR AND REASONABLE ....................3

   A.    Lead Counsel Is Entitled To An Award Of Attorneys'
         Fees From The Common Fund Obtained.................................3

   B.    Factors Considered By Courts In The Ninth Circuit
         Support Approval Of The Requested Fee As Fair And
         Reasonable...............................................................5

         1.    The Results Achieved, In The Face Of Significant
               Risks, Support The Requested Fee ...........................5

         2.    The Skill Required And Quality Of Lead
               Counsel's Work Performed Support The
               Requested Fee ....................................................8

         3.    The Contingent Nature Of The Fee And The
               Financial Burden Carried By Lead Counsel
               Support The Requested Fee ................................11

         4.    The Requested Fee Is Consistent With Or Less
               Than Awards Made In Similar Cases ......................12

         5.    The Reaction Of The Settlement Class Supports
               The Requested Fee ............................................13

         6.    A Lodestar Crosscheck Confirms That The
               Requested Fee Is Reasonable................................14

III.  LEAD COUNSEL'S LITIGATION EXPENSES ARE
      REASONABLE................................................................16

IV.   CONCLUSION................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989)........................................................4, 12

*In re Apple iPhone/iPod Warranty Litig.*,
40 F. Supp. 3d 1176 (N.D. Cal. 2014)...........................................................4

*Barbosa v. Cargill Meat Solutions Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) ..................................................................11

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)........................................................................................3

*Buccellato v. AT&T Operations, Inc.*,
2011 WL 3348055 (N.D. Cal. June 30, 2011)...........................................12, 14

*In re CV Therapeutics, Inc. Sec. Litig.*,
2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) ...............................................12

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) .............................................11

*In re ECOtality, Inc. Sec. Litig.*,
2015 WL 5117618 (N.D. Cal. Aug. 28, 2015) .............................................15

*Glass v. UBS Fin. Servs., Inc.*,
2007 WL 221862 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 Fed. App'x
452 (2009)......................................................................................................14

*Glass v. UBS Fin. Servs., Inc.*,
331 Fed. App'x 452 (9th Cir. 2009) ........................................................3, 5, 12

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .....................................................................12

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005).............................................5, 8

*In re Informix Corp. Sec. Litig.*,
1999 U.S. Dist. LEXIS 23579 (N.D. Cal. Nov. 23, 1999) ..........................12

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...........................................12, 13, 16

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) ......................................................................7, 9

*In re Nuvelo, Inc. Sec. Litig.*,
   2011 WL 2650592 (N.D. Cal. July 6, 2011) ..................................................4, 11

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................passim

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .........................................................................................3

*Vincent v. Reser*,
   2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ...............................................4, 16

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .......................................................4, 12, 14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ..........................................................4, 5, 11

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................15

**STATUTES**

15 U.S.C.
   § 78j(b) .............................................................................................................5
   § 78u-4(a)(6) .....................................................................................................3

Private Securitites Litigation Reform Act of 1995, Pub. L. No. 104-
   67, 109 Stat. 737 (1995).............................................................................1, 3, 8

**OTHER AUTHORITIES**

Cornerstone Research, "Securities Class Action Settlements: 2015
   Review and Analysis,", *available at*
   www.cornerstone.com/Publications/Reports/Securities-Class-
   Action-Settlements-2015-Review-and-Analysis;..................................................8

NERA, "Recent Trends in Securities Class Action Litigation:  2015
    Full-Year Review," at p. 34, Figure 30 (reporting a 0.7% median
    settlement value as a percentage of investor losses in 2015),
    *available at* www.nera.com/content/dam/nera/publications/
    2016/2015_Securities_Trends_Report_NERA.pdf. .............................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

Court-appointed Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz"), having recovered $6.2 million for the benefit of the Settlement Class, respectfully applies for an award of attorneys' fees in the amount of 25% of the Settlement Amount (or $1.55 million).   Lead Counsel also seeks $354,041.68 in reimbursement of Litigation Expenses it reasonably and necessarily incurred to prosecute the Action.[1]

As discussed below and in the accompanying declaration of Lead Counsel ("DeLange Decl."), all of the factors considered by courts within the Ninth Circuit support the request for attorneys' fees as a percentage of the fund recovered, in the amount of 25%.   The results obtained by Lead Counsel in the face of the litigation risks are remarkable.   The risks of the class (and counsel) obtaining no recovery at all were very real.   Lead Counsel dedicated substantial time and resources conducting an extensive investigation in order to draft detailed consolidated complaints that satisfy the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 (the "PSLRA").   Lead Counsel analyzed CVB's public statements, public filings, and press releases, as well as analyst and media reports.   Lead Counsel also identified and interviewed multiple percipient witnesses who provided crucial detailed facts allegedly demonstrating Defendants' knowledge of the fraud.   But on three occasions the Honorable Margaret M. Morrow dismissed the complaint.   Respectfully, only through Lead Counsel's skill and perseverance did Lead Counsel succeed in obtaining a partial reversal by the Ninth Circuit, permitting the claims to move forward, and a potential recovery possible.

---

[1] When not defined herein, capitalized terms are defined in the Stipulation and Agreement of Settlement (ECF No. 122-1, the "Stipulation").

With this backdrop, and having litigated this case for over six years without any compensation, Lead Counsel has now succeeded in securing a $6.2 million recovery on behalf of the Settlement Class.    The mediator, the Honorable Layn R. Phillips (Fmr.), confirms the strong advocacy in this case:

> [T]he advocacy on both sides of the case was excellent.  I have experience with attorneys from the law firms on both sides of this case, which are highly experienced in prosecuting and defending complex securities cases such as this. I am familiar with the effort, creativity, and zeal they put into their work.  I expected that they would represent their clients in the same manner here, as they did.  All counsel displayed the highest level of professionalism in carrying out their duties on behalf of their respective clients.  The settlement is the direct result of all counsel's experience, reputation, and ability in these types of complex class actions.

*See* Declaration Of Former U.S. District Court Judge Layn R. Phillips In Support Of Class Action Settlement ("Phillips Decl."), attached as Exhibit 1 to the DeLange Decl., ¶20.

For this effort, and remarkable recovery, Lead Counsel requests an award of attorneys' fees equal to the 25% "benchmark" recognized in this Circuit.  The request is fair and reasonable, and only a fraction (2/3) of Plaintiffs' Counsel's lodestar that was expended serving on behalf of the class.[2]

As required by the Court's December 5, 2016 Preliminary Approval Order, beginning on December 19, 2016, the Claims Administrator sent the Court-approved Notice to potential Settlement Class Members and their brokers and

---

[2] "Plaintiffs' Counsel" includes Lead Counsel and additional Plaintiffs' Counsel and counsel for Lead Plaintiff Jacksonville P&F, Klausner, Kaufman, Jensen & Levinson, who declaration is attached to the DeLange Declaration as Exhibit 5.

nominees.[3]  Over 10,000 Notices have been sent.  The Notice advised Settlement Class Members that Lead Counsel would seek attorneys' fees on behalf of all Plaintiffs' Counsel in an amount not to exceed 25% of the Settlement Fund, and reimbursement of Litigation Expenses in an amount not to exceed $500,000.  *See* Exhibit A to the Keough Aff., ¶¶5, 70.

Pursuant to the Preliminary Approval Order, the Notice informs Settlement Class Members that the deadline to file any objections is February 21, 2017.  To date, there are no objections.  In the event that any objections are received, Lead Counsel will address them in its reply following the objection deadline.

For the reasons set forth below, Lead Counsel respectfully requests that the Court approve its motion for attorneys' fees and expenses.

## II.   THE REQUESTED FEES ARE FAIR AND REASONABLE

### A.   Lead Counsel Is Entitled To An Award Of Attorneys' Fees From The Common Fund Obtained

The Supreme Court has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Indeed, the Supreme Court has emphasized that private securities actions, such as the instant Action, are "a most effective weapon" and "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 318 (2007).  The PSLRA also authorizes courts to award attorneys' fees and expenses to counsel for the plaintiff class provided the

---

[3] *See* Affidavit Of Jennifer M. Keough Regarding (A) Mailing Of The Notice And Proof Of Claim Form; (B) Publication Of The Summary Notice; (C) Establishment Of The Telephone Hotline; (D) Establishment Of The Settlement Website; And (E) Report On Requests For Exclusion Received To Date ("Keough Aff."), attached as Exhibit 2 to the DeLange Decl.

LEAD PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES
Case No. 10-cv-06256-CAS (PJWx)

award does not exceed a reasonable percentage of the amount of damages paid to the class.  15 U.S.C. § 78u-4(a)(6).

The Ninth Circuit has expressly approved the percentage-of-recovery approach, which has become the prevailing method for awarding fees in common fund cases in the Ninth Circuit.  *See, e.g.*, *Glass v. UBS Fin. Servs., Inc.*, 331 Fed. App'x 452, 456-57 (9th Cir. 2009) (unpubl.) (overruling objection based on use of percentage-of-the-fund approach); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (recognizing that the "use of the percentage method in common fund cases appears to be [the] dominant" method for determining attorneys' fees).

The percentage-of-recovery method also decreases the burden imposed on courts by eliminating a detailed and time-consuming lodestar analysis.  *See In re Apple iPhone/iPod Warranty Litig.*, 40 F. Supp. 3d 1176, 1181 (N.D. Cal. 2014); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).  Rather than engaging in a full-blown lodestar analysis, courts employing the percentage method sometimes use a less rigorous "lodestar cross-check" on the reasonableness of the requested fee.  *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (affirming use of percentage method and application of lodestar method as a cross-check); *Vincent v. Reser*, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) (using percentage method with lodestar cross-check); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592 (N.D. Cal. July 6, 2011) (same).  Regardless of which method is utilized, the fees awarded must be fair and reasonable under the circumstances of a particular case.  *See In re Wash. Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*"), 19 F.3d 1291, 1295 (9th Cir. 1994).

In this case, the Court need not definitively determine whether to apply the percentage-of-the-fund approach or the lodestar approach. Under both approaches the fee request of 25% of the Settlement Fund, representing a negative lodestar multiplier, is fair and reasonable.

**B.     Factors Considered By Courts In The Ninth Circuit Support Approval Of The Requested Fee As Fair And Reasonable**

Courts in this Circuit consider the following factors when determining whether a fee is fair and reasonable:  (1) the results achieved; (2) the risks of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and financial burden carried by the plaintiffs; (5) awards made in similar cases; (6) the reaction of the class; and (7) the amount of a lodestar cross-check.  *See Vizcaino*, 290 F.3d at 1048-50; *Omnivision*, 559 F. Supp. 2d at 1046-48. Application of each of these factors confirms that the requested fee of 25% is fair and reasonable.

**1.     The Results Achieved, In The Face Of Significant Risks, Support The Requested Fee**

Courts consistently recognize that the settlement achieved is an important factor to consider in determining an appropriate fee award.  *See, e.g., Omnivision*, 559 F. Supp. 2d at 1046; *see also Glass*, 331 Fed. App'x at 456-57.  Here, Lead Counsel succeeded in obtaining a $6.2 million cash Settlement for the Settlement Class.  This achievement was the result of Lead Counsel's vigorous prosecution and settlement negotiations in the face of formidable risks.   The $6.2 million recovery represents a substantial achievement that weighs in favor of granting a 25% fee.

Risk that continued litigation might result in the Settlement Class (and Lead Counsel) not receiving any recovery at all is another important factor in determining a fair fee award.  *See, e.g., In re Heritage Bond Litig.*, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award."); *Omnivision,* 559 F. Supp. 2d at 1047; *WPPSS*, 19 F.3d at 1299-301.

LEAD PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES
Case No. 10-cv-06256-CAS (PJWx)

As discussed above and detailed in Lead Counsel's Declaration, non-recovery was a real risk in this case – and nearly became reality.   Three times Lead Plaintiff filed consolidated complaints and opposed Defendants' motions to dismiss, and three times Judge Morrow dismissed the complaint.  The consolidated complaints alleged securities fraud under Section 10(b) of the Securities Exchange Act of 1934 on behalf of a class of investors who purchased CVB common stock between October 21, 2009 (when the first alleged false statement was made), and August 9, 2010.  This encompassed a ten-month class period, beginning when the first alleged false statement was made, and continuing through when the truth was allegedly revealed when CVB announced receipt of a subpoena from the U.S. Securities and Exchange Commission ("SEC").   The complaints alleged that Defendants made false and misleading statements that fall generally into four categories:  (i) CVB's touting of its loan underwriting culture, credit metrics, and the quality of its loan portfolio; (ii) CVB's statements that the deteriorating real estate market "could" harm its borrowers' ability to repay; (iii) CVB's financial statements, which allegedly violated Generally Accepted Accounting Principles ("GAAP"); and (iv) CVB's assurance in its SEC filings that it was "not aware of any other loans . . . for which known credit problems of the borrower would cause serious doubts as to the ability of such borrowers to comply with their loan repayment terms."

Lead Counsel succeeded in obtaining a partial reversal, with the Ninth Circuit sustaining claims for two alleged false statements and omissions that CVB made in its SEC filings on March 4, 2010, and May 10, 2010, that there were no "serious doubts" as to the ability of CVB's borrowers, in particular, its largest borrower, Garrett, to comply with loan repayment terms.

Lead Counsel knew throughout the litigation that there were significant risks of proceeding with motion practice, through trial and appeals.  Lead Plaintiff would bear the burden of proving that Defendants' statements were material and

false when made, that Defendants made them knowingly or with severe recklessness, and that the alleged false statements caused the investor class to incur loss. Each of these issues were, and would continue to be, vigorously contested. For example, Defendants would continue to argue at summary judgment and at trial that they had no serious doubts about Garrett's ability to repay its loans, and that they truthfully believed at the time that Garrett would repay its loans. They would argue that they had no intention to mislead investors and that they sufficiently disclosed to investors that the Garrett loans were "substandard."

Lead Counsel also knew from case inception that Defendants would dispute loss causation. When Lead Counsel drafted the consolidated complaints – and up until the Ninth Circuit's decision – the law within the Ninth Circuit was uncertain on the issue of whether the announcement of an investigation can form the basis for a viable loss causation theory. Lead Counsel understood that it was embarking on potentially unchartered territory and would need to develop strong allegations, arguments, and theories of loss causation to overcome Defendants' challenges. Lead Counsel, however, eventually succeeded in obtaining a favorable loss causation decision from the Ninth Circuit, clarifying that the announcement of an investigation *can* form the basis for a viable loss causation theory if the complaint also alleges a subsequent corrective disclosure. *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016).

Although the Ninth Circuit reversed dismissal on this issue, and sustained the loss causation allegations, the Ninth Circuit also expressly reserved that "[w]hether [Lead Plaintiff] can establish that causal connection is another question." *CVB,* 811 F.3d at 1211.

That Lead Counsel faced and largely overcame significant risks in this case supports the requested fee. The Settlement avoids the further risks, and obtains a substantial recovery for the Settlement Class now. The $6.2 million Settlement represents between 11% and 41% of estimated recoverable damages based on

certain assumptions, and far exceeds the median recovery as a percentage of estimated damages.[4]  Judge Phillips confirms that the $6.2 million Settlement is the most that could be obtained by Lead Plaintiff at the time the settlement was reached.  Phillips Decl. ¶16.

### 2. The Skill Required And Quality Of Lead Counsel's Work Performed Support The Requested Fee

Another factor to consider in determining what fee to award is the skill required and quality of work performed.  *See Heritage Bond*, 2005 WL 1594389,

---

[4] Lead Counsel engaged a consultant to assist in estimating potentially recoverable damages remaining following the Ninth Circuit's ruling.  Estimating aggregate damages can be challenging due, among other things, to assumptions that must be made regarding trading activity.  Here, such an estimate of potential maximum recoverable damages, assuming Lead Plaintiff wholly prevailed on the two remaining false statements and before taking into account Defendants' causation arguments and other defenses, was at most approximately $55 million.  However, damages would be reduced or eliminated if the jury accepted any of Defendants' arguments, including finding that a portion or all of the losses were attributable to causes other than the two sustained false statements.  Indeed, if the Court or a jury reduced the damages to the stock price to include only the impact of the Garrett loans on the Company's total performance, the total recoverable damages could be reduced to $15 million.  DeLange Decl. ¶55.  Even before accounting for Defendants' causation arguments and other defenses, the recovery of over 11% of the maximum recoverable damages is significantly higher than the 1.8% median settlement recovery as a percentage of estimated damages in securities class actions in 2015, as reported by Cornerstone Research.  *See* Cornerstone Research, "Securities Class Action Settlements: 2015 Review and Analysis," at p. 8, Figure 7, *available at* www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2015-Review-and-Analysis; *see also* NERA, "Recent Trends in Securities Class Action Litigation:  2015 Full-Year Review," at p. 34, Figure 30 (reporting a 0.7% median settlement value as a percentage of investor losses in 2015), *available at* www.nera.com/content/dam/nera/publications/2016/2015_Securities_Trends_Report_NERA.pdf.  Accounting for Defendant's argument that the damages are limited to include only the impact of the Garrett loans on the Company's total performance, which would result in potential recoverable damages of $15 million, the Settlement is over 41% of the estimated recoverable damages.

at *12 ("The experience of counsel is also a factor in determining the appropriate fee award."). "The 'prosecution and management of a complex national class action requires unique legal skills and abilities.' [citation omitted]. This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047.

Here, respectfully, the quality of Lead Counsel's work performed – in the face of the PSLRA's heightened pleading standard and automatic discovery stay – was extremely high. As set forth in greater detail in the DeLange Declaration (Section II), Lead Counsel extensively developed the record by, among other things:

- Performing an in-depth and ongoing review and analysis of: (i) CVB's SEC filings, press releases, slide presentations, and other public statements; and (ii) news, media, web resources, property title searches, tax lien documents, foreclosure records, analyst research reports, and court records, *see* DeLange Decl. ¶34;

- Conducting a thorough investigation identifying and interviewing potential percipient witnesses, including Garrett's former Chief Operations Officer, who provided detailed statements regarding the in-person meetings in which CVB was told of Garrett's perilous financial condition, which the Ninth Circuit found "were specific in time, context, and details, and involved important communications from a chief executive officer to his Board," and were thus sufficiently reliable for pleading purposes. *CVB*, 811 F.3d at 1208. *See id.* ¶35;

- Consulting with accounting and damages experts on such issues as GAAP accounting, causation, and damages, *see id.* ¶37;

- Drafting the three consolidated complaints subject to the PSLRA's heightened pleading standard;

- Preparing extensive briefing in response to Defendants' three rounds of motions to dismiss;

- Preparing and exchanging Initial Disclosures and other written document requests and subpoenas. The Parties were in the process of gathering responsive documents, responding to discovery request, negotiating a protective order, and scheduling depositions when the Settlement was reached, *see id.* ¶36;

- Drafting Lead Plaintiff's motion for class certification, supported by an expert report, *see id.* ¶32; and

- Participating in extensive arms'-length negotiations, including preparing and exchanging mediation briefs and responses and participating in an in-person mediation session, *see id.* ¶¶41-42.

The attorneys at Lead Counsel Bernstein Litowitz are among the most experienced and skilled practitioners in the securities litigation field, and the firm has obtained recoveries on behalf of investors in securities class action litigation in this Circuit, alone – both before and after trial – in amounts totaling over $1 billion.[5] Lead Counsel's reputation as experienced and competent counsel in

---

[5] *See* Firm Resume of Lead Counsel, attached to DeLange Decl. as Exhibit 4-C. For example, Bernstein Litowitz has obtained recoveries on behalf of investors in securities class action litigation in this Circuit, alone – both before and after trial – in amounts totaling over $1 billion. *See, e.g., Roberti v. OSI Sys., Inc.*, 2:13-cv-09174 (C.D. Cal.) ($15 million settlement); *In re Maxim Integrated Prods., Inc. Sec. Litig.*, 5:08cv-00832 (N.D. Cal.) ($173 million); *In re Connetics Sec. Litig.*, 3:07-cv-02940 (N.D. Cal.) ($12.75 million); *In re New Century*, 2:07-cv-00931 (C.D. Cal.) ($125 million); *In re Int'l Rectifier Corp. Sec. Litig.*, 2:07-cv-02544 (C.D. Cal.) ($90 million); *In re Gemstar-TV Guide Int'l Inc. Sec. Litig.*, 2:02-cv-02775 (C.D. Cal.) ($92.5 million); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 5:09-cv-01376 (N.D. Cal.) ($125 million); *In re McKesson HBOC, Inc. Sec.*

LEAD PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES
Case No. 10-cv-06256-CAS (PJWx)

complex class action cases, both willing and able to litigate the case to resolution, facilitated Lead Counsel's ability to negotiate the Settlement, ultimately resulting in the $6.2 million recovery for the Settlement Class.

The quality and vigor of opposing counsel are also important in evaluating the services rendered by Lead Counsel.  *See, e.g.*, *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013).  Throughout the litigation and settlement negotiations, Defendants have been represented by very skilled and respected counsel from the law firms of Wachtell Lipson Rosen & Katz and the Vick Law Group, APC, who brought considerable experience and expertise to bear and spared no effort in the defense of their clients.   Judge Phillips, who has experience with attorneys from the law firms on both sides in this case, confirmed that "[t]he advocacy on both sides of the case was excellent," and "[t]he settlement is the direct result of all counsel's experience, reputation and ability in these types of complex class actions."  Phillips Decl. ¶20.

### 3. The Contingent Nature Of The Fee And The Financial Burden Carried By Lead Counsel Support The Requested Fee

The Ninth Circuit has confirmed that a determination of a fair and reasonable fee must include consideration of the contingent nature of the fee and the obstacles surmounted in obtaining the settlement.[6]  It is an established practice in the private legal market to reward attorneys for taking on the serious risk of non-

---

*Litig.*, 5:99-cv-20743 (N.D. Cal.) (over $1.04 billion); *In re Wash. Mut., Inc. Sec. Litig.*, 2:07-cv-01809 (W.D. Wash.) ($208.5 million); *In re Toyota Motor Corp. Sec. Litig.*, 2:10-cv-00922 (C.D. Cal.) ($25.5 million); *In re SunPower Sec. Litig.*, 3:09-cv-05473 (N.D. Cal.) ($19.7 million); *In re Dendreon Corp. Class Action Litig.*, 2:11-cv-01291 (W.D. Wash.) ($40 million); *In re Clarent Corp. Sec. Litig.*, 3:01-cv-03361 (N.D. Cal.) (obtaining plaintiff verdict at trial against CEO for knowing violation of federal securities laws).

[6] *WPPSS*, 19 F.3d at 1299; *see In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007); *see also Omnivision*, 559 F. Supp. 2d at 1047.

---

payment by permitting a fee award that reflects over their normal hourly rates for prevailing in contingency cases. *See Nuvelo*, 2011 WL 2650592, at *2 (citing *WPPSS*, 19 F.3d at 1299).  "This practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney." *Id.*

Here, Lead Counsel received no compensation during the six years of litigation.  During that time, Lead Counsel invested over 4,700 hours for a total lodestar of nearly $2.5 million, and incurred expenses of approximately $350,000 in prosecuting the case.  *See* Exhibit 4 to the DeLange Decl.  Additional work in connection with the Settlement and claims administration will also be required. Any fee award has always been at risk, and completely contingent on the result achieved and on this Court's discretion in awarding fees and expenses.  Unlike defense counsel – who typically receive payment on a timely basis whether they win or lose – Lead Counsel sustained the entire risk that it would have to fund the expenses of this Action and that, unless Lead Counsel succeeded, it would not be entitled to any compensation whatsoever.    The contingent nature of the representation, and the burden carried by Lead Counsel, support the requested fee.

### 4.    The Requested Fee Is Consistent With Or Less Than Awards Made In Similar Cases

Lead Counsel's requested fee of 25% is equal to the Ninth Circuit's "benchmark" for common fund cases, and below fee percentages regularly awarded in securities class action settlements in the Ninth Circuit and elsewhere. *See, e.g., Glass*, 331 Fed. App'x at 457; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (referring to 25% in attorneys' fees as a "benchmark award"); *see also Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055, at *1 (N.D. Cal. June 30, 2011) (recognizing Ninth Circuit's 25% benchmark, surveying cases and granting 25% fee award).  Indeed, "in most common fund cases, the award exceeds that benchmark." *Activision*, 723 F. Supp. at 1377-78 (surveying securities cases

LEAD PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES Case No. 10-cv-06256-CAS (PJWx)

nationwide and noting, "[t]his court's review of recent reported cases discloses that nearly all common fund awards range around 30%").[7]

### 5. The Reaction Of The Settlement Class Supports The Requested Fee

The reaction of the class to a proposed settlement and fee request is a relevant factor in approving fees. *See Red Door Salons*, 2009 WL 248367, at *7; *Omnivision*, 559 F. Supp. 2d at 1048. Here, the Court-appointed Lead Plaintiff, a sophisticated institutional investor, has approved of Lead Counsel's request. DeLange Decl. ¶95. In addition, pursuant to the Court's Preliminary Approval Order, beginning on December 19, 2016, the Court-approved Notice was disseminated to more than 10,000 potential Settlement Class Members and their brokers and nominees. *See* Keough Aff. ¶¶2-11. The Court-approved Summary Notice was published in the *Investor's Business Daily* and over the *PR Newswire* on January 2, 2017, and January 3, 2017, respectively. *See id.* ¶12. Information regarding the Settlement was also made available through a toll-free telephone number established for the Settlement, *see id.* ¶13, and posted on the website established by the Claims Administrator specifically for this Settlement, and on Lead Counsel's website. *See id.* ¶14; *see also* DeLange Decl. ¶62.

The Notice informed Settlement Class Members that Lead Counsel would seek fees in an amount not to exceed 25% of the Settlement Amount, and

---

[7] *See also, e.g., Vizcaino*, 290 F.3d at 1048-50 (affirming fee award of 28% of $96.9 million settlement fund); *Omnivision*, 559 F. Supp. 2d at 1047 (approving 28% fee award in securities class action) (citing *Activision*, 723 F. Supp. at 1377-78); *In re CV Therapeutics, Inc. Sec. Litig.*, 2007 WL 1033478, at *2 (N.D. Cal. Apr. 4, 2007) (approving 30% fee award in securities class action); *In re Informix Corp. Sec. Litig.*, 1999 U.S. Dist. LEXIS 23579, at *6 (N.D. Cal. Nov. 23, 1999) (awarding 30% of $132 million settlement fund in securities class action); *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (approving 30% fee award).

reimbursement of Litigation Expenses in an amount not to exceed $500,000.  *See* Exhibit A to the Keough Aff., ¶¶5, 70.  The Notice further advised Settlement Class Members of, among other things, their right to object to Lead Counsel's request for attorneys' fees and Litigation Expenses.   To date, there are no objections, further supporting the requested fee.  *See, e.g.*, *Red Door Salons*, 2009 WL 248367, at *7 (no objection supports 30% award); *Omnivision*, 559 F. Supp. 2d at 1048 (only three objections supports 28% award).

### 6.     A Lodestar Crosscheck Confirms That The Requested Fee Is Reasonable

Although courts in this Circuit typically apply the percentage approach to determine attorneys' fees in common fund cases, courts may perform an informal lodestar cross-check on the percentage method.  *See Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) ("Under the circumstances presented here, where the early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a lodestar cross-check."), *aff'd Glass*, 331 Fed. App'x at 456-57 ("In reviewing the award of attorneys' fees, the district court properly performed an informal lodestar cross-check, and noted the relatively low time-commitment by plaintiff's counsel"; affirming district court's 25% fee award over objection).

In *Vizcaino*, the Ninth Circuit noted that as follows:

"[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases. . . .  This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." . . .  In common fund cases, "attorneys whose compensation depends on their winning the case[] must make up in compensation in the cases they win for the lack of compensation in the cases they lose."

290 F.3d at 1051 (citation omitted).   There, the Ninth Circuit affirmed a fee awarded that equaled 28% of the settlement fund and a multiplier of 3.65, which the court found to be "within the range of multipliers applied in common fund cases."   *Id.*; *see also Buccellato*, 2011 WL 3348055, at *1 (awarding 25% fee, representing a 4.3 multiplier).

As detailed herein and in the accompanying DeLange Declaration, the work Lead Counsel performed in this matter wholly supports the Court's approval of Lead Counsel's request for a fee award of 25% of the Settlement Amount, or $1.55 million.[8]   Plaintiffs' Counsel devoted 4,756.05 hours to this Action, over more than six years, amounting to a lodestar of $2,492,508.75.[9]   Thus, Lead Counsel's fee request represents a *negative* multiplier, *i.e.,* less than two-thirds of Plaintiffs' Counsel's total lodestar.

---

[8] As is customary in seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, included with Lead Counsel's declaration is a schedule identifying the lodestar of Bernstein Litowitz (by individual, position, billing rate, and time billed).   *See, e.g., In re ECOtality, Inc. Sec. Litig.*, 2015 WL 5117618, at *4 (N.D. Cal. Aug. 28, 2015) ("The lodestar crosscheck calculation need entail neither mathematical precision nor bean counting . . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.").   Unlike the full lodestar method, when conducting a lodestar crosscheck, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005).   *See also* Exhibit 5 for additional Plaintiffs' Counsel lodestar summary.

[9] Lead Counsel's hourly rates are the same as, or comparable to, the rates submitted by my firm for lodestar cross-checks in other securities class action litigation for fee applications that have been granted within this Circuit and nationwide.   *See, e.g., Roberti v. OSI Sys., Inc.*, 2:13-cv-09174 (C.D. Cal.) (ECF No. 86)*; In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 1:08-cv-08093 (S.D.N.Y.) (ECF No. 273-6); *Pension Trust Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*, 2:12-cv-00884 (E.D. Wis.) (ECF No. 76-3); *In re Dendreon Corp. Class Action Litig.*, 2:11-cv-01291 (W.D. Wash.) (ECF No. 103-4).

In sum, Lead Counsel's attorneys' fee request is well within the range of what courts in this Circuit commonly award in complex securities class actions, whether calculated as a percentage of the settlement fund or in relation to Plaintiffs' Counsel's lodestar – and warrants the Court's approval.

## III.   LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE

Lead Counsel also requests reimbursement of its Litigation Expenses in the amount of $354,041.68 incurred over the past six years in prosecuting and resolving the Action on behalf of the Settlement Class.  Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary and directly related to the prosecution of the action.  *See Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the outset, Lead Counsel was aware that it might not recover any of its expenses or, at the very least, would not recover anything until the Action was successfully resolved.  Lead Counsel also understood that, even if the case was ultimately successful, reimbursement for expenses would not compensate it for the lost use of funds advanced to prosecute the Action.  Thus, Lead Counsel was motivated to, and did, take significant steps to minimize expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the Action.  *See* DeLange Decl. ¶98.

The expenses for which Lead Counsel seeks reimbursement are detailed in the accompanying lodestar and expense declaration, attached as Exhibit 4-B to the DeLange Declaration, setting forth the specific category of expenses incurred and the amount.  The types of expenses for which Lead Counsel seeks reimbursement are necessarily incurred in litigation and routinely charged to clients billed by the hour.  These include expenses associated with, among other things, service of

process, online legal and factual research, travel, experts and consultants, and mediation. *See, e.g., Vincent*, 2013 WL 621865, at *5 (granting reimbursement of costs and expenses for "three experts and the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation related expenses"); *Red Door Salons* 2009 WL 248367, at *7 (granting reimbursement because "[a]ttorneys routinely bill clients for all of these expenses").

A large component of Lead Counsel's expenses, over 75%, is for the costs of experts and consultants, including the retention of experts with significant experience opining on damages, loss causation, and market efficiency in securities class actions. In prosecuting the claims, Lead Counsel worked extensively with experts and consultants. *See* DeLange Decl. ¶100.

The expenses also include the costs of online research in the amount of $50,511.58. These are the charges for computerized factual and legal research services such as *LexisNexis, Westlaw*, and PACER. It is standard practice for attorneys to use these resources to assist them in researching legal and factual issues, and, indeed, these tools create efficiencies in litigation and, ultimately, save clients and the class money. *See id.* ¶101.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of Litigation Expenses in an amount not to exceed $500,000. *See* Exhibit A to the Keough Aff., ¶¶5, 70. The amount of expenses for which reimbursement is now sought, $354,041.68, is significantly less than the maximum amount stated in the Notice. To date, no Settlement Class Member has objected.

## IV.   <u>CONCLUSION</u>

Lead Counsel respectfully requests that the Court award it attorneys' fees in the amount of 25% of the Settlement Amount, and reimbursement of its Litigation Expenses in the amount of $354,041.68, plus interest earned at the same rate and

for the same time period as the Settlement Fund, to be paid from the Settlement Fund.

For the Court's convenience, Lead Counsel will submit with its Reply papers a proposed Order awarding attorneys' fees and Litigation Expenses.

Dated: February 6, 2017                     Respectfully submitted,

                                            BERNSTEIN LITOWITZ BERGER
                                               & GROSSMANN LLP


                                            ___/s/ Timothy A. DeLange___
                                            TIMOTHY A. DeLANGE

                                            Blair A. Nicholas (Bar No. 178428)
                                            blairn@blbglaw.com
                                            Timothy A. DeLange (Bar No. 190768)
                                            timothyd@blbglaw.com
                                            Niki L. Mendoza (Bar No. 214646)
                                            nikim@blbglaw.com
                                            12481 High Bluff Drive, Suite 300
                                            San Diego, CA 92130
                                            Telephone: (858) 793-0070
                                            Facsimile: (858) 793-0323
                                            -and-
                                            Gerald H. Silk
                                            jerry@blbglaw.com
                                            Avi Josefson
                                            avi@blbglaw.com
                                            1251 Avenue of the Americas, 44th Floor
                                            New York, NY 10020
                                            Telephone: (212) 554-1400
                                            Facsimile: (212) 554-1444

                                            *Counsel for Lead Plaintiff Jacksonville*
                                            *Police & Fire Pension Fund and Lead*
                                            *Counsel for the Settlement Class*

                                            KLAUSNER, KAUFMAN, JENSEN
                                               & LEVINSON
                                            Robert Klausner
                                            7080 Northwest 4th Street
                                            Plantation, FL 33317
                                            Telephone: (954) 916-1202

Facsimile: (954) 916-1232

*Additional Plaintiffs' Counsel and Counsel
for Lead Plaintiff Jacksonville Police & Fire
Pension Fund*